COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
       Charles K. Verhoeven (Bar No. 170151)
2      charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
3  San Francisco, California 94111
   Telephone:    (415) 875-6600
4  Facsimile:    (415) 875-6700

5      Victoria F. Maroulis (Bar No. 202603)
       victoriamaroulis@quinnemanuel.com
6      Gabriel S. Gross (Bar No. 254672)
       gabegross@quinnemanuel.com
7  555 Twin Dolphin Drive, Suite 560
   Redwood Shores, California 94065-2139
8  Telephone:    (650) 801-5000
   Facsimile:    (650) 801-5100
9
   Attorneys for Plaintiff Genentech, Inc.
10

E-filing

ORIGINAL FILED
OCT 2 7 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

WDB

11
                    UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13
                    SAN FRANCISCO DIVISION
14                                              CV 08          4909

15  GENENTECH, INC. and BIOGEN IDEC       CASE NO. _____
    INC.,
16                                         COMPLAINT FOR DECLARATORY
              Plaintiffs,                  JUDGMENT OF NON-INFRINGEMENT
17                                         AND INVALIDITY OF U.S. PATENT NOS.
         vs.                               5,849,522 AND 6,218,140
18  SANOFI-AVENTIS DEUTSCHLAND
    GMBH, SANOFI-AVENTIS U.S. LLC, and     DEMAND FOR JURY TRIAL
19  SANOFI-AVENTIS U.S. INC.,
20            Defendants.
21

22
              Plaintiffs Genentech, Inc. and Biogen Idec Inc., by and through their undersigned
23
    counsel, seek declarations that United States Patent Nos. 5,849,522 and 6,218,140, each titled
24
    "Enhancer for Eukaryotic Expression Systems" are invalid and are not and have not been infringed
25
    by Genentech or Biogen Idec after termination of a license agreement concerning those patents, as
26
    follows:
27

28

## NATURE OF THE ACTION

1.      This is an action for a declaratory judgment of patent non-infringement and invalidity arising under the patent laws of the United States, Title 35 of the United States Code.

## THE PARTIES

2.      Plaintiff Genentech, Inc. is a Delaware corporation with a principal place of business at One DNA Way, South San Francisco, California 94080.

3.      Plaintiff Biogen Idec Inc. is a Delaware corporation with a principal place of business at 14 Cambridge Center, Cambridge, Massachusetts 02142.

4.      Defendant Sanofi-Aventis Deutschland GMBH is a German corporation with a place of business at Brüningstrasse 50, D-65929 Frankfurt am Main, Germany.

5.      Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability corporation with a principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807.

6.      Defendant Sanofi-Aventis U.S. Inc. is a Delaware corporation with a principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807.

## JURISDICTIONAL STATEMENT

7.      This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*

8.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201(a) and 2202.

9.      This Court has personal jurisdiction over defendants Sanofi-Aventis Deutschland GMBH, Sanofi-Aventis U.S. LLC, and Sanofi-Aventis U.S. Inc. (collectively, "Sanofi-Aventis") by virtue of their sufficient minimum contacts with this forum as a result of business they conduct in the State of California and within the Northern District of California.

10.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c).

11.     An immediate, real, and justiciable controversy exists between Genentech and Biogen Idec, on one hand, and Sanofi-Aventis, on the other, as to whether the United States

1  Patent Nos. 5,849,522 and 6,218,140 are invalid and have not been infringed since the termination

2  of a license agreement concerning those patents.

3  ## INTRADISTRICT ASSIGNMENT

4          12.     For purposes of intradistrict assignment pursuant to Civil Local Rules

5  3-2(c) and 3-5(b), this Intellectual Property Action is to be assigned on a district-wide basis.

6  ## FACTUAL BACKGROUND

7          13.     Genentech, considered the founder of the biotechnology industry, has been

8  discovering, developing, manufacturing, and commercializing innovative therapies to address

9  significant unmet medical needs for more than 30 years.

10          14.     Genentech manufactures and commercializes products for a variety of

11  medical conditions, including cancer, rheumatoid arthritis, heart attack, stroke and many others.

12          15.     Genentech seeks patents on inventions originating from its research and

13  development activities, has been issued patents, and has patent applications pending relating to its

14  proprietary technology.

15          16.     Biogen Idec is a global leader in the development, manufacturing and

16  commercialization of innovative therapies.

17          17.     Biogen Idec seeks patents on inventions originating from its research and

18  development activities, has been issued patents, and has patent applications pending relating to its

19  proprietary technology.

20          18.     Genentech and Biogen Idec collaborated to develop and together

21  commercialize an antibody drug known as *RITUXAN® (rituximab)*.  Rituxan® has been approved

22  by the U.S. Food and Drug Administration for use in treating certain patients suffering from non-

23  Hodgkin's lymphoma, a cancer, as well as for treating certain patients afflicted with moderately to

24  severely active rheumatoid arthritis.

25  *The 1991 License Agreement*

26          19.     Genentech obtained a patent license from Behringwerke AG, by entering an

27  agreement effective January 1, 1991 (the "1991 License Agreement"), a true and correct copy of

28  which is attached as Exhibit 1.

20. Sanofi-Aventis, which holds itself out with related companies as the fourth largest pharmaceutical group in the world, has represented to Genentech and Biogen Idec that it is the successor in interest to Behringwerke AG.

21. The 1991 License Agreement purported to convey certain rights from Behringwerke to Genentech "relating to an enhancer for eucaryotic [sic] systems," including rights arising from European Patent Publication Number 0 173 177, titled "Enhancer for Eucaryotic [sic] Expression Systems" and corresponding foreign patent applications, including U.S. Patent Application Number 285,330.

22. The 1991 License Agreement, in Section 2, purported to grant Genentech a license "for research purposes" and another license to make, use and sell certain products "in commercial quantities," subject to certain terms and conditions.

23. During the term of the 1991 License Agreement, Genentech made payments pursuant to the purported license "for research purposes." Genentech never exercised any purported license rights nor made any payments pursuant to the "commercial" license.

24. The 1991 License Agreement contained a dispute resolution clause, Section 11, that set forth an arbitration procedure for resolving disputes between the parties.

25. Section 8 of the 1991 License Agreement allowed Genentech, as licensee, to terminate the 1991 License Agreement by providing two months' notice.

26. Section 8 further identified certain provisions that survive termination. The surviving provisions do not include the arbitration clause.

***Sanofi-Aventis Accuses Genentech and Biogen Idec of Infringement***

27. In a letter to Genentech dated June 30, 2008, Sanofi-Aventis's counsel enclosed the 1991 License Agreement and claimed, "Based on publicly available information on Genentech's research and development, sanofi-aventis has reason to believe that commercial products made, marketed and/or sold by Genentech might be made using materials and processes that would infringe one or more claims of the Licensed Patent Rights."

51443/2681063.1

COMPLAINT FOR DECLARATORY JUDGMENT OF
PATENT NON-INFRINGEMENT AND INVALIDITY

28.     In another letter to Genentech dated July 15, 2008, Sanofi-Aventis's counsel identified "Genentech's antibody products: Avastin®, Rituxan® and Herceptin®" as products to which its inquiry into alleged infringement related.

29.     On information and belief, two U.S. patents issued from the U.S. patent application identified in the 1991 License Agreement: U.S. Patent Nos. 5,849,522 (the "'522 patent," a true and correct copy of which is attached as Exhibit 2) and 6,218,140 (the "'140 patent," a true and correct copy of which is attached as Exhibit 3).

30.     According to Sanofi-Aventis's 2007 Form 20-F filing with the U.S. Securities and Exchange Commission, and on information and belief, the '522 and '140 patents, and other Sanofi-Aventis patents "are primarily owned by" entities including "Sanofi-Aventis Deutschland GMBH (Germany)."

31.     On information and belief, Sanofi-Aventis Deutschland GMBH is the successor to Hoechst Aktiengesellschaft, the named assignee on the '522 and '140 patents.

32.     On information and belief, the June 30, 2008 letter from Sanofi-Aventis's counsel was written on behalf of Sanofi-Aventis Deutschland GMBH as well as U.S. entities Sanofi-Aventis U.S. LLC  and Sanofi-Aventis U.S. Inc.

33.     On information and belief, Sanofi-Aventis accuses Genentech and Biogen Idec of infringing the '522 and '140 patents.

**_Genentech Terminates the 1991 License Agreement_**

34.     On August 27, 2008, Genentech provided Behringwerke and its purported successor in interest, Sanofi-Aventis, via facsimile with notice of termination of the 1991 License Agreement pursuant to Section 8 of that agreement.

35.     Termination became effective October 27, 2008.

36.     Since Genentech provided notice of termination, Sanofi-Aventis has not withdrawn its accusations of infringement.

51443/2681063.1

COMPLAINT FOR DECLARATORY JUDGMENT OF
PATENT NON-INFRINGEMENT AND INVALIDITY

*Scope of this Declaratory Judgment Action*

37.     Genentech and Biogen Idec seek a declaration from the Court as to the parties' rights under the United States Patent Code, post-termination of the 1991 License Agreement, with respect to the '522 and '140 patents.

## FIRST COUNT

### (Declaration of Non-infringement of the '522 Patent)

38.     Genentech and Biogen Idec restate and incorporate by reference each of the allegations of paragraphs 1 through 37 of this Complaint.

39.     Sanofi-Aventis claims to be the owner and assignee of all rights, title and interest in and under United States Patent No. 5,849,522.

40.     Sanofi-Aventis has accused Genentech and Biogen Idec of infringement of the '522 patent or, at a minimum, by its communications with Genentech and Biogen Idec has created a substantial, immediate and real controversy between the parties as to the non-infringement of the '522 patent.

41.     Genentech and Biogen Idec and the customers using their products including Activase (alteplase), Avastin (bevacizumab), Cathflo Activase (alteplase), Herceptin (trastuzumab), Pulmozyme (dornase alfa, recombinant), Raptiva (efalizumab), Rituxan (rituximab), TNKase (tenecteplase), Xolair (omalizumab) or services are not infringing and have not infringed any valid claim of the '522 Patent, and Sanofi-Aventis is entitled to no relief for any claim accruing since the termination of the 1991 License Agreement and arising under or relating to alleged rights in the '522 patent.

## SECOND COUNT

### (Declaration of Invalidity of the '522 Patent)

42.     Genentech and Biogen Idec restate and incorporate by reference each of the allegations of paragraphs 1 through 37 of this Complaint.

43.     Sanofi-Aventis contends that the '522 Patent is valid or, at a minimum, by its communications with Genentech and Biogen Idec has created a substantial, immediate and real controversy between the parties as to the invalidity of the '522 patent.

COMPLAINT FOR DECLARATORY JUDGMENT OF
PATENT NON-INFRINGEMENT AND INVALIDITY

44.    Each and every claim of the '522 Patent is invalid for failing to satisfy one or more of the conditions for patentability specified in Title 35 of the United States Code, including without limitation, Sections 101, 102, 103 and 112.

## THIRD COUNT

### (Declaration of Non-infringement of the '140 Patent)

45.    Genentech and Biogen Idec restate and incorporate by reference each of the allegations of paragraphs 1 through 37 of this Complaint.

46.    Sanofi-Aventis claims to be the owner and assignee of all rights, title and interest in and under United States Patent No. 6,218,140.

47.    Sanofi-Aventis has accused Genentech and Biogen Idec of infringement of the '140 patent or, at a minimum, by its communications with Genentech and Biogen Idec has created a substantial, immediate and real controversy between the parties as to the non-infringement of the '140 patent.

48.    Genentech and Biogen Idec and the customers using their products including Activase (alteplase), Avastin (bevacizumab), Cathflo Activase (alteplase), Herceptin (trastuzumab), Pulmozyme (dornase alfa, recombinant), Raptiva (efalizumab), Rituxan (rituximab), TNKase (tenecteplase), Xolair (omalizumab) or services are not infringing and have not infringed any valid claim of the '140 Patent, and Sanofi-Aventis is entitled to no relief for any claim accruing since the termination of the 1991 License Agreement and arising under or relating to alleged rights in the '140 patent.

## FOURTH COUNT

### (Declaration of Invalidity of the '140 Patent)

49.    Genentech and Biogen Idec restate and incorporate by reference each of the allegations of paragraphs 1 through 37 of this Complaint.

50.    Sanofi-Aventis contends that the '140 Patent is valid or, at a minimum, by its communications with Genentech and Biogen Idec has created a substantial, immediate and real controversy between the parties as to the invalidity of the '140 patent.

51.     Each and every claim of the '140 Patent is invalid for failing to satisfy one or more of the conditions for patentability specified in Title 35 of the United States Code, including without limitation, Sections 101, 102, 103 and 112.

## PRAYER FOR RELIEF

WHEREFORE, Genentech and Biogen Idec pray for judgment as follows:

A.     that the Court find and declare that the '522 Patent is not and has not been infringed by Genentech or Biogen Idec or any customers using their products or services since the termination of the 1991 License Agreement;

B.     that the Court find and declare that the '522 Patent is invalid;

C.     that the Court find and declare that the '140 Patent is not and has not been infringed by Genentech or Biogen Idec or any customers using their products or services since the termination of the 1991 License Agreement;

D.     that the Court find and declare that the '140 Patent is invalid;

E.     that judgment be entered in favor of Genentech and Biogen Idec and against Sanofi-Aventis on each of Genentech's and Biogen Idec's claims;

F.     that the Court find this an exceptional case and award Genentech and Biogen Idec their costs and attorneys' fees pursuant to 35 U.S.C. § 285 or otherwise; and

G.     that the Court grant Genentech and Biogen Idec such other and further relief as the Court deems just and proper.

## JURY DEMAND

Genentech and Biogen Idec hereby demand a jury trial on all issues and claims so triable.

COMPLAINT FOR DECLARATORY JUDGMENT OF
PATENT NON-INFRINGEMENT AND INVALIDITY

1  DATED:  October 27, 2008

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP


By _Charles K Verhoeven_ / _by permission GSG_

Charles K. Verhoeven
Vicotria F. Maroulis
Gabriel S. Gross
Attorneys for Plaintiffs Genentech, Inc. and
Biogen Idec Inc.

51443/2681063.1

COMPLAINT FOR DECLARATORY JUDGMENT OF
PATENT NON-INFRINGEMENT AND INVALIDITY

# Exhibit 1

## LICENSE AGREEMENT

This License Agreement is made effective as of January 1, 1991
between
Behringwerke AG, Postfach 11 40, 3550 Marburg, Federal Republic
of Germany
(hereinafter called "BEHRINGWERKE")


and
Genentech Inc., 460 Point San Bruno Boulevard, South San Francis-
co, CA 94080, USA
(hereinafter called "LICENSEE")



WHEREAS, BEHRINGWERKE is the owner of an exclusive license, with
the right to sublicense, certain patent rights relating to an
enhancer for eucaryotic expression systems; and

WHEREAS, LICENSEE desires to license such patent rights in
research in transient expression systems and the expression of
certain proteins to be specifically defined; and

WHEREAS, BEHRINGWERKE is willing to grant a non-exclusive license
to LICENSEE on the terms set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises and
covenants set forth below, BEHRINGWERKE and LICENSEE mutually
agree as follows:

- 2 -

1.   Definitions

1.1  "Affiliate" means any corporation or other person or entity
     controlled by, controlling or under common control with a
     party. For this purpose, "control" means direct or indirect
     beneficial ownership of more than fifty percent (50 %)
     interest of the voting stock.

1.2  "Combination Products" means any End Product containing both
     an agent or ingredient which constitutes a Licensed Product
     and one or more other active agents or ingredients which do
     not constitute Licensed Products.

1.3  "End Products" means commercially marketable goods incorpo-
     rating a Licensed Product which goods are sold in a form to
     be administered to patients for therapeutic use or utilized
     as part of a diagnostic procedure and are not intended or
     marketed for further formulation, processing, repackaging or
     relabelling prior to such use. End Products shall include
     any Combination Product.

1.4  "Field" means the expression of any protein using the CMV-
     Enhancer described in the European Patent Application No.
     0 173 177.

1.5  "Licensed Patent Rights" means European Patent Publication
     Number 0 173 177, titled "Enhancer for Eucaryotic Expression
     Systems", and any foreign patent applications corresponding
     thereto (as entitled in the Attachment), and any patents
     which may issue therefrom and any reissue or extension
     thereof.

1.6  "Licensed Product(s)" means materials (including organisms),
     the manufacture, use or sale of which would, in the absence
     of this Agreement, infringe one or more unexpired issued
     claims of the Licensed Patent Rights.

/ 3

- 3 -

1.7   "Net Sales" means the gross invoice value (not including German turnover tax) less

    1.   cash discounts, trade discounts or quantity discounts;

    2.   allowances or credits to customers on account of settlement of complaints, returns and retroactive price reductions;

    3.   sales (turnover) and other excise taxes imposed upon the LICENSEE;

    4.   costs paid by LICENSEE for packaging, freight outwards, transportation insurances and duties,

and, with respect to sales of End Products by a Sublicensee, the Net Sales of the Sublicensee in respect of the sale of End Products as defined herein.

In the case of Combination Products for which the agent or ingredient constituting a Licensed Product and each of the other active agents or ingredients not constituting Licensed Products have established market prices when sold separately, Net Sales shall be determined by multiplying the Net Sales for each such Combination Product by a fraction, the numerator of which shall be the established market price for the Licensed Products(s) contained in the Combination Product and the denominator of which shall be the sum of the established market prices for the Licensed Product(s) plus the other active agents or ingredients contained in the Combination Product. When such separate market prices are not established, then the parties shall negotiate in good faith to determine a fair and eqitable method of calculating Net Sales for the Combination Product in question.

/ 4

- 4 -

1.8  "Sublicensee" means any person who receives a sublicense
     pursuant to Section 2.3 hereof.

2.   Grant

2.1  BEHRINGWERKE hereby grants to LICENSEE, and LICENSEE hereby
     accepts, a worldwide non-exclusive license in the Field
     under the Licensed Patent Rights (a) to make and use pro-
     teins for research purposes; (b) to make, use and sell
     Licensed Products identified by LICENSEE prior to its
     manufacture in commercial quantities unless BEHRINGWERKE has
     at that time not already granted exclusive rights on such
     Licensed Product to a third party.

2.2  The term of said license will continue in effect until
     expiration or earlier termination in accordance with Section
     8 hereof.

2.3  LICENSEE shall be entitled to grant sublicenses of its
     rights hereunder, but only with respect to Licensed Products
     produced from genetic constructs made by LICENSEE using the
     Licensed Patent Rights and provided by LICENSEE to the
     Sublicensee. Any Net Sales of End Products by a LICENSEE
     Sublicensee shall be deemed to be Net Sales of LICENSEE for
     purposes of royalty payments due hereunder, and LICENSEE
     shall remain obligated to pay all royalties due with respect
     to End Products sold by any Sublicensee. If LICENSEE shall
     grant any sublicenses under this Agreement, the LICENSEE
     shall obtain the written commitment of such Sublicensees to
     abide by all applicable terms and conditions of this Agree-
     ment and LICENSEE shall remain fully responsible to BEHRING-
     WERKE for the performance of any and all terms by such
     Sublicensee, including but not limited to the payment of
     royalties. All such sublicenses shall expire or terminate on
     the expiration or termination of this Agreement.

/ 5

- 5 -

2.4  It is agreed that LICENSEE has the right to take the follow-
     ing actions, none of which shall constitute a sublicense
     hereunder:

     a)   The appointment of an agent or distributor to market,
          sell or otherwise dispose of Licensed Products; and

     b)   The subcontracting of the development or manufacture of
          Licensed Products.

     LICENSEE shall inform BEHRINGWERKE about any such actions.


3.   Royalties

3.1  In consideration of the rights granted herein, LICENSEE will
     pay to BEHRINGWERKE during the term hereof:

     a)   A non-refundable/non-creditable license issue fee of
          DM 20,000 within thirty (30) days of execution hereof;

     b)   A minimum annual payment in the amount of DM 20,000 due
          on each anniversary of the effective date set forth on
          the first page hereof, with such payment to be credit-
          able against royalties due to Behringwerke hereunder at
          any time during the term hereof, but not refundable,
          even if this agreement should terminate for any reason
          before the contractual term; and

     c)   Running royalties at a rate of one-half percent (0.5 %)
          of Net Sales of End Products by LICENSEE and its
          Affiliates and Sublicensees.

3.2  The royalty on sales in currencies other than Deutsche Mark
     shall be calculated using the average of the daily exchange
     rates for such currency quoted by Deutsche Bundesbank,
     Frankfurt, foreign exchange desk, for each of the last

/ 6

- 6 -

thirty (30) banking days of each calender quarter. Royalty
payments to BEHRINGWERKE shall be in Deutsche Mark.

3.3   All taxes imposed on payments made by LICENSEE according to
this Agreement outside the Federal Republic of Germany shall
be borne by LICENSEE up to the tax rate laid down by the
double taxation agreement consisting between the Federal
Republic of Germany and the USA LICENSEE is allowed to
deduct the withholding tax from said payments and has
promptly to provide BEHRINGWERKE with the appropriate tax
receipts for the taxes to be borne by BEHRINGWERKE.

If the withholding tax rate should be raised by an amendment
of the double taxation agreement above fifteen percent
(15 %), the portion exceeding said tax rate shall be borne
by LICENSEE.

3.4   With respect to any sales of End Products outside the USA by
LICENSEE, an Affiliate of LICENSEE, or a Sublicensee,
LICENSEE shall have the right to cause any Affiliate,
Sublicensee or other designee to make direct payment to
BEHRINGWERKE of the royalties otherwise due from LICENSEE
for such sales. BEHRINGWERKE shall accept such payments and
the amount of royalties to be paid by LICENSEE shall be
reduced by the amounts of such payments.

The amout of royalty due has to be remitted to the amount of
BEHRINGWERKE by SWIFT transfer.

If any payment is delayed, the spot selling rate valid on
the last business day of the corresponding term of payment
is to be used.

On payments in arrear LICENSEE shall pay interest at a rate
of three (3) percentage points above the central bank rate
of the Deutsche Bundesbank or the central bank rate in the
country of LICENSEE, whichever is higher. If in the country

/ 7

- 7 -

of LICENSEE a central bank rate is not available or is not the basis for determining the rate of interest that banks charge to borrowers then such rate of interest shall be applied as is the guiding market rate for such purpose.

Any losses suffered by BEHRINGWERKE in terms of less favourable exchange rates as a result of such delayed payments have to be refunded by LICENSEE to BEHRINGWERKE by applying the modalities of accounting stipulated before.

4.   Reports, Payments and Accounting

4.1  Royalty Payment and Reports

LICENSEE is obliged to make written reports and royalty payments to BEHRINGWERKE within sixty (60) days after the close of each calendar quarter during the term of this Agreement, beginning with the quarter in which the first Net Sales occur. These reports shall show for the calendar quarter in question LICENSEE's Net Sales on sales by it of the End Products on a country-by-country basis, details of the quantities of End Products sold in each country and the country of manufacture if different, and the royalty due to BEHRINGWERKE thereon pursuant to Section 3.1 c) above, together with the same information for End Products sold by Sublicensees pursuant to Section 2.3 above.

Notwithstanding the foregoing, with respect to sales of End Products by Sublicensees, LICENSEE's reports hereunder shall be required to include only information regarding Net Sales of Sublicensees reflected in the reports required by Section 4.4 below which are received by LICENSEE during the calendar quarter in question. Concurrently with the making of each such report, LICENSEE shall make any payment due to BEHRING-WERKE of royalties for the period covered by such report.

/ 8

- 8 -

## 4.2   Accounting

LICENSEE agrees to keep records for a period of three (3) years showing the transactions on which royalties accrue to BEHRINGWERKE hereunder in sufficient detail to enable the royalties payable hereunder to be determined, and further agrees to permit its books and records to be examined by an independent accounting firm selected by BEHRINGWERKE and reasonably satisfactory to LICENSEE, from time-to-time to the extent necessary, but not more than once a year. Such examination is to be made confidentially by such independent accounting firm and at the expense of BEHRINGWERKE, except in the event that the results of the audit reveal a discrepancy in LICENSEE's favor of 5 % or more, then the audit fees shall be paid by LICENSEE.

## 4.3   Third Party Reports

In order to facilitate the reporting and payment of royalties by LICENSEE on Net Sales of End Products made by Sublicensees, LICENSEE shall require, as a term of any sublicense agreement that the other party to such agreement shall render written reports to LICENSEE of Net Sales of End Products by such party no less frequently than four times per year and in sufficient detail to enable the royalties payable by LICENSEE hereunder to be determined ("Third Party Reports"). LICENSEE shall also require such parties to keep records concerning such Net Sales for a period of at least three (3) years, and to permit reasonable examination of such records by LICENSEE or an independent accounting firm reasonably satisfactory to LICENSEE. Such examination can be requested by BEHRINGWERKE and LICENSEE shall comply with the request on the terms stipulated in Section 4.2 hereof.

/ 9

- 9 -

4.4   Confidentiality of Reports

BEHRINGWERKE agrees that the information set forth in (a)
LICENSEE's reports required by Section 4.1, (b) LICENSEE's
records subject to examination under Section 4.2, and (c)
all Third Party Reports shall be maintained in confidence by
BEHRINGWERKE.

5.   Warranties and Convenants of BEHRINGWERKE

5.1   BEHRINGWERKE represents to LICENSEE that BEHRINGWERKE is the
sole and exclusive licensee, with right to sublicense, under
the Licensed Patent Rights, and that BEHRINGWERKE has the
right to grant the license granted to LICENSEE hereunder.
To the knowledge of BEHRINGWERKE after reasonable investiga-
tion, the right and license granted by BEHRINGWERKE to
LICENSEE hereunder does not conflict with or infringe any
reasonably ascertainable or asserted patent, contract or
trade secret rights of any other person with respect to the
use of the Enhancer for Eucaryotic Expression Systems
disclosed in EP 0 173 177. As of the effective date of this
Agreement, BEHRINGWERKE has not received any notice of
infringement of or conflict with the patent, contract or
trade secret rights of any other person with respect to the
use of the Enhancer for Eucaryotic Expression Systems
disclosed in EP 0 173 177.

5.2   Nothing in this Agreement shall be construed as (a) a
warranty or representation by BEHRINGWERKE as to the validi-
ty or scope of any Licensed Patent Right; or (b) a warranty
or representation that anything made, used, sold, or other-
wise disposed of under any license granted in this Agreement
is or will be free from infringement of patents, copyrights
and trademarks of third parties; or (c) a warranty that the
use of the license does not cause damages for third parties.

/ 10

- 10 -

## 6.   Infringement

If LICENSEE becomes aware of a suspected infringement of the patents subject to the Licensed Patent Rights it shall notify BEHRINGWERKE in reasonable detail. If the alleged infringement consists of any act which, if done by LICENSEE, would be within the scope of the license granted under this Agreement, BEHRINGWERKE and LICENSEE shall (within a reasonable time of said notification) consult together with a view to agreeing upon a course of action to be pursued, which action shall be taken.

## 7.   Commercial Application

To induce BEHRINGWERKE to enter into this Agreement, LICENSEE represents that during the term of this Agreement it will exercise commercially reasonable efforts to proceed with the development, manufacture, and sale of End Products.

## 8.   Termination

8.1   Subject to earlier termination as hereinafter provided, this Agreement and the licenses granted hereunder shall continue in force on a country-by-country basis until the last to expire of the Licensed Patent Rights in each such country.

8.2   BEHRINGWERKE may terminate this Agreement and the said licenses by notice to LICENSEE to that effect if LICENSEE fails to perform or observe in any material respect any of the material obligations on its part to be performed or observed and such failure has not been remedied within two (2) months of the giving of a notice informing LICENSEE of such failure.

/ 11

- 11 -

8.3   LICENSEE may terminate this Agreement and the licenses granted pursuant hereto by giving BEHRINGWERKE two (2) months notice to that effect if LICENSEE determines to cease utilizing all license rights granted hereunder.

8.4   Surviving any termination are:

(a)   LICENSEE's obligation to make Section 4.1 reports and to maintain Section 4.2 records on, and to pay royalties accrued or accruable, including without limitation royalties due after termination on Net Sales by LICENSEE or its Affiliates or Sublicensees of End Products held at the date of termination;

(b)   LICENSEE's obligation under Section 4.2 to keep records and to allow a final audit;

(c)   BEHRINGWERKE's obligation of confidentiality under Section 4.4;

(d)   Any cause of action or claim of LICENSEE or BEHRINGWERKE, accrued or to accrue, because of any breach or default by the other party.


9.   **Assignment**

This Agreement may not be assigned by LICENSEE.


10.   **Applicable Law**

This Agreement shall be construed, interpreted and applied in accordance with the laws of the Federal Republic of Germany.

/ 12

- 12 -

## 11.  Arbitration

11.1 Any controversy arising under or related to this Agreement, or any disputed claim by either party against the other under this Agreement shall be settled by arbitration with a single arbitrator in accordance with the Rules of the International Chamber of Commerce. Arbitration will be by a third party arbitrator mutually agreed upon in writing by the parties within thirty (30) days of such arbitration request, or, in the absence of such agreement, selected according to the Rules of the International Chamber of Commerce.

11.2 Any arbitration under Section 11.1 shall be held in Paris, France.

11.3 Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

11.4 In the event that these provisions for arbitration are held to be invalid or unenforceable, any litigation or other legal proceeding to resolve any controversy or disputed claim shall be instituted in the Federal Republic of Germany.

## 12.  Notices

All notices, demands, or other writings in this Agreement provided to be given or made or sent, or which may be given, made or sent, by either party hereto to the other, shall be deemed to have been fully given or made or sent when done in writing and hand delivered, sent by facsimile transmission, or sent by recorded delivery or registered post, and addressed as follows:

/ 13

- 13 -

TO BEHRINGWERKE:     Behringwerke AG
Patents and Contracts Dept.
Postfach 11 40
3550 Marburg
Federal Republic of Germany


TO LICENSEE:     Genentech Inc.
460 Point San Bruno Blvd.
South San Francisco, CA 94080
USA


The address to which any notice, demand or other writing may be given or made or sent to any party may be changed upon written notice given by such party as above provided.


13.  Severability

If any provision of this Agreement is declared invalid by an arbitrator pursuant to Section 11 or by a court of last resort or by any court or other governmental body from the decision of which an appeal is not taken within the time provided by law, then and in such event, this Agreement will be deemed to have been terminated only as to the portion thereof which relates to the provision invalidated by that decision and only in the relevant jurisdiction, but this Agreement, in all other respects and all other jurisdictions, will remain in force, provided, however, that if the provision so invalidated is essential to the Agreement as a whole, then the parties shall negotiate in good faith to amend the terms hereof as nearly as practical to carry out the original intent of the parties, and, failing amendment to arbitration for resolution pursuant to Section 11.

/ 14

- 14 -

## 14.  Entire Agreement

This Agreement constitutes the entire Agreement between the parties pertaining to the subject matter hereof and supersedes all prior agreements whether oral or written. This Agreement may not be changed or modified except by an instrument in writing signed by both parties. No representative of either party has been authorized to make any representation, warranty, or promise contained herein.


IN WITNESS WHEREOF, the parties hereto have executed this Agreement in duplicate originals by their duly authorized officers or representatives.



Marburg, *Aug 1, 1983*                    BEHRINGWERKE AKTIENGESELLSCHAFT




San Francisco,                            GENENTECH INC.

## ATTACHMENT TO LICENSE AGREEMENT ON AN ENHANCER FOR EUCARYOTIC EXPRESSION SYSTEMS

### Patent Applications:

DE    No. P 34 31 140.8

AU    No. 4 66 07/85

CA    No. 489,333

EP    No. 85110239.2
(designation of all member countries of filing date)

JP    No. 185632/1985

US    No. 285,330

# Exhibit 2



US005849522A

# United States Patent [19]

## Fleckenstein et al.

[11] **Patent Number:** 5,849,522

[45] **Date of Patent:** Dec. 15, 1998

[54] **ENHANCER FOR EUKARYOTIC EXPRESSION SYSTEMS**

[75] Inventors: **Bernhard Fleckenstein**, Schlaifhausen, Germany; **Walter Schaffner**, Weiningen, Switzerland; **Frank Weber**, Rheinfelden, Switzerland; **Karoline Dorsch-Häsler**, Zürich, Switzerland; **Gerhard Jahn**, Neunkirchen; **Michael Boshart**, Heidelberg, both of Germany

[73] Assignee: **Hoechst Aktiengesellschaft**, Frankfurt am Main, Germany

[21] Appl. No.: **467,143**

[22] Filed: **Jun. 6, 1995**

### Related U.S. Application Data

[63] Continuation of Ser. No. 37,658, Mar. 19, 1993, which is a continuation of Ser. No. 806,301, Dec. 19, 1991, abandoned, which is a continuation of Ser. No. 285,330, Dec. 14, 1988, abandoned, which is a continuation of Ser. No. 170,140, Mar. 14, 1988, abandoned, which is a continuation of Ser. No. 59,228, Jun. 4, 1987, abandoned, which is a continuation of Ser. No. 768,816, Aug. 23, 1985, abandoned.

[30] **Foreign Application Priority Data**

Aug. 24, 1984 [DE] Germany ........................... 34 31 140.8

[51] Int. Cl.⁶ ........................... **C12P 21/02; C07H 21/04; C12N 15/11; C12N 15/67**

[52] U.S. Cl. ..................... **435/69.1**; 435/172.3; 536/24.1

[58] Field of Search .............................. 435/69.1, 172.3; 536/24.1

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

5,168,062  12/1992  Stinski ........................... 435/240.2

#### OTHER PUBLICATIONS

Greenaway et al., "Human cytomegalovirus DNA: BamHI, EcoRI and PstI restriction endonuclease cleavage maps," Gene, 18:355–360 (1982).

Stinski et al., "Organization and Expression of the Immediate Early Genes of Human Cytomegalovirus,"J. Virol., 46:1–14 (Apr. 1983).

Stenberg et al., "Structural Analysis of the Major Immediate Early Gene of Human Cytomegalovirus," J. Virol., 49:190–199 (Jan. 1984).

Clanton et al., "Neoplastic transformation by a cloned human cytomegalovirus DNA fragment uniquely homoloqous to one of the transforming regions of herpes simplex virus type 2," PNAS–USA, 80:3826–3830 (1983).

Nelson et al., "Structure of the Transforming Region of Human Cytomegalovirus AD169,"J. Virol., 49:109–115 (Jan. 1984).

Gorman et al., "Recombinant Genomes Which Express Chloramphenicol Acetyl–transferase in Mammalian Cells," Mol. Cell. Biol., 2:1044–1051 (1982).

Laimins et al., "Host–specific activation of transcription by tandem repeats from simian virus 40 and Moloney murine sarcoma virus," PNAS–USA, 79:6453–6457 (1982).

Kaufman et al., "Construction of a Modular Dihydrofolate Reductase cDNA Gene: Analysis of Signals Utilized for Efficient Expression," Mol. Cell. Biol., 2:1304–1319 (1982).

Dynan et al., "Isolation of Transcription Factors that Discriminate between Different Promoters Recognized by RNA Polymerase II," Cell, 32:669–680 (1983).

Breathnach et al., "Plasmids for the cloning and expression of full–length double–stranded cDNAs under control of the SV40 early or late gene promoter," Nucl. Acids Res., 11:7119–7136 (1983).

Kaufman et al., "Growth–Dependent Expression of Dihydrofolate Reductase mRNA from Modular cDNA Genes," Mol. Cell. Biol., 3:1598–1608 (1983).

Jahn et al., Journal of Virology, 49:363–370 (1984).

Weber et al.. Cell, 36:983–992 (1984).

Thomsen et al., Proc. Natl. Acad. Sci., 81:659–663 (1984).

Banerji et al., Cell 33:729–740 (1983).

Gillies et al., Cell, 33:717–728 (1983).

Okazaki et al., EMBO J., 4:2589–2595 (1985).

Theisen et al., EMBO J., 5:719–724 (1986).

Garabedian et al., Cell, 45:859–867 (1986).

Ciliberto et al., Cell, 41:531–540 (1985).

Edlund et al., Science, 230:912–916 (1985).

Boulet et al., Proc. Natl. Acad. Sci. (USA), 83:3599–3603 (1986).

*Primary Examiner*—Nancy Degen
*Attorney, Agent, or Firm*—Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.

[57] **ABSTRACT**

An enhancer has been located in the upstream region of the major immediate early gene of human cytomegalovirus and has been isolated, which enhancer is more active than that from SV40 and has a wide host cell spectrum. Hence, it is suitable for eukaryotic expression systems wherein it can be incorporated upstream or downstream of the structural gene or of the regulation region.

**4 Claims, 2 Drawing Sheets**



FIG. 1a

**U.S. Patent**       Dec. 15, 1998       Sheet 2 of 2       **5,849,522**

## FIG. 1b

```
-737 AATCAAATAT GGCCATTAGC CATATATTC ATTGGTTATA TAGCATAAAT CAATATTGGC TATTGGCCAT TGCATACGTT GTATCCCATAT CATAATAATGT
                                                                         BglI

-637 ACATTATAT TGGCTCATGT CCAACATTAC CGCCATGTTG ACATTGATTA TTGACTAGTT ATTAATAGTA ATCAATTACG GGGTCATTAG TTCATAGCCC

-537 ATATATGGAG TTCCGCGTTA CATAACTTAC GGTAAATGGC CCGCCTGTCT GACCGCCCAA CGACCCCGC CCATTGACGT CAATAATGAC GTATGTTCCC
                          C4                                                                  C2

-437 ATAGTAACGC CAATAGGGAC TTTCCATTGA CGTCAATGGG TGGAGTATTT ACGGTAAACT GCCCACTTGG CAGTACATCA AGTGTATCAT ATGCCAAGTA
                                                                                              C4

-337 CGCCCCCTAT TGACGTCAAT GACGGTAAAT GGCCCGCCTG GCATTATGCC CAGTACATGA CCTTATGGGA CTTTCCTACT TGGCAGTACA TCTACGTATT

-237 AGTCATCGCT ATTACCATGG TGATGCGGTT TTGGCAGTAC ATCAATGGGC GTGGATAGCG GTTTGACTCA CGGGGATTTC CAAGTCTCCA CCCCATTGAC

-137 GTCAATGGGA GTTTGTTTTG GCACCAAAAT CAACGGGACT TTCCAAAATG TCGTAACAAC TCCGCCCCAT TGACGCAAAT GGGCGGTAGG CGTGTACGGT
                          C2

-37 GGGAGGTCTA TATAAGCAGA GCTCGTTTAG TGAACCGTCA GATCGCCTGG AGACGCCATC CACGCTGTTT TGACCTCCAT AGAAGACACC GGGACCGATC
                          SstI

+64 CAGCCTCCGC GGCCGGGAAC GGTGCATTGG AACGCGGATT CCCGTGCCA AGAGTGACGT AAGTACCGCC TATAGAGTCT ATAGGCCCAC CCCCTTGGCT

+164 TCTTATGCAT GCTATACTGT TTTTGGCTTG
                 SphI
```

5,849,522

1

### ENHANCER FOR EUKARYOTIC EXPRESSION SYSTEMS

This is a continuation of application Ser. No. 08/037,658, filed Mar. 19, 1993, which is a continuation of application Ser. No. 07/806,301, filed Dec. 13, 1991, now abandoned, which is a continuation of application Ser. No. 07/285,330, filed Dec. 14, 1988, now abandoned, which is a continuation of application Ser. No. 07/170,140, filed Mar. 14, 1988, now abandoned, which is a continuation of application Ser. No. 07/059,228, filed Jun. 4, 1987, now abandoned, which is a continuation of application Ser. No. 06/768,816, filed Aug. 23, 1985, now abandoned.

The invention is directed to an enhancer for eukaryotic expression systems, containing DNA from the upstream region of the major immediate early (IE) region of human cytomegalovirus (HCMV). According to certain embodiments, the enhancer is obtainable by sonication of the DNA from the IE region of HCMV with the formation of about 300 bp fragments, co-transfection of CV1 monkey cells and enhancerless SV40 genome, isolation of the recombinants which show lytic growth, and isolation of the inserted HCMV DNA, and enhancer-active mutants of this DNA. A process for improvement of eukaryotic expression systems by incorporating the enhancer upstream or downstream of the structural gene or of the regulation region is also provided. According to certain embodiments, the enhancer is incorporated not more than about 7,000 bp, or about 3,000 bp, upstream or downstream of the sites specified.

The "enhancer trap" is described in F. Weber et al., Cell 36 (1984) 983–992; in respect of HCMV DNA, see G. Jahn et al., J. Virology, February 1984, Vol. 49, 363–370 and Literature quoted there, also D. R. Thomsen et al., Proc. Natl. Acad. Sci. USA, 81 (1984), 659–663, and P. J. Greenaway et al., Gene 18 (1982) 355–360.

In the HCMV DNA, the enhancer is located in the Hind III E fragment (Greenaway et al., loc. cit.), which includes the Pst I m fragment (about 2.1 kb).

Two recombinants were isolated by sonication of the DNA from the IE region of HCMV with the formation of about 300 bp fragments, co-transfection of CV1 monkey cells and enhancerless SV40 genome, isolation of the recombinants which show lytic growth, and isolation of the inserted HCMV DNA, and enhancer-active mutants of this DNA. Those recombinants contained 341 and 262 bp of HCMV DNA, located at positions –118 to –458 and –263 to –524 respectively on the published DNA sequence (Greenaway et al., loc. cit.). The overlap of 196 bp contains an essential part of the enhancer. Deletion mutants, for example obtained by Aha II and religation of the fragments in various combinations, are likewise enhancer-active.

The invention also relates to DNA which is a sequence homolog of reisolated HCMV specific enhancer DNA to the extent of at least 75, preferably at least 80, %, or is hybridized therewith.

The enhancer increases the expression of rabbit beta-globin in HeLa cells, after incorporation downstream of the appropriate gene, by at least two orders of magnitude, irrespective of the orientation. Thus the enhancer is superior to that of SV40 by the factor 3 to 5, dependent on the host system.

The HCMV enhancer has activity in a broad spectrum of host cells (cells of primates, mice, rats and frogs). It stimulates the expression of proteins in eukaryotic systems and thus facilitates the production of modified proteins, for example glycoproteins.

2

It is also possible to eliminate the promoter instrinsic to HCMV, for example by deletion of about 100 bp using Bal 31 beyond the Sac I restriction site. Where appropriate, the enhancer sequence can be modified by the attachment of adaptors or linkers.

When used with the intrinsic promoter, it is possible for a eukaryotic promoter to be substituted, for example by incorporation with inclusion of the first splice donor consensus sequence of the IE gene before the splice acceptor sequence of the gene which is to be expressed.

The invention is illustrated in detail in the Example which follows.

### EXAMPLE

An "enhancer trap" was prepared, by the method of Weber et al., loc. cit., by removal of the 72 bp repeat region (restriction with XbaI and KpnI) from the SV40 genome. The PstI m fragment (2.1 kb) from HCMV, strain AD 169, was broken down by sonication into fragments about 300 bp in size, and co-transfection with the "enhancer trap" was carried out. The recombinant DNA was isolated from the colonies which showed the best lytic growth. By sequencing, a 262 bp segment of HCMV DNA was found in which an end-on-end ligation had occurred on one side, whereas on the other side recombination took place via a 6 bp homology between HCMV (nucleotides –531 to –526, FIG. 1a) and SV40 (nucleotides 67 to 72). This resulted in a deletion of 27 bp of the SV40 DNA (nucleotides 73 to 99), which affected both 21 bp repeats of the SV40 early promoter. The 262 bp segment is identified in the restriction map (FIG. 1a) and in the DNA sequence (FIG. 1b) by square brackets labeled "C4".

Another enhancer-active recombinant with 341 bp of HCMV DNA proved to be a ligation product having the ends of a linear "enhancer trap" molecule (in which a few bases had been eliminated from the KpnI and XbaI ends of the SV40 DNA, presumably by exonucleolytic deletion before ligation within the transfected cell). The HCMV DNA of this recombinant is identified in FIGS. 1a and 1b by "C2"; it extends from –188 to –458. Thus the segments C2 and C4 overlap over a region of 196 bp.

The Hind III C fragment of the recombinant virus with the C4 insert, and the PstI m fragment of HCMV were first cloned in pUC 8 (J. Vieira et al., Gene 19 (1982) 259–268) in both orientations, excised as Hind III-SalI fragments, and recloned between the HindIII and XhoI restriction site of pβX1, that is to say downstream of the rabbit β-globin gene (J. Banerji et al., Cell 27 (1981) 299–308; J. de Villiers et al., Nucl. Acids Res. 9 (1981) 6251–6254; S. Rusconi et al., Proc. Natl., Acad. Sci. USA 78 (1981) 5051–5055; H. Weber et al., ICN-UCLA Symp. Mol. Cell. Biol. 33 (1981) 367; B. Wasylyk et al., Cell 32 (1983) 503–514). The enhancer action on β-globin transcription was determined by S1 nuclease analysis of cytoplasmic RNA after transient expression in HeLa cells.

All recombinants were compared under standardized conditions with analogous recombinants having the SV40 enhancer. It emerged that the HCMV enhancer increases the synthesis of β-globin by at least 2 orders of magnitude—irrespective of the orientation.

We claim:
1. The method to increase expression of a gene in a mammalian cell comprising inserting into a mammalian cell an isolated DNA enhancer consisting of DNA from the upstream region of the major immediate early (IE) gene of human cytomegalovirus (HCMV) and a heterologous gene

5,849,522

3

that is to be expressed, wherein the DNA from the upstream region of the IE gene of HCMV is the only HCMV material to which the mammalian cell is exposed.

2. The method as claimed in claim 1, wherein the DNA enhancer consists of the DNA from the PstI restriction enzyme site upstream of the transcription start site to position –118 of the PstI-m fragment, or an enhancer-active part thereof.

4

3. The method as claimed in claim 1, wherein the DNA enhancer is included approximately 7000 base pairs upstream or downstream of the heterologous gene.

4. The method as claimed in claim 1, wherein the DNA enhancer is included approximately 3000 base pairs upstream or downstream of the heterologous gene.

\* \* \* \* \*

## UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.    :    5,849,522

DATED    :    December 15, 1998

INVENTOR(S) :    Bernhard FLECKENSTEIN et al.

It is certified that error appears in the above-indentified patent and that said Letters Patent is hereby corrected as shown below:

Claim 1, column 2, line 63,  "The Method" should read
--A Method--.

Signed and Sealed this

Twenty-eighth Day of December, 1999

Attest:

Q. TODD DICKINSON

Attesting Officer                Acting Commissioner of Patents and Trademarks

# Exhibit 3

US006218140B1

(12) **United States Patent**
Fleckenstein et al.

(10) Patent No.: **US 6,218,140 B1**
(45) Date of Patent: **\*Apr. 17, 2001**

(54) **ENHANCER FOR EUKARYOTIC EXPRESSION SYSTEMS**

(75) Inventors: **Bernhard Fleckenstein**, Schlaifhausen (DE); **Walter Schaffner**, Weiningen (CH); **Frank Weber**, Rheinfelden (CH); **Karoline Dorsch-Häsler**, Zürich (CH); **Gerhard Jahn**, Neunkirchen (DE); **Michael Boshart**, Heidelberg (DE)

(73) Assignee: **Hoechst Aktiengesellschaft**, Frankfurt am Main (DE)

(\*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **08/338,213**

(22) Filed: **Nov. 9, 1994**

**Related U.S. Application Data**

(63) Continuation of application No. 07/285,330, filed on Dec. 14, 1988, now abandoned, which is a continuation of application No. 07/170,140, filed on Mar. 14, 1988, now abandoned, which is a continuation of application No. 07/059, 228, filed on Jun. 4, 1987, now abandoned, which is a continuation of application No. 06/768,816, filed on Aug. 23, 1985, now abandoned.

(30) **Foreign Application Priority Data**

Aug. 24, 1984   (DE) ................................. 34 31 140

(51) Int. Cl.$^7$ .......................... C12P 21/00; C12N 15/85; C12N 15/63; C07H 21/04

(52) U.S. Cl. ........................ 435/69.1; 435/455; 435/456; 435/320.1; 435/325; 435/91.4; 435/91.41; 536/23.1; 536/24.1

(58) Field of Search ................................ 435/69.1, 172.1, 435/172.3, 320.1, 240.2, 455, 456, 325, 91.4, 91.41; 536/23.1, 24.1

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,168,062 | \* 12/1992 | Stinski | ................. 435/240.2 |
| 5,385,839 | 1/1995 | Stinski | ................. 435/366 |
| 5,849,522 | \* 12/1998 | Flechenstein et al. | ............. 435/69.1 |

OTHER PUBLICATIONS

Weber et al. *Cell* 36:983–992, 1984 (Apr.).\*
John et al. *J. Virology* 49(2):363–370, 1984 (Feb.).\*
Edlund et al. *Science* 230:912–916, 1985.\*
Boulet et al. *Proc. Natl. Acad. Sci.* (USA) 83:3599–3603, 1986.\*
Okzki et al. *EMBO, J.* 4:2589–2595, 1985.\*

Theiser et al. *EMBO, J.* 5:719–724, 1986.\*
Garabedian et al. *Cell* 45:859–867, 1986.\*
Ciliberto et al. *Cell* 41:531–540, 1985.\*
Gillies et al. *Cell* 33:717–728, 1983.\*
Boneji et al *Cell* 33:729–740, 1983.\*
Thomsen et al. P.N.A.S. 81:659–663, 1984 (Feb.).\*
Greenaway et al., "Human cytomegalovirus DNA: BamHI, EcoRI and PstI restriction endonuclease cleavage maps," Gene, 18:355–360 (1982).
Stinski et al., "Organization and Expression of the Immediate Early Genes of Human Cytomegalovirus," J. Virol., 46:1–4 (Apr. 1983).
Stenberg et al., "Structural Analysis of the Major Immediate Early Gene of Human Cytomegalovirus," J. Virol., 49:190–199 (Jan. 1984).
Clanton et al., "Neoplastic transformation by a cloned human cytomegalovirus DNA fragment uniquely homologous to one of the transforming regions of herpes simplex virus type 2," PNAS–USA, 80:3826–3830 (1983).
Nelson et al., "Structure of the Transforming Region of Human Cytomegalovirus AD169," J. Virol., 49:109–115 (Jan. 1984).
Gorman et al., "Recombinant Genomes Which Express Chloramphenicol Acetyl–transferase in Mammalian Cells," Mol. Cell. Biol., 2:1044–1051 (1982).
Laimins et al., "Host–specific activation of transcription by tandem repeats from simian virus 40 and Moloney murine sarcoma virus," PNAS–USA, 79:6453–6457 (1982).
Kaufman et al., "Construction of a Modular Dihydrofolate Reductase cDNA Gene: Analysis of Signals Utilized for Efficient Expression," Mol. Cell. Biol., 2:1304–1319 (1982).
Dynan et al., "Isolation of Transcription Factors That Discriminate between Different Promoters Recognized by RNA Polymerase II," Cell, 32:669–680 (1983).
Breathnach et al., "Plasmids for the cloning and expression of full–length double–stranded cDNAs under control of the SV40 early or late gene promoter," Nucl. Acids Res., 11:7119–7136 (1983).
Kaufman et al., "Growth–Dependent Expression of Dihydrofolate Reductase mRNA from Modular cDNA Gene," Mol. Cell. Biol., 3:1598–1608 (1983).

\* cited by examiner

*Primary Examiner*—David Guzo
(74) *Attorney, Agent, or Firm*—Finnegan, Henderson, Farabow, Garrett and Dunner, L.L.P.

(57) **ABSTRACT**

An enhancer has been located in the upstream region of the major immediate early gene of human cytomegalovirus and has been isolated, which enhancer is more active than that from SV40 and has a wide host cell spectrum. Hence, it is suitable for eukaryotic expression systems wherein it can be incorporated upstream or downstream of the structural gene or of the regulation region.

**45 Claims, 2 Drawing Sheets**



FIG. 1a

## FIG. 1b

```
-737 AATCAATATT GGCCATTAGC CATAATATTC ATTGGTTATA TAGGCATAAAT CAATAATTGGC TATTGGCCAT TATCCATAT TGCATACGTT GTATCCATAT CATAAAATGT
           BalI

-637 ACAATTATAT TGGCTCATGT CCAACATTAC CGCCATGTTG ACATTGATTG TTGACTAGTT ATTAATAGTA ATCAATTACG GGGTCATTAG TTCATAGCCC

-537 ATATATGG AG TTCCGCGTTA CATAACTTAC GGTAAATGGC CCGCTGTCT GACCGCCCAA CGACCCCGC CCATTGACGT CAATAATGAC GTATGTTCCC
        C4                                                          C2

-437 ATAGTAACGC CAATAGGGAC TTTCCATTGA CGTCAATGGG TGGAGTATTT ACGGTAAACT GCCCACTTGG CAGTACATCA AGTGTATCAT ATGCCAAGTA

-337 CGCCCCCTAT TGACGTCAAT GGCCGCGCTG GCATTATGCC CAGTACATGA CCTTATGGGA CTTTCCTACT TGGCAGTACA TCTACGTATT
                                                                      C4

-237 AGTCATCGCT ATTACCATGG TGATGCGGTT TTGGCAGTAC ATCAATGGGC GTGGATAGCG GTTTGACTCA CGGGGATTTC CAAGTCTCCA CCCCATTGAC
        C2

-137 GTCAATGGGA GTTTGTTTTG GCACCAAAAT CAACGGGACT TTCCAAAATG TCGTAACAAC TCCGCCCCAT TGACGCAAAT GGGCGGTAGG CGTGTACGGT

-37 GGGAGGTCTA TATAAGCAGA GCTCGTTTAG TGAACCGTCA GATCGCCTGG AGACGCCATC CACGCTGTTT TGACTTCCAT AGAAGACACC GGGACCGATC
                       SstI

+64 CAGCCTCCGC GGCCGGGAAC GGTGCATTGG AACGCGGATT CCCGTGCCA AGAGTGACGT AAGTACCGCC TATAGAGTCT ATAGGCCAC CCCCTTGGCT

+164 TCTTATGCAT GCTATACTGT TTTTGGCTTG
        SphI
```

US 6,218,140 B1

| 1 | 2 |

# ENHANCER FOR EUKARYOTIC EXPRESSION SYSTEMS

This application is a continuation application Ser. No. 07/285,330 filed Dec. 14, 1988, abandoned which is a continuation application of prior application Ser. No. 07/170,140, filed Mar. 14, 1988 (abandoned), which is a continuation application of prior application Ser. No. 07/059,228, filed Jun. 4, 1987 (abandoned), which is a continuation of prior application Ser. No. 06/768,816, filed Aug. 23, 1985 (abandoned).

The invention is directed to an enhancer for eukaryotic expression systems, containing DNA from the upstream region of the major immediate early (IE) region of human cytomegalovirus (HCMV). According to certain embodiments, the enhancer is obtainable by sonication of the DNA from the IE region of HCMV with the formation of about 300 bp fragments, co-transfection of CV1 monkey cells and enhancerless SV40 genome, isolation of the recombinants which show lytic growth, and isolation of the inserted HCMV DNA, and enhancer-active mutants of this DNA. A process for improvement of eukaryotic expression systems by incorporating the enhancer upstream or downstream of the structural gene or of the regulation region is also provided. According to certain embodiments, the enhancer is incorporated not more than about 7,000 bp, or about 3,000 bp, upstream or downstream of the sites specified. Other advantageous embodiments follow.

The "enhancer trap" is described in F. Weber et al., Cell 36 (1984) 983–992; is respect of HCMV DNA, see G. Jahn et al., J. Virology, Feb. 1984, Vol. 49, 363–370 and literature quoted there, also D. R. Thomsen et al., Proc. Natl. Acad. Sci. USA, 81 (1984), 659–663, and P. J. Greenaway et al., Gene 18 (1982) 355–360.

In the HCMV DNA, the enhancer is located in the Hind III E fragment (Greenaway et al., loc. cit.), which includes the Pst I m fragment (about 2.1 kb).

Two recombinants were isolated by sonication of the DNA from the IE region of HCMV with the formation of about 300 bp fragments, co-transfection of CV1 monkey cells and enhancerless SV40 genome, isolation of the recombinants which show lytic growth, and isolation of the inserted HCMV DNA, and enhancer-active mutants of this DNA. Those recombinants contained 341 and 262 bp of HCMV DNA, located at positions –118 to –458 and –263 to –524 respectively on the published DNA sequence (Greenaway et al., loc. cit.). The overlap of 196 bp contains an essential part of the enhancer. Deletion mutants, for example obtained by Aha II and religation of the fragments in various combinations, are likewise enhancer-active.

The invention also relates to DNA which is a sequence homolog of reisolated HCMV specific enhancer DNA to the extent of at least 75, preferably at least 80, %, or is hybridized therewith.

The enhancer increases the expression of rabbit beta-globin in HeLa cells, after incorporation downstream of the appropriate gene, by at least two orders of magnitude, irrespective of the orientation. Thus the enhancer is superior to that of SV40 by the factor 3 to 5, dependent on the host system.

The HCMV enhancer has activity in a broad spectrum of host cells (cells of primates, mice, rats and frogs). It stimulates the expression of proteins in eukaryotic systems and thus facilitates the production of modified proteins, for example glycoproteins.

It is also possible to eliminate the promoter intrinsic to HCMV, for example by deletion of about 100 bp using Bal 31 beyond the Sac I restriction site. Where appropriate, the enhancer sequence can be modified by the attachment of adaptors of linkers.

When used with the intrinsic promoter, it is possible for a eukaryotic promoter to be substituted, for example by incorporation with inclusion of the first splice donor consensus sequence of the IE gene before the splice acceptor sequence of the gene which is to be expressed.

The invention is illustrated in detail in the Example which follows.

## EXAMPLE

An "enhancer trap" was prepared, by the method of Weber et al., loc. cit., by removal of the 72 bp repeat region (restriction with XbaI and KpnI) from the SV40 genome. The PstI m fragment (2.1 kb) from HCMV, strain AD 169, was broken down by sonication into fragments about 300 bp in size, and co-transfection with the "enhancer trap" was carried out. The recombinant DNA was isolated from the colonies which showed the best lytic growth. By sequencing, a 262 bp segment of HCMV DNA was found in which an end-on-end ligation had occurred on one side, whereas on the other side recombination took place via a 6 bp hemology between HCMV (nucleotides –531 to –526, FIG. 1a) and SV40 (nucleotides 67 to 72). This resulted in a deletion of 27 bp of the SV40 DNA (nucleotides 73 to 99), which affected both 21 bp repeats of the SV40 early promoter. The 262 bp segment is identified in the restriction map (FIG. 1a) and in the DNA sequence (FIG. 1b) by square brackets labeled "C4".

Another enhancer-active recombinant with 341 bp of HCMV DNA proved to be a ligation product having the ends of a linear "enhancer trap" molecule (in which a few bases had been eliminated from the KpnI and XbaI ends of the SV40 DNA, presumably by exonucleolytic deletion before ligation within the transfected cell). The HCMV DNA of this recombinant is identified in FIGS. 1a and 1b by "C2"; it extends from –188 to –458. Thus the segments C2 and C4 overlap over a region of 196 bp.

The Hind III C fragment of the recombinant virus with the C4 insert, and the PstI m fragment of HCMV were first cloned in pUC 8 (J. Vieira et al., Gene 19 (1982) 259–268) in both orientations, excized as Hind III-SalI fragments, and recloned between the HindIII and XhoI restriction site of p βx14, that is to say downstream of the rabbit β-globin gene (J. Banerji et al., Cell 27 (1981) 299–308; J. de Villiers et al., Nucl. Acids Res. 9 (1981) 6251–6254; S. Rusconi et al., Proc. Natl., Acad. Sci. USA 78 (1981) 5051–5055; H. Weber et al., ICN-UCLA Symp. Mol. Cell. Biol. 33 (1981) 367; B. Wasylyk et al., Cell 32 (1983) 503–514). The enhancer action on β-globin transcription was determined by S1 nuclease analysis of cytoplasmic RNA after transient expression in Hela cells.

All recombinants were compared under standardized conditions with analogous recombinants having the SV40 enhancer. It emerged that the HCMV enhancer increases the synthesis of β-globin by at least 2 order of magnitude—irrespective of the orientation.

We claim:

1. An isolated enhancer for animal or mammalian host cell expression systems, consisting of (a) a DNA molecule from position –458 to –118 or position –524 to –263 of the upstream region of the major immediate early (IE) region of human cytomegolovirus (HCMV) strain AD 169 or (b) a DNA molecule that is at least 80% homologous to the DNA molecule of (a), wherein said DNA molecule of (a) or (b)

US 6,218,140 B1

3

enhances the transcription of DNA in an animal or mammalian host cell expression system.

2. An isolated enhancer as claimed in claim 1, obtained by sonication of the DNA from the IE region of HCMV with the formation of about 300 bp fragments, co-transfection of CV1 monkey cells and enhancerless SV40 genome, isolation of the recombinants which show lytic growth, and isolation of the inserted HCMV DNA.

3. A process for improvement of animal or mammalian host cell expression systems, which comprises incorporation of an enhancer as claimed in claim 1, upstream of a regulation region of a structural gene.

4. The process as claimed in claim 3, wherein the enhancer in incorporated not more than about 7,000 bp upstream of the regulation region.

5. The process as claimed in claim 4, wherein the enhancer is incorporated less than 3,000 bp upstream of the regulation region.

6. A process for improvement of animal or mammalian host cell expression systems, which comprises incorporation of an enhancer as claimed in claim 1, downstream of a structural gene.

7. The process as claimed in claim 6, wherein the enhancer is incorporated not more than about 7,000 bp downstream of the structural gene.

8. The process as claimed in claim 7, wherein the enhancer is incorporated less than 3,000 bp downstream of the structural gene.

9. A process for improvement of animal or mammalian host cell expression systems, which comprises incorporation of an enhancer as claimed in claim 1, downstream of a regulation region of a structural gene.

10. The process as claimed in claim 9, wherein the enhancer is incorporated not more than about 7,000 bp downstream of the structural gene.

11. The process claimed in claim 10, wherein the enhancer is incorporated less than 3,000 bp downstream of the structural gene.

12. An isolated enhancer consisting of a nucleotide sequence from position −458 to −118 or position −524 to −263 of the upstream region of the major immediate early (IE) gene of human cytomegalovirus (HCMV) strain AD 169, wherein said enhancer enhances the transcription of DNA in an animal or mammalian host cell expression system.

13. An isolated enhancer as claimed in claim 12, obtained by sonication of the DNA from the IE region of HCMV with the formation of about 300 bp fragments, co-transfection of CV1 monkey cells and enhancerless SV40 genome, isolation of the recombinants which show lytic growth, and isolation of the inserted HCMV DNA.

14. A process for improvement of animal or mammalian host cell expression systems, which comprises incorporation of an enhancer as claimed in claim 12, upstream of a structural gene.

15. The process as claimed in claim 14, wherein the enhancer is incorporated not more than about 7,000 bp upstream of the structural gene.

16. The process as claimed in claim 15, wherein the enhancer is incorporated less than 3,000 bp upstream of the structural gene.

17. A process for improvement of animal or mammalian host cell expression systems, which comprises incorporation of an enhancer as claimed in claim 12, upstream of a regulation region of a structural gene.

18. The process as claimed in claim 17, wherein the enhancer is incorporated not more than about 7,000 bp upstream of the regulation region.

4

19. The process as claimed in claim 18, wherein the enhancer is incorporated less than 3,000 bp upstream of the regulation region.

20. A process for improvement of animal or mammalian host cell expression systems, which comprises incorporation of an enhancer as claimed in claim 12, downstream of a structural gene.

21. The process as claimed in claim 20, wherein the enhancer is incorporated not more than 7,000 bp downstream of the structural gene.

22. The process as claimed in claim 21, wherein the enhancer is incorporated less than 3,000 bp downstream of the structural gene.

23. A process for improvement of animal or mammalian host cell expression systems, which comprises incorporation of an enhancer as claimed in claim 12, downstream of a regulation region of a structural gene.

24. The process as claimed in claim 23, wherein the enhancer is incorporated not more than 7,000 bp downstream of the regulation region.

25. The process claimed in claim 24, wherein the enhancer is incorporated less than 3,000 bp downstream of the regulation region.

26. A plasmid comprising an enhancer as claimed in claim 12 and a DNA molecule from the promoter region of a eukaryotic structural gene.

27. A plasmid according to claim 26, further comprising a structural gene.

28. A plasmid according to claim 27, wherein the enhancer is upstream of the structural gene.

29. A plasmid according to claim 27, wherein the enhancer is incorporated not more than about 7,000 bp upstream of the structural gene.

30. A plasmid according to claim 27, wherein the enhancer is incorporated not more than about 3,000 bp upstream of the structural gene.

31. A plasmid according to claim 27, wherein the enhancer is incorporated upstream of a regulation region of the structural gene.

32. A plasmid according to claim 31, wherein the enhancer is incorporated not more than about 7,000 bp upstream of a regulation region of a structural gene.

33. A plasmid according to claim 32, wherein the enhancer is incorporated less than 3,000 bp upstream of a regulation region of the structural gene.

34. A plasmid according to claim 27, wherein the enhancer is downstream of the structural gene.

35. A plasmid according to claim 34, wherein the enhancer is not more than about 7,000 bp downstream of the structural gene.

36. A plasmid according to claim 35, wherein the enhancer is incorporated less than 3,000 bp downstream of the structural gene.

37. A plasmid according to claim 27, wherein the enhancer is downstream of a regulation region of the structural gene.

38. A plasmid according to claim 37, wherein the enhancer is not more than about 7,000 bp downstream of a regulation region of a structural gene.

39. A plasmid according to claim 38, wherein the enhancer is less than 3,000 bp downstream of a regulation region of a structural gene.

40. A plasmid comprising an enhancer as claimed in claim 12 and a heterologous DNA operatively linked to said enhancer.

41. A process for improvement of host cell expression, comprising incorporating a plasmid according to claim 40 into an animal or mammalian host cell.

US 6,218,140 B1

<table>
<tr><td>5</td><td>6</td></tr>
</table>

**42**. A recombinant DNA plasmid comprising a DNA molecule isolated from the immediate early (IE) promoter/regulatory region of human cytomegalovirus (HCMV) and a heterologous gene positioned downstream and operatively linked to said molecule, wherein the DNA molecule enhances the transcription of DNA in an animal or mammalian host cell expression system.

**43**. A eukaryotic host cell transformed with a recombinant DNA plasmid comprising a DNA molecule isolated from the immediate early (IE) promoter/regulatory region of human cytomegalovirus (HCMV) and a heterologous gene positioned downstream and operatively linked to said DNA molecule, wherein the DNA molecule enhances the tran-

scription of DNA in an animal or mammalian host cell expression system.

**44**. The transformed eukaryotic host cell of claim **43** wherein said host cell is a mammalian host cell.

**45**. A recombinant DNA plasmid comprising a DNA molecule isolated from the PstI m fragment of the immediate early (IE) region of human cytomegalovirus (HCMV) and a heterologous gene positioned downstream and operatively linked to said DNA molecule, wherein said DNA molecule enhances expression of said heterologous gene.

*   *   *   *   *

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.    : 6,218,140 B1                           Page 1 of  1
DATED         : April 17, 2001
INVENTOR(S)   : Bernhard Fleckenstein et al.

It is certified that error appears in the above-identified patent and that said Letters Patent is
hereby corrected as shown below:

Column 3,
Line 13, "in incorporated" should read -- is incorporated --.

Column 4,
Line 9, "not more than 7,000" should read -- not more than about 7,000 --.

Signed and Sealed this

Fifteenth Day of October, 2002

*Attest:*

JAMES E. ROGAN
*Director of the United States Patent and Trademark Office*

*Attesting Officer*