HARVEY SISKIND LLP
D. PETER HARVEY (State Bar No. 55712)
pharvey@harveysiskind.com
NAOMI JANE GRAY (State Bar No. 230171)
ngray@harveysiskind.com
RAFFI V. ZEROUNIAN (State Bar No. 236388)
rzerounian@harveysiskind.com
Four Embarcadero Center, 39th Floor
San Francisco, California 94111
Telephone:  415-354-0100
Facsimile:  415-391-7124

FITZPATRICK, CELLA, HARPER & SCINTO
WILLIAM E. SOLANDER (admitted *pro hac vice*)
wsolander@fchs.com
DOMINICK A. CONDE (admitted *pro hac vice*)
dconde@fchs.com
PETER D. SHAPIRO (admitted *pro hac vice*)
pshapiro@fchs.com
JOSHUA A. DAVIS (admitted *pro hac vice*)
jdavis@fchs.com
1290 Avenue of the Americas
New York, New York 10104
Telephone:  212-218-2100
Facsimile:  212-218-2200

Attorneys for Plaintiff
SANOFI-AVENTIS DEUTSCHLAND GMBH

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SANOFI-AVENTIS DEUTSCHLAND GMBH,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>GENENTECH, INC. and BIOGEN IDEC INC.,<br><br>　　　　　　Defendants. | **Case No.: C 08-04909 SI (BZ)**<br>**Case No.: C 09-04919 SI**<br><br>**SANOFI'S OPPOSITION TO GENENTECH'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>　**Date:  October 26, 2010**<br>　**Time:  11:00AM**<br>　**Courtroom 10**<br>　**The Honorable Susan Illston** |

**Table of Contents**

**Pages**

Table of Authorities ................................................................................................... iii

STATEMENT OF THE ISSUES .................................................................................... 1

INTRODUCTION ........................................................................................................... 2

FACTS ............................................................................................................................. 3

I.   The Accused Processes and Products ................................................................. 3

    A.   Rituxan® ................................................................................................... 3

    B.   Avastin® ................................................................................................... 4

ARGUMENT .................................................................................................................... 5

II.  Legal Standards .................................................................................................. 5

    A.   Summary Judgment .................................................................................. 5

    B.   Infringement ............................................................................................. 5

III. Rituxan®—There Are Genuine Issues of Material Fact Regarding
    Whether Genentech Infringes the '522 and '140 Patents ................................... 6

    A.   Genentech's Process for Making Rituxan Infringes Claim 1 Of The
        '522 Patent ................................................................................................ 6

        1.   Genentech "Inserts" Enhancer DNA When It Manufactures
            Rituxan® .................................................................................... 6

        2.   Genentech Practices a Method That Uses an Isolated DNA
            Enhancer ..................................................................................... 9

            a.   Genentech Uses an Isolated DNA Enhancer
                Because the Enhancer Has Been Separated from the
                HCMV Promoter ............................................................ 10

            b.   Genentech Uses an Isolated DNA Enhancer
                 Because the HCMV Enhancers in the Rituxan®
                Expression Plasmid Enhance Expression of Genes
                from Other Promoters in the Plasmid ............................ 11

- i -

**SANOFI'S OPPOSITION TO GENENTECH'S MOTION**       CASE NOS. C 08-04909 SI (BZ)
**FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**      C 09-04919 SI
**HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

|   |   | 3. | Genentech Practices a Method of Using the Claimed Enhancer That Does Not Expose the Cell to Any Downstream HCMV Material | 12 |
|   |   | 4. | Genentech's Infringing Method Makes Use of an Enhancer "Consisting of" DNA *from* the PstI Site to -118 | 13 |
|   | B. | | Genentech Uses the Transformed Cells and Plasmids Claimed in the '140 Patent | 13 |
|   |   | 1. | Claims 43 and 44:  Genentech's Rituxan® Cells Have Been Transformed with a Plasmid | 14 |
|   |   | 2. | Claims 42 and 45:  Genentech's Integrated Plasmids Perform the Same Function as the Claimed Plasmids, and Do So in the Same Way and with the Same Result | 15 |
| IV. | | | Avastin®—Genentech's Premature Summary Judgment Motion Should Be Continued Pursuant to FED. R. CIV. P. 56(f), To Allow Necessary Discovery | 17 |
|   | A. | | The Parties' Discovery Dispute | 17 |
|   | B. | | Sanofi Is Entitled To Relief Under Rule 56(f) | 19 |
|   |   | 1. | Sanofi Has Timely Sought Rule 56(f) Relief | 19 |
|   |   | 2. | Sanofi Has Specifically Identified  Relevant Information To Be Discovered | 20 |
|   |   | 3. | Sanofi Has Established A Basis For Believing That Highly Relevant Information Exists | 21 |
|   | C. | | The Avastin® Cell Line Has Not Been Exposed to  "Material from Outside of the Upstream Region of the IE Gene of HCMV" | 21 |

- ii -

SANOFI'S OPPOSITION TO GENENTECH'S MOTION      CASE NOS. C 08-04909 SI (BZ)
FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT      C 09-04919 SI
HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY

1

## Table of Authorities

2

**Cases**

3

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................. 5, 19

4

5

*Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*,
    750 F.2d 1569 (Fed. Cir. 1984) ................................................................................... 6, 9

6

*Baxter Healthcare Corp. v. Spectramed, Inc.*,
    49 F.3d 1575 (Fed. Cir. 1995) ........................................................................................ 5

7

8

*E-Pass Techs., Inc. v. 3Com Corp.*, No. C-00-2255 DLJ,
    2006 U.S. Dist. LEXIS 95914 (N.D. Cal. Mar. 17, 2006) ............................................. 5

9

10

*Fromson v. Advance Offset Plate Inc*,
    720 F.2d 1565 (Fed. Cir. 1983) ..................................................................................... 6

11

*Garrett v. City and County of San Francisco*,
    818 F.2d 1515 (9th Cir. 1987) ..................................................................................... 19

12

13

*GenSci Orthobiologics, Inc. v. Osteotech, Inc.*,
    No. 99-CV-10111, 2001 WL 36239752 (C.D. Cal. Mar. 22, 2001) ............................. 18

14

15

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
    339 U.S. 605 (1950) ...................................................................................................... 6

16

*Metro. Life Ins. Co. v. Bancorp. Servs. L.L.C.*,
    527 F.3d 1330 (Fed. Cir. 2008) ................................................................................... 19

17

18

*Miller  v. Ladd*, No. CV 08-05595, 2010 U.S. Dist. LEXIS 73050
    (N.D. Cal. July 20, 2010) .............................................................................................. 5

19

20

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) ..................................................................................... 8

21

*Overhead Door Corp. v. Chamberlain Group, Inc.*,
    194 F.3d 1261 (Fed. Cir. 1999) ..................................................................................... 5

22

23

*Satchell v. FedEx Corp.*,
    No. 03-cv-02659, 2005 WL 846058 (N.D. Cal. Mar. 21, 2005) .................................. 19

24

25

*Toro Corp. v. White Consol. Indus., Inc.*,
    266 F.3d 1367 (Fed. Cir. 2001) ..................................................................................... 6

26

*VISA Int'l Serv. Assoc. v. Bankcard Holders of America*,
    784 F.2d 1472 (9th Cir. 1986) ................................................................................ 19, 20

27

- iii -

28

**SANOFI'S OPPOSITION TO GENENTECH'S MOTION**     CASE NOS. C 08-04909 SI (BZ)
**FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**     C 09-04919 SI
**HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

**Rules & Statutes**

10B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2740 (3d. ed. 1998) ........................................................................... 19

Fed. R. Civ. P. 56(f) ........................................................................................... *passim*

**SANOFI'S OPPOSITION TO GENENTECH'S MOTION**
**FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**
**HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

CASE NOS. C 08-04909 SI (BZ)
C 09-04919 SI

1

**STATEMENT OF THE ISSUES**

2    1.    Whether there is a genuine issue of material fact that the limitations of claims 1 and 2

3    of the '522 patent are met by Genentech's manufacture and sale of its Rituxan® product, when

4    Genentech:

5          a.    practices the step of "inserting" the claimed enhancer into its Rituxan®-producing

6                cells by actively cultivating, propagating, and selecting for enhancer-containing

7                host cells that insert the HCMV enhancer into their progeny cells;

8          b.    uses an "isolated DNA enhancer" because it uses the claimed HCMV enhancer

9                without using the native HCMV promoter;

10         c.    uses only HCMV viral DNA from upstream of the HCMV IE transcription start

11               site, ███████████████████████████████████████████

12               ██████████████████████████████████████████████████

13               ███████████████████; and

14         d.    uses an enhancer that consists of DNA taken from upstream of position -118 in the

15               HCMV IE region.

16   2.    Whether there is a genuine issue of material fact as to whether Genentech uses the

17   plasmids and cells claimed in the '140 patent to manufacture Rituxan®, when Genentech's:

18         a.    Rituxan®-producing cells have been transformed with the Rituxan® expression

19               plasmid, and are thus "cell[s] transformed with a recombinant DNA plasmid" as

20               required by claims 43 and 44; and

21         b.    integrated linear Rituxan® expression plasmid is, by definition, equivalent to its

22               circular, non-integrated Rituxan® expression plasmid because the integrated

23               plasmid contains the same genetic information and performs the same functions as

24               those set forth in claims 42 and 45.

25

26

27

- 1 -

28

3.     Whether Sanofi is entitled under FED. R. CIV. P. 56(f) to a continuance of Genentech's premature summary judgment motion to permit discovery critical to determining whether Genentech's Avastin® product infringes the patents in suit.

4.     Whether there is a genuine issue of material fact that the limitations of claims 1 and 2 of the '522 patent are infringed by Genentech's manufacture and sale of its Avastin® product, when Genentech ██████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████ .

## INTRODUCTION

Genentech readily admits that it uses the claimed invention—the HCMV enhancer described and claimed in the patents in suit—in its manufacturing process for Rituxan®, but seeks to escape liability based on a number of incorrect factual assertions, unsupported by any expert evidence. Contrary to Genentech's assertions:

- its manufacturing process introduces the HCMV enhancer into growing and replicating cells;

- it does not use the HCMV enhancer in connection with the native HCMV promoter, and in fact uses the HCMV enhancer in connection with three different promoters in the Rituxan® expression plasmid;

- its cells have not been exposed to native HCMV DNA material from downstream of the IE gene transcription start site; and

- its drug-producing host cells plainly have been transformed with a plasmid.

Thus, this is a classic situation where the facts are hotly disputed, and Genentech's motion should be denied.

Genentech has refused to provide crucial discovery that will answer the question whether Sanofi's patented HCMV enhancer is used to manufacture Genentech's Avastin® product, requiring Sanofi to file a motion to compel. That motion is pending before Judge Zimmerman, and thus,

**SANOFI'S OPPOSITION TO GENENTECH'S MOTION**       CASE NOS. C 08-04909 SI (BZ)
**FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**      C 09-04919 SI
**HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

1   resolution of Genentech's summary judgment motion regarding Avastin® is premature under FED. R.

2   CIV. P. 56(f).

3                                        **FACTS**

4   **I.       The Accused Processes and Products**

5             **A.       Rituxan®**

6             As explained during the May 2010 tutorials presented by Sanofi's and Genentech's experts,

7   the science of gene expression, which is integral to how the drugs at issue are produced, is not

8   seriously in dispute.  Rituxan® (and Avastin®) are produced by the following general process.  The

9   DNA (gene) that encodes a protein of interest is preceded by a promoter, which is also a fragment of

10  DNA.[1]  An enzyme called RNA polymerase binds to the promoter to begin transcription, which is the

11  production of messenger RNA (mRNA) from DNA.  The mRNA is then translated to make protein.

12  As disclosed and claimed in the patents-in-suit, a DNA molecule called an enhancer may be

13  employed to increase the binding of RNA polymerase to the promoter, thereby increasing

14  transcription and ultimately production of the protein of interest.  (Wall Decl. Ex. E ¶¶ 12-23.)

15            As is the case with Rituxan® (and Avastin®), individual protein molecules can associate with

16  one another to make larger proteins with special functions, called antibodies.  Those antibodies are

17  then collected and purified so that they may be sold as drug products and administered to patients.

18  Rituxan®, like all antibodies, is made up of "heavy chain" and "light chain" proteins.  Those proteins

19  are encoded by genes found on the highly engineered recombinant DNA plasmid integrated into the

20  genome of the Chinese Hamster Ovary ("CHO") cells that Genentech uses to produce the drugs.

21            The Rituxan® expression plasmid that is integrated into the CHO cell genome originated as a

22  circular plasmid called "Anti-CD20 in TCAE8" ("Rituxan® expression plasmid").[2]  (Wall Decl. ¶¶

23  31, 32, 56-58).  As with all recombinant plasmids, the circular Rituxan® expression plasmid was

24  made by linking together fragments of DNA containing the genes encoding Rituxan® and other

25  _____

26  [1] A glossary of scientific terms may be found attached to this brief following the signature page.

27  [2] "Anti-CD20" is another name for the Rituxan® antibody.

                                      - 3 -

28  **SANOFI'S OPPOSITION TO GENENTECH'S MOTION**            CASE NOS. C 08-04909 SI (BZ)
    **FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**             C 09-04919 SI
    **HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

proteins essential to the drug manufacturing process, together with fragments containing regulatory DNA sequences, including the HCMV enhancer disclosed and claimed in the patents in suit.  (Wall Decl. ¶¶ 57–58.)

In making the cell line used to manufacture Rituxan®, the circular Rituxan® expression plasmid was cut ("linearized") and introduced into CHO cells.  (Wall Decl. ¶ 58.)  Because the cellular DNA repair machinery recognizes the ends of a linear plasmid as "damaged DNA," it attempts to repair the "damage" by integrating the plasmid into the cells' own DNA, resulting in "transformation" of the cell.  (Wall Decl. ¶ 58.)  It is this integration that, in mammalian cells, constitutes "transformation," and the cells that contain that integrated DNA are said to be "transformed."  (Wall Decl. ¶¶ 56–58).

**B.     Avastin®**

Avastin® is also an engineered antibody produced in CHO cells.  Earlier in this litigation, Sanofi adduced evidence indicating that its patented enhancer was present in the Avastin® product, suggesting that Genentech's Avastin®-producing cells could be the source of that enhancer DNA.  (*See* DN 342.)  The Court permitted Sanofi to amend its complaint to add infringement allegations directed to Avastin® and indicated that Sanofi was entitled to further discovery on the issue.  (DN 342.)  Since that time, Genentech has produced only documents that indicate how Genentech purports to have engineered the Avastin® plasmid, but those documents do not address whether the Avastin®-producing cells contain the patented enhancer.  Sanofi has sought samples of the Avastin® host cells so that the question of whether those cells contain the HCMV enhancer can be answered.  Genentech has resisted that discovery, and a motion to compel those samples is pending before Judge Zimmerman, with a hearing date of October 27, 2010.  (*See* DN 400.)

**SANOFI'S OPPOSITION TO GENENTECH'S MOTION**       CASE NOS. C 08-04909 SI (BZ)
**FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**          C 09-04919 SI
**HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

## ARGUMENT

II. **Legal Standards**

    A. **Summary Judgment**

        Summary judgment is only appropriate if, taking all inferences in favor of the non-moving party, the Court finds that there are no disputed issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The evidence must be considered in light of the burden of persuasion that would be applied if the issue were tried. *Id.* at 252. Here, Sanofi need only show that there is a genuine issue of material fact that it could prove by a preponderance of the evidence—*i.e.*, that it is more likely than not—that Genentech infringes the asserted claims. *Miller v. Ladd*, No. CV 08-05595, 2010 U.S. Dist. LEXIS 73050, at *3 (N.D. Cal. July 20, 2010).

    B. **Infringement**

        Infringement analysis is a two-step process. First, a Court must determine the scope of the claims of the patent. *E-Pass Techs., Inc. v. 3Com Corp.,* No. C-00-2255 DLJ, 2006 U.S. Dist. LEXIS 95914, at *18 (N.D. Cal. Mar. 17, 2006). Then, the Court must determine whether the accused infringer's activities fall within the scope of the claims. *Id*. Literal infringement is shown when each properly construed claim limitation is literally met by the accused product or method. *Baxter Healthcare Corp. v. Spectramed, Inc.,* 49 F.3d 1575, 1583 (Fed. Cir. 1995). Whether infringement has occurred is a question of fact. *Fromson v. Advance Offset Plate Inc,* 720 F.2d 1565, 1569 (Fed. Cir. 1983).

        Even if a limitation is not literally met by the accused product or method, the limitation may be met by an equivalent. A test for whether an element of an accused product or method is equivalent to a claim limitation is whether the differences between the two would be considered insubstantial to one of ordinary skill in the relevant art. *Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261, 1269 (Fed. Cir. 1999). Infringement by equivalents may also be determined by the "function/way/result" test: "[T]he doctrine [of equivalents] allows a finding of infringement when the accused product and claimed invention perform substantially the same

**SANOFI'S OPPOSITION TO GENENTECH'S MOTION**       CASE NOS. C 08-04909 SI (BZ)
**FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**     C 09-04919 SI
**HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

function in substantially the same way to yield substantially the same result." *Atlas Powder Co. v.*

*E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1579 (Fed. Cir. 1984) (citing *Graver Tank & Mfg.*

*Co. v. Linde Air Prods. Co.,* 339 U.S. 605 (1950)); *see generally Toro Corp. v. White Consol. Indus.,*

*Inc.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001).

**III.   Rituxan®—There Are Genuine Issues of Material Fact Regarding
Whether Genentech Infringes the '522 and '140 Patents**

Genentech argues that its activities relating to Rituxan® do not meet several limitations of the

'522 and '140 Patent claims, but offers only attorney argument and no expert evidence to support its

assertions.  However, as demonstrated in the accompanying declaration of Professor Randolph Wall,

Genentech's process for making the Rituxan® protein as well as the plasmids and host cells used in

that process infringe literally, or by equivalence, the '522 and '140 Patents.

**A.   Genentech's Process for Making Rituxan Infringes Claim 1 Of The '522 Patent**

Claim 1 of the '522 patent reads:

> The method to increase expression of a gene in a mammalian cell comprising
> inserting into a mammalian cell an isolated DNA enhancer consisting of DNA
> from the upstream region of the major immediate early (IE) gene of human
> cytomegalovirus (HCMV) and a heterologous gene that is to be expressed,
> wherein the DNA from the upstream region of the IE gene of HCMV is the only
> HCMV material to which the mammalian cell is exposed.

(Gross Decl. Ex. 1 ['522 Patent] at Col. 2, l. 63 – Col. 3, l. 3.)[3]

**1.   Genentech "Inserts" Enhancer DNA When It Manufactures Rituxan®**

Genentech first argues that its activities relating to Rituxan® do not meet the "inserting"

limitation of claim 1 of the '522 patent.[4]  During the claim construction phase of this case, the parties

stipulated that "inserting" means "putting or introducing into."  Thus, claim 1 requires that an

infringer introduce the claimed "isolated DNA enhancer" into a mammalian cell.

---

[3] The Declaration of Gabriel S. Gross was submitted in support of Genentech's motion.  (DN 403.)

[4] Claim 2 is dependent on Claim 1.  Thus to infringe Claim 2, Genentech must first be found to have infringed Claim 1.

- 6 -

Genentech's growth and replication of enhancer-containing Rituxan® host cells causes the claimed enhancer to be "put[] or introduce[d] into" successive generations of cells through the process of mitosis (cell division) shown below (Fig. 1). (Wall Decl. ¶¶ 45–52.)



Transformed Parent Cell

Integrated Rituxan® plasmid containing HCMV enhancer

Prophase

Metaphase

Insertion of newly-replicated chromosomes, including the integrated Rituxan® expression plasmid, into each daughter cell

Anaphase

Daughter cells each containing inserted copy of Rituxan® expression plasmid

Telophase

Two Transformed Daughter Cells

Fig. 1

Genentech actively promotes cell growth, DNA replication, and cell division by maintaining its Rituxan® host cells under appropriate growth conditions, ███████████████████
█████████████████████████████████████████
████████████████████████████████████
███████████████████████████████████████████
████████████████████

---

[5] The BLA was originally filed by co-defendant Biogen-IDEC, but by virtue of Genentech's agreements with Biogen-IDEC, the BLA now governs Genentech's production of Rituxan®.

1

2

3        Despite this clear admission, Genentech now argues that it "inserted" the claimed enhancer

4   only once, *i.e.*, when it first made its original Rituxan® host cells.  Genentech argues that mitosis

5   does not cause "insertion" because "inserting" is limited to the act of causing the enhancer to cross

6   the cell membrane from the outside environment, specifically by "transfection" through

7   electroporation or chemical means. (Genentech Br. at 11–12).  But Genentech is wrong because there

8   is no basis to limit the claims to any one method of inserting the enhancer into cells.  Nothing in the

9   patent specification or prosecution history requires that "insertion" be limited, as Genentech

10  contends, to the introduction of enhancer DNA into a host cell only by means of transfection.  Absent

11  the patentees' "clear," "unambiguous," and "unmistakable" disavowal during prosecution of other

12  methods of "inserting," such as mitosis, the claims may not be limited to insertion only by

13  transfection.  *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003).

14       And even if the meaning of "inserting" is so limited, Genentech's host cells infringe the '522

15  patent under the doctrine of equivalents.  As illustrated in Figure 2 below, mitosis of Genentech's

16  host cells performs the exact same function—inserting the Rituxan® plasmid into daughter cells—as

17  transfection, in an insubstantially different way, which achieves the same result.  (Wall Decl. ¶ 52;

18  *see supra* at 8; *see also Atlas Powder*, 750 F.2d at 1579.)

19

20

21

22

23

24

25

---

26  [6] Krummen Decl. Ex. B (Rituxan® BLA at GNE-SA0000274 (emphasis and bracketed material
27  added)).

28  **SANOFI'S OPPOSITION TO GENENTECH'S MOTION**       CASE NOS. C 08-04909 SI (BZ)
   **FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**       C 09-04919 SI
   **HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

| Transient Transfection | Transformation | Mitosis |

Fig. 2

That is, whether inserted by mitosis or transfection, the Rituxan® expression plasmid ends up in Genentech's transformed drug producing cells, where it provides those cells with the information necessary to make Rituxan®.

**2.    Genentech Practices a Method That Uses an Isolated DNA Enhancer**

The Court has construed "isolated DNA enhancer" to mean an enhancer that has been "separated . . . from the promoter DNA in its original source."[7, 8]   Genentech infringes this claim element under the Court's claim construction for two independent reasons.

First, Genentech infringes because it uses the claimed HCMV enhancer, but does not use the native HCMV promoter ("the promoter DNA in its original source").  This is because the native promoter DNA sequence was intentionally changed such that it is no longer the native HCMV promoter.

Second, Genentech uses the HCMV enhancer in the Rituxan® expression plasmid to drive expression of a gene that is completely separate from the Rituxan® heavy and light chains, namely,

---

[7] The term "isolated" was added to claim 1 simply to indicate that the claims did not cover the enhancer in the context of naturally occurring HCMV, i.e., the enhancer needed to be "isolated" from HCMV.  (Davis Decl. Ex. D at GNE_SA0042478.)

[8] The specification of the patent in suit teaches that the claimed HCMV enhancer can be used with or without the native HCMV enhancer and downstream DNA.  (Wall Decl. ¶¶ 41–44.)

- 9 -

1    the dihydrofolate reductase ("DHFR") gene.  The DHFR gene allows Genentech to ensure during

2    mitosis that Genentech's cells contain the Rituxan® plasmid.  The DHFR gene has an entirely

3    different promoter, unrelated to HCMV, that is acted upon by the copies of the HCMV enhancer

4    upstream of the heavy and light chain genes.  Thus with respect to the DHFR gene and its promoter,

5    there can be no question that the two HCMV enhancer copies are "separated . . . from the promoter

6    DNA in [their] original source."

7              a.    **Genentech Uses an Isolated DNA Enhancer Because the**
                     **Enhancer Has Been Separated from the HCMV Promoter**

8

9          Genentech asserts that "[t]he HCMV DNA used in the Rituxan® cell line includes the

10   original HCMV promoter and therefore cannot infringe."  (Genentech Br. at 1.)  Genentech is

11   incorrect because, although the two copies of the HCMV enhancer present in Genentech's Rituxan®

12   expression plasmid are physically linked to promoters, neither promoter is the ***native*** HCMV IE

13   promoter.[9]

14

15

16

17

18

19

20

21

22

23

24                                          Fig. 3

25

26   [9] The native HCMV promoter spans nucleotides from at least approximately -60 to approximately the
     transcription start site at +1 of the HCMV IE gene.  (Wall Decl. ¶¶ 25–29.)

27

28   **SANOFI'S OPPOSITION TO GENENTECH'S MOTION**                 CASE NOS. C 08-04909 SI (BZ)
     **FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**                  C 09-04919 SI
     **HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

This non-HCMV fragment is indisputably part of the promoter and does not include the promoter DNA from the original HCMV source, ████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████   Similarly, Genentech altered the promoter that is upstream of the Rituxan® heavy chain gene such that this promoter's DNA between -14 and +1 bears no resemblance at all to the native HCMV promoter.  (*See* Fig. 4; *see also* Wall Decl. ¶¶ 38–40.)



Fig. 4

**b.    Genentech Uses an Isolated DNA Enhancer Because the HCMV Enhancers in the Rituxan® Expression Plasmid Enhance Expression of Genes from Other Promoters in the Plasmid**

In addition to containing DNA that encodes the Rituxan® heavy- and light-chain genes, the Rituxan® expression plasmid also contains DNA that encodes the DHFR protein, a "selectable marker" that plays a key role in the commercial production of the Rituxan® proteins.  (Wall Decl. ¶¶ 49–50, 57, 68–71.)  DHFR expressed by transformed cells allows those cells to grow in the presence of a poison, methotrexate ("MTX"), that kills non-transformed cells, thereby ensuring that only plasmid-containing (and therefore Rituxan®-producing) cells survive.  (Wall Decl. ¶¶ 49–50, 57, 68–71.) ████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████

Expression of the DHFR gene in the Rituxan® expression plasmid is driven by a promoter that is not from HCMV, namely, the β-globin promoter, shown below in green.  (*See* Fig. 5.)

- 11 -



Fig. 5

The β-globin promoter by itself does not provide sufficient levels of expression of the DHFR protein unless an enhancer is provided.  (Davis Decl. Ex. B Reff. Dep. 73:20–74:9; Wall Decl. ¶ 70.)  Thus, the β-globin promoter in the Rituxan® expression plasmid is enhanced  (shown by the arrows in Fig. 5) by the HCMV enhancer located upstream of the heavy and light chain genes (shown in yellow in Fig. 5).  (Wall Decl. ¶¶ 70–71.)  With respect to the DHFR gene, as shown in Fig. 5, the HCMV enhancer is physically separated from and is acting on a non-HCMV promoter, and thus clearly meets the "isolated DNA enhancer" limitation.

### 3.  Genentech Practices a Method of Using the Claimed Enhancer That Does Not Expose the Cell to Any Downstream HCMV Material

The claims of the '522 patent require that "DNA from the upstream region" be the "only HCMV material" to which host cells are exposed.  The Court has construed these claim terms to mean that the host cell can be exposed to no HCMV material from downstream of the transcription start site (+1).

- 12 -

SANOFI'S OPPOSITION TO GENENTECH'S MOTION
FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT
HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY

CASE NOS. C 08-04909 SI (BZ)
C 09-04919 SI

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████████████

5 ██████████████████████████████████████████

6            **4.    Genentech's Infringing Method Makes Use of an Enhancer**
7         **"Consisting of" DNA *from* the PstI Site to -118**

8         Claim 2 of the '522 patent claims:

9         The method as claimed in claim 1, wherein **the DNA enhancer consists of** the
         DNA **from** the PstI restriction enzyme site upstream of the transcription start
10        site to position -118 of the PstI-m fragment, or an enhancer-active part thereof.

11 (Gross Decl. Ex. 1 ['522 Patent] at Col. 3, ll. 4–8. (emphasis added)).  Genentech argues that its

12 method does not infringe claim 2 because Genentech's expression plasmid includes additional, ***non-***

13 ***enhancer*** DNA that is upstream of +1.  This, however, does not avoid infringement.  Genentech's

14 method infringes claim 2 because all of the DNA that makes up the enhancer-active fragments in the

15 Rituxan® expression plasmid comes from the claimed region of the PstI-m fragment.  (Wall Decl. ¶¶

16 18–21.)  Genentech can avoid infringement only if it can show that there are additional base pairs

17 within the enhancer it uses that are from ***outside*** the specified claimed region.  Genentech cannot do

18 so.  Thus, the fact that Genentech might use HCMV DNA from outside the specified region is

19 irrelevant because the claim requires only that the ***enhancer DNA*** come from that region.

20 **B.        Genentech Uses the Transformed Cells and Plasmids Claimed in the '140 Patent**

21 The '140 Patent claims at issue are reproduced below:

22        42. A recombinant DNA plasmid comprising a DNA molecule isolated from the
         immediate early (IE) promoter/regulatory region of human cytomegalovirus
23        (HCMV) and a heterologous gene positioned downstream and operatively linked
         to said molecule, wherein the DNA molecule enhances the transcription of DNA
24        in an animal or mammalian host cell expression system.

25        43. A eukaryotic host cell transformed with a recombinant DNA plasmid
26        comprising a DNA molecule isolated from the immediate early (IE)
         promoter/regulatory region of human cytomegalovirus (HCMV) and a
27

- 13 -

heterologous gene positioned downstream and operatively linked to said DNA molecule, wherein the DNA molecule enhances the transcription of DNA in an animal or mammalian host cell expression system.

44. The transformed eukaryotic host cell of claim 43 wherein said host cell is a mammalian host cell.

45. A recombinant DNA plasmid comprising a DNA molecule isolated from the PstI m fragment of the immediate early (IE) region of human cytomegalovirus (HCMV) and a heterologous gene positioned downstream and operatively linked to said DNA molecule, wherein said DNA molecule enhances expression of said heterologous gene.

(Gross Decl. Ex. 2 ['140 Patent] at Col. 5–6.)

### 1.   Claims 43 and 44:
### Genentech's Rituxan® Cells Have Been Transformed with a Plasmid

Claims 43 and 44 are directed to cells that have been "transformed with a . . . plasmid." For its Rituxan® product, Genentech uses transformed cells that literally infringe these claims. (Wall Decl. ¶¶ 56–63.)

Genentech's motion asserts—again, without supporting evidence—that its Rituxan® cells have not been "transformed with a . . . plasmid" under the Court's construction of "plasmid" as meaning a "circular, extrachromosomal molecule." This is wrong.

The process of transformation entails the stable integration of the plasmid into the host cell genome. (Wall Decl. ¶¶ 58–60; Davis Decl. Ex. A [McKnight Witness Statement Excerpt] ¶ 218.) Generally, transformation includes the steps of linearizing the plasmid (*i.e.*, making a cut in the circular plasmid), and putting that DNA into a mammalian cell, where it is then imported into the nucleus and integrated into the host cell genome. (Wall Decl. ¶ 58.) A cell with the plasmid integrated into its genome is said to be transformed. (Wall Decl. ¶ 61; Davis Decl. Ex. A [McKnight Witness Statement Excerpt] ¶ 218.) Any progeny cells created through cell division are likewise transformed cells, because they also contain the plasmid. (Wall Decl. ¶ 63; Davis Decl. Ex. A [McKnight Witness Statement Excerpt] ¶ 50.) Ensuring that the integrated plasmid is contained in each transformed cell is accomplished by the methotrexate selection process described above (see page 13).

**SANOFI'S OPPOSITION TO GENENTECH'S MOTION**                    CASE NOS. C 08-04909 SI (BZ)
**FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**          C 09-04919 SI
**HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

1  Genentech argues that the phrase "transformed with a . . . plasmid" applies only to the situation

2  where the plasmid is maintained in a circular form in the transformed cell. (Genentech Br. at 22.)

3  However, when a plasmid is maintained in circular form, that is transient transfection, not

4  transformation. In transiently transfected cells, the plasmid remains in circular form outside the host

5  cell chromosomes (*i.e.*, it is extrachromosomal), and is not replicated during cell division. As noted

6  above, in transformed cells, the plasmid is integrated into the cell's genome and is replicated during

7  cell division. It is, therefore, scientifically incorrect to say that a mammalian cell has been

8  "transformed," but does not have the plasmid integrated into its DNA. (Wall Decl. ¶ 61; Davis Decl.

9  Ex. A [McKnight Witness Statement Excerpt] ¶ 49.) Genentech's own expert, Dr. McKnight,

10  acknowledged as much. (Davis Decl. Ex. A [McKnight Witness Statement Excerpt] ¶¶ 49, 218.)[10]

11  Genentech's cells used to make Rituxan® are all transformed cells—they have been altered to

12  include foreign DNA by: (1) starting with a circular plasmid; (2) linearizing that plasmid; (3)

13  introducing that plasmid into the cell where it is taken into the nucleus and integrated into the cell's

14  chromosome; and (4) creating conditions where the cell replicates to form daughter cells having the

15  plasmid integrated into their DNA. The original and progeny cells used to make Rituxan® are all

16  "transformed" as required by claim 43. (Wall Decl. ¶¶ 56–63.)

17       Even if Genentech is correct that infringement requires that the "transformed" cell contain a

18  circular, extrachromosomal plasmid, its use of an integrated plasmid infringes claims 43 and 44 under

19  the doctrine of equivalents, for the reasons explained below with respect to claims 42 and 45.

20            **2.**     **Claims 42 and 45:**
                 **Genentech's Integrated Plasmids Perform the Same Function as the**

21                   <u>**Claimed Plasmids, and Do So in the Same Way and with the Same Result**</u>

22       Claims 42 and 45 claim recombinant DNA plasmids containing the claimed enhancer. As

23  disclosed in its BLA, Genentech's Rituxan® expression plasmid meets all of the limitations of claims

24  42 and 45 of the '140 Patent. (Wall Decl. ¶¶ 64–67.) Genentech argues that it does not infringe these

25

26     <sub>10</sub> [10] Dr. McKnight provided a witness statement on behalf of Genentech in the copending arbitration:
*Hoescht GmbH (Germany) v. Genentech Inc. (USA)*, ICC No. 15900/JHN.

27

28  **SANOFI'S OPPOSITION TO GENENTECH'S MOTION**       CASE NOS. C 08-04909 SI (BZ)
**FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**     C 09-04919 SI
**HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

1   claims because its plasmid was integrated into the genome of its Rituxan®-producing cells before the

2   patents-in-suit issued.  As such, Genentech argues, the integrated plasmids no longer exist as

3   "circular extrachromosomal molecules," as required by the Court's construction of the claim term

4   "plasmid."  However, Genentech continues to make and use plasmids that infringe claims 42 and 45

5   under the doctrine of equivalents.

6        This is because any differences between Genentech's integrated plasmids and the claimed

7   plasmids, as those plasmids have been construed by this Court, are insubstantial.  The only difference

8   between the linear DNA in Genentech's host cells and circular DNA is the shape.  The linear and

9   circular plasmids are literally ***the same DNA molecule***.  (*See* Fig. 6; Wall Decl. ¶¶ 64–67.)  The fact

10  that one is extrachromosomal and one is chromosomal is likewise an insubstantial difference because

11  both provide the necessary DNA in the correct arrangement.  (*See* Wall Decl. ¶¶ 64–67.)

12  Genentech's integrated plasmids therefore perform the same function, in the same way, and with the

13  same result, as would "circular, extrachromosomal" plasmids.  Thus, claims 42 and 45 are infringed

14  under the doctrine of equivalents.



Fig. 6

24  Genentech seeks to avoid infringement by equivalents by arguing that the purported

25  differences between the claimed plasmids and Genentech's plasmid have "a substantial impact on the

26  utility of the expression system."  (Genentech Br. at 24.)  But this is not relevant because claims 42

- 16 -

28  **SANOFI'S OPPOSITION TO GENENTECH'S MOTION**          CASE NOS. C 08-04909 SI (BZ)
   **FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**          C 09-04919 SI
   **HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

and 45 are not directed to expression systems. They are directed to plasmids, that is, engineered DNA molecules that include functional segments (enhancers, promoters, coding sequences, etc.) in a defined arrangement. (Wall Decl. ¶¶ 64–65.) There is infringement by equivalents here because Genentech's plasmid serves exactly the same function, in the same way, to achieve the same result as the plasmids claimed in the patent in suit.[11] (Wall Decl. ¶¶ 64–67.)

## IV. Avastin®—Genentech's Premature Summary Judgment Motion Should Be Continued Pursuant to FED. R. CIV. P. 56(f), To Allow Necessary Discovery

Genentech has moved for summary judgment that its Avastin® product does not infringe the patents-in-suit, with full knowledge of the parties' pending but unresolved dispute concerning discovery critical to the very infringement issues for which Genentech seeks summary disposition in its favor. The circumstances here clearly call for Rule 56(f) relief, continuing the briefing schedule for Genentech's motion, pending resolution of this dispute and completion of any additional relevant discovery.

### A. The Parties' Discovery Dispute

Because Sanofi's preliminary testing of Genentech's commercial Avastin® product revealed the presence of Sanofi's patented HCMV enhancer, this Court granted Sanofi leave to amend its pleadings and contentions to include infringement allegations directed to Avastin®. In doing so, the Court recognized the need for further discovery:

> Although the results from the Eurofins testing do not conclusively indicate the presence of the patented sequence in Avastin®, plaintiff has provided the Court with enough evidence to warrant further investigation."

*Sanofi-Aventis Deutschland GmbH v. Genentech, Inc. & Biogen Idec Inc.*, No. 08 cv-04909 (DN 342 [Order Granting in Part Plaintiff's Motion for Leave to Amend Its Pleadings and Infringement Contentions]).

---

[11] Likewise, the host cells of claims 43 and 44 express proteins in the same way as Genentech's host cells, by using the cells' natural machinery to transcribe the genes in the plasmid, whether circular or integrated, into mRNA, which is then translated into protein. (Wall Decl. ¶ 67.)

- 17 -

**SANOFI'S OPPOSITION TO GENENTECH'S MOTION**
**FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**
**HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

CASE NOS. C 08-04909 SI (BZ)
C 09-04919 SI

1    But Genentech has failed to comply with the spirit of this Order and for the past nine months

2    has refused every effort by Sanofi to obtain samples of Avastin® host cells for testing to determine

3    whether the HCMV enhancer is present.  Instead, Genentech insists that it has produced

4    "uncontroverted evidence," "conclusively establishing" that the HCMV enhancer is not used in the

5    Avastin® host cells.  But the "evidence" Genentech cites is the same kind that this Court declined to

6    find dispositive in granting Sanofi's motion to amend its complaint to add Avastin® infringement

7    allegations.  Also, Genentech's evidence is disputed by Sanofi, and is anything but conclusive.

8    ████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████

10   ███████████████████████████████████  However, at best, Genentech's submissions

11   merely raise a factual dispute because the conclusion Genentech advocates is contradicted by the

12   presence of the HCMV enhancer as disclosed in Sanofi's preliminary test results.  To the extent that

13   Genentech raises factual disputes about the quality of Sanofi's preliminary testing, those disputes

14   must be resolved in Sanofi's favor for purposes of this motion.  *See GenSci Orthobiologics, Inc. v.*

15   *Osteotech, Inc.*, No. 99-CV-10111, 2001 WL 36239752, at *2 (C.D. Cal. Mar. 22, 2001) (denying

16   summary judgment where defendant's experimental tests were sufficient to raise a question of fact

17   despite plaintiff's contentions that the tests were flawed and unreliable).

18   The only way to conclusively establish the presence or absence of the patented HCMV

19   enhancer in Avastin® host cells is to examine the DNA of the host cells themselves.  Not even

20   Genentech has done that.  Sanofi has a substantiated, good-faith belief that the Avastin® host cells

21   contain the HCMV enhancer based on the preliminary testing that supported amendment of its

22   pleadings, and Sanofi is entitled to the crucial discovery it seeks to confirm this.

---

26   [12] Declaration of Lynne Krummen, submitted under seal, Feb. 12, 2010 (DN 313); Declaration of

27   Amy Shen, submitted under seal, Aug. 6, 2010.

- 18 -

28   **SANOFI'S OPPOSITION TO GENENTECH'S MOTION**              CASE NOS. C 08-04909 SI (BZ)
     **FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**              C 09-04919 SI
     **HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

**B.      Sanofi Is Entitled To Relief Under Rule 56(f)**

Rule 56(f) provides for relief where, as here, a summary judgment motion has been prematurely made:

> If a party opposing the [summary judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1)      deny the motion;
> (2)      order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
> (3)      issue any other just order

FED. R. CIV. P. 56(f).  This rule has been applied liberally to prevent injustice to the party opposing summary judgment.  *See VISA Int'l Serv. Assoc. v. Bankcard Holders of America,* 784 F.2d 1472, 1475 (9th Cir. 1986); 10B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2740 (3d. ed. 1998).[13]  If the summary judgment opponent has been unable to obtain discovery necessary to oppose the motion, summary judgment should not be granted.  *Liberty Lobby*, 477 U.S. at 250 n.5.

Rule 56(f) relief should be granted where a summary judgment opponent:

> [1] makes a timely application that [2] specifically identifies relevant information to be discovered, and [3] there is some basis for believing that such information actually exists.

*Satchell v. FedEx Corp.*, No. 03-cv-02659, 2005 WL 846058 at *2 (N.D. Cal. Mar. 21, 2005) (Illston, J., order granting Rule 56(f) motion) (citing *VISA Int'l Serv. Assoc*, 784 F.2d at 1475). Sanofi clearly has made the necessary showing for Rule 56(f) relief here.

**1.      Sanofi Has Timely Sought Rule 56(f) Relief**

The scheduling order in this case sets a December 30, 2010 deadline for dispositive motions. On July 4, 2010, Genentech disclosed that it would shortly move for summary judgment of

---

[13] In patent infringement cases, the Federal Circuit applies Ninth Circuit law in reviewing disposition of requests for relief under Rule 56(f).  *Metro. Life Ins. Co. v. Bancorp. Servs. L.L.C.,* 527 F.3d 1330, 1336-37, 1337 n.3 (Fed. Cir. 2008); *see Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987).

1   noninfringement.  (Davis Decl. Ex. C.)  On July 12, 2010, Sanofi's counsel informed Genentech that

2   such a motion would be unfairly premature, and would require Sanofi to seek Rule 56(f) relief.  (DN

3   390.)  Genentech nevertheless filed its motion on August 6, almost five months before the deadline

4   for dispositive motions.

5       By seeking Rule 56(f) relief now, in response to Genentech's premature summary judgment

6   motion, Sanofi has moved as expeditiously as the circumstances here permit.  The discovery Sanofi

7   seeks has been requested (and refused on multiple occasions), and Sanofi's motion to compel is

8   pending**.**  Rule 56(f) relief is particularly appropriate where, as here, the information at issue is the

9   subject of outstanding discovery requests.  *VISA Int'l*, 784 F.2d at 1475.

10              **2.        Sanofi Has Specifically Identified**
11                          **Relevant Information To Be Discovered**

12       Sanofi has specifically identified the very limited additional discovery it requires to oppose

13   Genentech's motion—samples of the cells used to produce Avastin®.[14]  These samples could hardly

14   be more relevant to the noninfringement defense that Genentech has raised.  Testing of these samples

15   will conclusively establish whether the claimed HCMV enhancer found by Sanofi's preliminary

16   testing was present in the Avastin® host cells.  (Davis Decl. ¶ 12; Spaete Decl. ¶¶ 13-18.)  Also, as

17   explained in the accompanying declaration of Dr. Spaete, whether certain additional elements of the

18   patent claims are met will be disclosed by the DNA sequence information that Sanofi's testing will

19   reveal.  For example, claim 43 of the '140 patent requires Sanofi to prove that Genentech's Avastin®

20   host cells contain an enhancer from the promoter/regulatory region of HCMV.  The DNA sequence

21   of the enhancer, if found, will conclusively establish that is from the promoter/regulatory region.

22   Claim 43 also requires that the enhancer be found upstream of a heterologous gene.  The sequence of

23

24   _____

[14] The parties' discovery dispute is summarized briefly in Davis Decl. ¶¶ 4-12 and is explained in
25   more detail in the Davis Declaration submitted in Support of Sanofi's Motion to Compel.  (DN 431.)
     Rule 56(f) requires a showing by affidavit of the specified reasons why relief under this rule is
26   warranted.  Sanofi has made this showing in the Davis Declarations, as well as the proffered
     declarations of Mr. Joshua Davis, Dr. Randolph Wall, and Dr. Richard R. Spaete.
27

                                            - 20 -
28   **SANOFI'S OPPOSITION TO GENENTECH'S MOTION**              CASE NOS. C 08-04909 SI (BZ)
     **FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**              C 09-04919 SI
     **HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

1 | DNA adjacent to the enhancer, if found, will reveal the identity of any heterologous gene that is

2 | present.

3 |         **3.      Sanofi Has Established A Basis For**
                    **Believing That Highly Relevant Information Exists**

4 |

5 |      The preliminary test results obtained by Sanofi showed the presence of the claimed enhancer

6 | in commercial vials of Avastin® product.  (Wall Decl., Dec. 17, 2009, ¶¶ 6, 13.)  These results alone

7 | establish a sound basis for Sanofi's belief that highly relevant information relating to the

8 | infringement issues in this case exists, and can be obtained through the testing Sanofi proposes to

9 | conduct.  Genentech has provided no test results disproving infringement, and has not itself

10 | performed the testing that Sanofi proposes.

11 |     **C.      The Avastin® Cell Line Has Not Been Exposed to**
             **"Material from Outside of the Upstream Region of the IE Gene of HCMV"**

12 |

13 |      Finally, Genentech argues that regardless of Sanofi's test results,



28 | **SANOFI'S OPPOSITION TO GENENTECH'S MOTION**       CASE NOS. C 08-04909 SI (BZ)
**FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**     C 09-04919 SI
**HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**



**CONCLUSION**

For the reasons explained above, to the extent Genentech seeks summary judgment of noninfringement with respect to its Rituxan® product, a host of genuine, material disputed facts require that Genentech's motion be denied.

As for Genentech's Avastin® product, because very limited, but extremely critical additional discovery is required, the due date for Sanofi's opposition to Genentech's motion for summary judgment should be continued. Accordingly, Sanofi requests that an appropriate due date for its

- 22 -

**SANOFI'S OPPOSITION TO GENENTECH'S MOTION**      CASE NOS. C 08-04909 SI (BZ)
**FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**      C 09-04919 SI
**HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

1  summary judgment opposition be scheduled after Judge Zimmerman decides Sanofi's pending

2  motion to compel the cell samples at issue here.

3

   Dated: September 16, 2010                    Respectfully submitted,

4

5                                               HARVEY SISKIND LLP
                                                D. PETER HARVEY
6                                               NAOMI JANE GRAY
                                                RAFFI V. ZEROUNIAN
7

8                                               FITZPATRICK, CELLA, HARPER & SCINTO
                                                WILLIAM E. SOLANDER (*pro hac vice*)
9                                               DOMINICK A. CONDE (*pro hac vice*)
                                                PETER D. SHAPIRO (*pro hac vice*)
10                                              JOSHUA A. DAVIS (*pro hac vice*)

11

12                                              By:    /s/ William E. Solander
                                                       William E. Solander
13

14                                              Attorneys for Plaintiff
                                                SANOFI-AVENTIS DEUTSCHLAND GMBH
15

16         I, Raffi V. Zerounian, am the ECF User whose identification and password are being used to

17  file this document.  Pursuant to General Order 45.X.B, I hereby attest that William E. Solander has

    concurred in this filing.
18

19                                                    /s/
                                              _____
20                                                  Raffi V. Zerounian

21

22

23

24

25

26

27
                                       - 23 -
28  **SANOFI'S OPPOSITION TO GENENTECH'S MOTION**          CASE NOS. C 08-04909 SI (BZ)
    **FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**                    C 09-04919 SI
    **HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

## <u>GLOSSARY</u>

**Antibody** – A protein that specifically binds to another protein of interest.  Whether natural (generated and used by the immune system) or engineered (as a drug), an antibody is made of four structural units:  two heavy chains and two light chains.

**Base Pair (bp)** – A pair of nucleotides, or "bases," on opposite strands of DNA, whose interactions hold together a double stranded DNA molecule.  The pairing is specific, with A pairing with T and G pairing with C:



**Chimeric** – Something created from the proteins or genes of two different species

**Chinese Hamster Ovary (CHO) Cells** - A mammalian (eukaryotic) cell line often used as protein factories to produce engineered proteins.  Originally obtained in the 1950s, many heavily-modified CHO cell lines are currently available.

**Daughter Cell** – see Progeny Cell.

**DNA** - A molecule that makes up genes, comprised of two strands of connected nucleotides.

**DNA Replication** - The process of copying a DNA molecule, which occurs during mitosis, *i.e.* cell division.

**DNA Sequence** - The order in which nucleotides are arranged, usually presented as a string of letters, *e.g.*, A-G-C-T-…

**Downstream** – The direction on a strand of DNA that corresponds to the direction of the movement of RNA Polymerase. The RNA polymerase can be thought of as moving with the stream, from upstream to downstream.  "Downstream" is a relative term and requires a reference point.

**Eukaryotic** – referring or relating to a type of cell that contains a nucleus, as distinguished from prokaryotic, which refers to bacteria.

**Exon** - A nucleic acid sequence (DNA or mRNA) that contains the sequence coding for a Protein. When RNA Polymerase reads the code in DNA and creates mRNA, that mRNA is "immature" and contains regions that code for Protein (Exons) and intervening sequences that do not (Introns). Before the mRNA is translated into Protein, the Introns are removed, and the Exons are spliced together.

**SANOFI'S OPPOSITION TO GENENTECH'S MOTION**        CASE NOS. C 08-04909 SI (BZ)
**FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**        C 09-04919 SI
**HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY**

**Genome** - The entirety of an organism's hereditary information, encoded in the DNA (*i.e.*, Genomic DNA). The genome of HCMV is approximately 240,000 base pairs in size. The genome of CHO Cells is over a billion base pairs.

**Hind III E Fragment** – (pronounced "hin – D – 3 – E") An approximately 24,000 base pair fragment of the HCMV genome that contains the Pst I m fragment.

**Host Cell** - A cell that has been introduced with DNA (or RNA), such as a mammalian cell acting as a host for a recombinant DNA plasmid.

**Human Cytomegalovirus (HCMV)** - A virus that infects human cells. The viral particle, or virion, is a capsule made up a protein-containing shell and contains the HCMV genome.

**Immediate Early (IE) Gene** – The first viral gene that is expressed—in very high levels—upon infection of a cell. The DNA in the HCMV genome that is upstream of the IE gene contains the IE enhancer and a promoter. The IE gene is found within the Hind III E fragment of the HCMV genome.

**Intron** – As distinguished from an exon, an intron is a non-coding portion of an immature (or precursor) mRNA that is removed before the mRNA is translated into protein.

**mRNA (messenger RNA)**- A molecule that is created when the genetic code of DNA is read by RNA Polymerase. mRNA is translated into Protein.

**Mitosis** – The process by which a living cell replicates and divides.

**Nucleotides** – Molecules that, when joined together, make up the structural units of RNA and DNA. The DNA is composed of two separate strands of connected nucleotides. The RNA is composed of one strand of connected nucleotides. Each nucleotide is composed of a sugar, a phosphate group and a base. In DNA, there are only four types of bases: adenine ("A"), guanine ("G"), cytosine ("C"), and thymidine ("T").

**Progeny Cell** – Cell resulting from the replication and division of a single parent cell.

**Promoter** – A segment of DNA located upstream of a gene to which RNA Polymerase is recruited to begin transcription. The position and orientation of the promoter dictates the position and direction of transcription.

**Proteins** – Molecules responsible for executing nearly all structural and enzymatic functions of living cells. Proteins are strings of amino acids. The sequence of amino acids in a protein is determined by the sequence of nucleotides in the mRNA that encodes the protein.

**Pst I m Fragment** – An approximately 2,100 base pair fragment of the HCMV genome that contains the region of the IE gene from the Pst I site at approximately nucleotide -1100 to the Pst I site at approximately nucleotide +950. The Pst I m fragment contains the transcription start site (+1) for the IE gene.

- G2 -

SANOFI'S OPPOSITION TO GENENTECH'S MOTION       CASE NOS. C 08-04909 SI (BZ)
FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT       C 09-04919 SI
HIGHLY CONFIDENTIAL INFORMATION – ATTORNEY'S EYES ONLY

**Restriction Enzyme** – A protein that cuts DNA at specific nucleotide sequences known as restriction sites.  Restriction sites have defined sequences but occur at random throughout sequences of DNA.  Restriction Enzymes can be used to create a restriction map, a rudimentary picture of the organization of a large piece of DNA.

**Restriction Map** – A map of known restriction sites within a sequence of DNA.  Restriction mapping requires the use of restriction enzymes.  In molecular biology, restriction maps are used as a reference to engineer plasmids or other pieces of DNA.

**RNA** – see mRNA.

**RNA Polymerase** – An enzyme that produces RNA.  During transcription, RNA polymerase reads a sequence of DNA and produces a complimentary, antiparallel strand.

**Sonication** – The act of applying sound (usually ultrasound) energy to agitate particles in a sample.  Sonication of large pieces of DNA results in fragmentation of that DNA into smaller pieces.

**Splice Donor** – A short sequence (of approximately 10 nucleotides) in mRNA that defines the beginning of an intron.

**Transcription** – Process of creating mRNA from a sequence of DNA.  During transcription, a DNA sequence is read by RNA polymerase.  One way of controlling the level of gene expression is to control the level of transcription.

**Transcription Start Site (+1)** – The position on a DNA sequence where transcription begins.  Once +1 is known, nucleotides upstream of +1 are assigned negative number and nucleotides downstream of +1 are given positive numbers.

**Translation** – Process in which mRNA is decoded to produce a string of amino acids that can fold into an active protein.

**Upstream** – A term that identifies sequences proceeding in the opposite direction of the movement of the RNA polymerase. The RNA polymerase can be thought of as moving with the stream, from upstream to downstream.  "Upstream" is also referred to as 5' or 5-prime.

- G3 -