UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SANOFI-AVENTIS DEUTSCHLAND GMBH,<br><br>            Plaintiff,<br><br>     vs.<br><br>GENENTECH, INC. and BIOGEN IDEC INC.,<br><br>            Defendants. | CASE NO. 3:08-cv-04909-SI<br>CASE NO. 3:09-cv-04919-SI<br><br>**FIFTH JOINT CASE MANAGEMENT STATEMENT** |

**COUNSEL LISTED ON FOLLOWING PAGE**

HARVEY SISKIND LLP
D. PETER HARVEY (State Bar No. 55712)
pharvey@harveysiskind.com
RAFFI V. ZEROUNIAN (State Bar No. 236388)
rzerounian@harveysiskind.com
NAOMI JANE GRAY (State Bar No. 230171)
ngray@harveysiskind.com
Four Embarcadero Center, 39th Floor
San Francisco, California 94111
Telephone: 415-354-0100
Facsimile: 415-391-7124

FITZPATRICK, CELLA, HARPER & SCINTO
WILLIAM E. SOLANDER (*pro hac vice*)
wsolander@fchs.com
DOMINICK A. CONDE (*pro hac vice*)
dconde@fchs.com
PETER D. SHAPIRO (*pro hac vice*)
pshapiro@fchs.com
JOSHUA A. DAVIS (*pro hac vice*)
jdavis@fchs.com
1290 Avenue of the Americas
New York, New York 10104
Telephone: 212-218-2100
Facsimile: 212-218-2200

Attorneys for Plaintiff Sanofi-Aventis Deutschland GmbH

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:   (415) 875-6600
Facsimile:    (415) 875-6700

  Victoria F. Maroulis (Bar No. 202603)
  victoriamaroulis@quinnemanuel.com
  Gabriel S. Gross (Bar No. 254672)
  gabegross@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065-2139
Telephone:   (650) 801-5000
Facsimile:    (650) 801-5100

Attorneys for Defendant Genentech Inc.

TOWNSEND & TOWNSEND & CREW LLP
  James G. Gilliland, Jr. (Bar No. 107988)
  jggilliland@townsend.com
  David J. Tsai (Bar No. 244479)
  djtsai@townsend.com
Two Embarcadero Center, Eighth Floor
San Francisco, CA 94111
Telephone:   (415) 576-0200
Facsimile:    (415) 576-0300

  Anne M. Rogaski (Bar No. 184754)
  amrogaski@townsend.com
379 Lytton Avenue
Palo Alto, CA 94301
Telephone:   (650) 326-2400
Facsimile:    (650) 326-2422

FOLEY HOAG LLP
  Donald R. Ware (Mass. Bar No: 516260) (pro hac vice)
  dware@foleyhoag.com
  Claire Laporte (Mass. Bar No: 554979) (pro hac vice)
  claporte@foleyhoag.com
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2600
Telephone:   (617) 832-1180
Facsimile:    (617) 832-7000

Attorneys for Defendant Biogen Idec Inc.

Pursuant to Local Rule 16-10(c) and (d), Plaintiff Sanofi-Aventis Deutschland GmbH ("Sanofi") and Defendants Genentech, Inc. ("Genentech") and Biogen Idec Inc. ("Biogen Idec") jointly submit this Fifth Case Management Statement. The Parties' original Joint Case Management Statement was filed on February 20, 2009 (D.N. 77), a Second Joint Case Management Statement was filed on June 5, 2009 (D.N. 144), a Third Joint Case Management Statement was filed on July 10, 2009 (D.N. 148), and a Fourth Joint Case Management Statement was filed on March 17, 2010 (D.N. 337).

## I. Jurisdiction and Service

*Sanofi-Aventis Deutschland GmbH v. Genentech, Inc. and Biogen Idec, Inc.*, Civil Action No. 08-cv-203 in the U.S. District Court for the Eastern District of Texas ("Texas Action") was transferred to this Court on October 20, 2009 and assigned Civil Action No. 03:09-cv-4919. The Texas Action was consolidated with Civil Action No. 3:08-cv-4909 ("Original California Action") on December 2, 2009 (D.N. 215) (collectively "Consolidated Actions") and the parties were realigned on December 17, 2009 (D.N. 230).

This Court has subject matter jurisdiction over the claims and counterclaims pursuant to at least 28 U.S.C. §§ 1331 and 1338(a).

Following the transfer of the Texas Action to this Court, there is no dispute over personal jurisdiction over any of the parties in the Consolidated Actions.

Genentech and Biogen Idec served Sanofi with their Complaint and their Answer to Sanofi's Amended Complaint in the Consolidated Actions; Sanofi served Genentech and Biogen Idec with its Amended Complaint and its Answer to Defendants' Complaint in the Consolidated Actions.

## II. Facts

### A. Sanofi's Factual Statement

This is an action for infringement of two U.S. patents assigned to Sanofi, U.S. Patent Nos. 5,849,522 and 6,218,140. The Patents in Suit relate to a specific enhancer for eukaryotic

expression systems, namely the enhancer from the major immediate early gene of human cytomegalovirus (or HCMV). Genentech and Biogen Idec have used and continue to use the HCMV enhancer in the commercial production of at least one of their products, Rituxan. Independent forensic laboratory testing suggested that Avastin and Xolair are made using the HCMV enhancer as well. A special master is in the process of being appointed to conduct experiments on DNA to be extracted from the cells used to produce Avastin.

The discovery of the HCMV enhancer arose out of the interaction of two world-renowned laboratories: the laboratory of Walter Schaffner at the University of Zurich, Switzerland and the laboratory of Bernhard Fleckenstein at the University of Erlangen-Nuremberg, Germany. Professor Schaffner was the head of one of the groups that was the first to discover viral and cellular enhancers. Professor Fleckenstein, a former Harvard Medical School professor in Microbiology and Molecular Genetics, was the head of a group that was among the world leaders in the virology of HCMV and related viruses. Only through the cooperation of those two groups, and the merging of those two disciplines, were the inventors able to discover the HCMV enhancer. As it turns out, the HCMV enhancer is the strongest enhancer ever discovered. The enhancer is a critical tool in the production of therapeutic proteins, including antibody-based drugs, from host cells.

In 1984, the inventors had a German patent application filed to protect their invention and began speaking publicly about the invention. The inventors assigned their rights in the invention to Behringwerke AG, a German pharmaceutical company founded by the first Nobel Laureate in Medicine, Emil Adolf von Behring. Based on the inventors' presentations and publications, they were asked by numerous laboratories to supply the HCMV enhancer because of its superior

enhancer activity in a multitude of different cell systems. Among the laboratories that asked for the HCMV enhancer was Genentech.

Because of the value and importance of the HCMV enhancer, Genentech licensed the HCMV enhancer technology from Behringwerke, effective 1991. Behringwerke's representative executed the license in Germany, and the license provides that it should be interpreted in accordance with German law and any disputes under the license agreement should be arbitrated in Paris or, failing arbitration, litigated in Germany.

Behringwerke's license agreement granted Genentech a worldwide, non-exclusive license under the enhancer technology (including the Patents in Suit) in exchange for a royalty of 0.5% on net sales of licensed commercial products, with an annual minimum payment of 20,000 Deutsche Marks. Through the life of the license, Genentech did not pay any royalty on commercial sales and, in fact, failed to make even the minimum payments in certain years until prompted to cure its breach. Instead, Genentech tightly guarded from Behringwerke and its successors the fact that it was selling products for which a royalty would be due.

After Genentech's commercial use of the licensed technology was uncovered, the successors to rights in the licensed technology asked Genentech for assurances that Genentech was, or promptly would be, in compliance with the license agreement. Those letters did not threaten litigation or even arbitration, the letters simply asked Genentech to comply with the terms of the 1992 agreement. Genentech did not do so. Instead, Genentech gave notice that it was terminating the license agreement effective October 27, 2008.

After Genentech gave notice that it was terminating the license, the successors-in-interest to the licensed technology sought the appropriate remedies. Genentech had agreed under the license to arbitrate disputes in Paris, and Hoechst—into whom Behringwerke had merged—

requested that arbitration. The claimants in the arbitration are Hoechst and Sanofi, and Genentech is the respondent. The arbitration is now proceeding, although Genentech sought to erect numerous procedural hurdles to the resolution of the dispute on the merits.

With the termination of the license agreement, Genentech and Biogen Idec are now infringers, and Sanofi—which now holds legal title to the Patents in Suit—filed an infringement action in the Eastern District of Texas, a forum where Genentech itself previously chose to pursue claims of patent infringement and where it is undisputed that allegedly infringing sales have occurred. Genentech and Biogen Idec subsequently filed this declaratory judgment action, attempting to assert claims against Sanofi as well as two other defendants, Sanofi-Aventis U.S. LLC and Sanofi-Aventis U.S. Inc., who have no legal interest in the patents-in-suit. Those cases have now been consolidated into this Action.

Sanofi identified evidence of use of the HCMV enhancer in the production of Avastin, Rituxan, and Xolair. Sanofi therefore sought leave to amend the pleadings and its infringement contentions to accuse all three products. The Court granted Sanofi leave to amend its pleadings and contentions to include infringement allegations regarding Avastin, but not Xolair. In October, 2010, the Court ordered discovery that will permit direct determination of whether Avastin is made using the HCMV enhancer.

### B.  Genentech and Biogen Idec's Factual Statement

Genentech and Biogen Idec are leaders in the biotechnology industry that develop, manufacture and commercialize innovative therapeutics. Genentech has had its principal place of business in the San Francisco Bay area since 1976, when it founded the biotechnology industry. Biogen Idec was founded in 1978 and is a global leader in the discovery, development, manufacturing, and commercialization of innovative therapies and employs hundreds of people in

1  California.  Sanofi is a member of a group of pharmaceutical companies organized under a French
2  holding company named "Sanofi-Aventis."
3       In 1992, Genentech entered into a research license agreement ("the License Agreement")
4  with Behringwerke AG ("Behringwerke"), a German biotechnology company.  Behringwerke
5  granted Genentech a license to use intellectual property "for research purposes" for a minimum
6  annual royalty payment of DM20,000.  Genentech could also elect to take a license of the
7  intellectual property for commercial "end products" in which event it would pay a running royalty
8  of 0.5% of net sales on those products.  The License Agreement provided that controversies
9  arising under the agreement would be resolved through arbitration in Paris, France and for
10 termination of the agreement upon two months notice by either party.
11      For sixteen years, Genentech made the minimum annual royalty payments of DM20,000
12 pursuant to the purported license "for research purposes" but never elected or made any payments
13 for a "commercial" license.  Over these sixteen years, Genentech released a number of the
14 products that Sanofi-Aventis Germany now alleges were covered by a "commercial" license and
15 now contends infringe the Patents in Suit.  Biogen Idec is involved in one of these products,
16 Rituxan®, which is subject to a collaboration agreement between Biogen Idec and Genentech.
17 However, during this time, neither Behringwerke nor its successors alleged that Genentech should
18 pay a running royalty, or that the sale of any of these products infringed the licensed patents.
19      On June 30, 2008, Genentech received at its California headquarters a letter from Paul
20 Berghoff of the law firm McDonnell Boehnen Hulbert & Berghoff, stating that his firm
21 represented "sanofi-aventis."  The letter accused Genentech of using the licensed technology to
22 make commercial products and demanded running royalties pursuant to the license.  On August
23 27, 2008, Genentech sent a letter from its California headquarters to Behringwerke, with a copy to
24 Sanofi-Aventis, terminating the License Agreement effective October 27, 2008.
25      On Friday, October 24, 2008 one business day before the License Agreement was to
26 terminate, the Sanofi affiliate Hoechst GmbH requested arbitration under the License Agreement
27 in the International Court of Arbitration in Paris, France.  In its request, Hoechst GmbH contended

01731.51443/3764140.1
28
-5-
FIFTH JOINT CASE MANAGEMENT STATEMENT     CASE NO. 3:08-cv-04909-SI
    CASE NO. 3:09-cv-04919-SI

that it was the successor-in-interest to Behringwerke and that Genentech breached the License Agreement by infringing the Patents in Suit.

Sanofi claims that Rituxan® infringes the Patents in Suit. Defendants contend that this product does not infringe. Sanofi also claims that Genentech's product Avastin® infringes the Patents in Suit. Genentech contends that this product cannot infringe the patents in suit because it is not manufactured using HCMV enhancer DNA.

Defendants contend that the asserted claims are invalid and the Patents in Suit are unenforceable.

1. <u>Testing of Avastin® Genomic DNA</u>

Further, Genentech contends that there is no dispute that the cells used to manufacture Avastin®: (1) include non-enhancer HCMV DNA sequences from outside of the upstream region of the major immediate early region of HCMV and (2) do not contain a recombinant DNA plasmid as defined by the Court. Thus, regardless of the outcome of the testing ordered by Magistrate Judge Zimmerman, Avastin® cannot infringe the patents-in-suit.

**C. Principal Factual Issues in Dispute**

The principal factual disputes concern Sanofi's allegations that Genentech and Biogen Idec infringe the Patents in Suit and Genentech and Biogen Idec's allegations of non-infringement, invalidity, and unenforceability of the Patents in Suit. Other factual disputes may arise as the case progresses and the parties fully reserve their rights to address the same.

**III. Legal Issues**

The substantive issues in dispute, based on the current pleadings, are:

- Sanofi's position: Whether Genentech and Biogen Idec have infringed and are infringing any claim of the Patents in Suit.
- Defendants' position: Whether Genentech and Biogen Idec have infringed and are infringing any valid claim of the Patents in Suit.

- Whether the claims of the Patents in Suit are invalid for failing to satisfy one or more of the conditions for patentability specified in Title 35 of the United States Code, including without limitation, Sections 101, 102, 103 and 112.
- Whether the Patents in Suit are unenforceable.
- Whether this case is exceptional, and if so, whether either Sanofi or Genentech and Biogen Idec are entitled to their costs and attorneys' fees under 35 U.S.C. § 285.

Other legal issues may arise as the case progresses and the parties fully reserve their rights to address the same.

## IV. **Motions**

### A. Pending Motions

- On August 6, 2010 Genentech filed a Motion for Summary Judgment of Non-Infringement. (D.N. 412.) That motion has been fully briefed and is scheduled for hearing on November 12, 2010.
- Also on August 6, 2010, Biogen Idec filed a Motion for Summary Judgment of Invalidity for Lack of Written Description. (D.N. 407.) That motion has been fully briefed and is also scheduled for hearing on November 12, 2010.
- On September 16, 2010, Sanofi filed a Motion for Leave to Amend its Infringement Contentions. (D.N. 448.) That motion has been fully briefed and is also scheduled for hearing on November 12, 2010.
- On September 21, 2010, Genentech filed a Motion to Strike Portions of Sanofi's opposition to Genentech's Motion for Summary Judgment and Supporting Declaration of Randolph Wall. (D.N. 501.) That motion has been fully briefed and is also scheduled for hearing on November 12, 2010.

### B. Previously Resolved Motions

On December 2, 2008, Sanofi filed its Motion to Dismiss for Lack of Personal Jurisdiction. (D.N. 14.) On the same date, former parties Sanofi-Aventis U.S. LLC and Sanofi-Aventis U.S. Inc. filed their Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a

1 Claim. (D.N. 17.) The former motion was withdrawn upon transfer of the Texas Action, the latter
2 motion was mooted by Genentech and Biogen Idec's Notice of Dismissal. (D.N. 149.)

3 In connection with jurisdictional discovery, the parties also filed several other motions
4 before this Court and Magistrate Judge Zimmerman. All of those motions were resolved and
5 jurisdictional discovery was completed.

6 On May 12, 2009, this Court (D.N. 136) granted Defendants' Motion to Stay (D.N. 106)
7 until the Federal Circuit ruled on Genentech and Biogen Idec's petition for writ of mandamus.

8 On July 8, 2009, Sanofi-Aventis Germany filed a Motion for Protective Order addressing
9 three disputed provisions of a Stipulated Protective Order. (D.N. 147.) The Court ruled on those
10 three provisions (D.N. 161), and the parties submitted a Stipulated Protective Order that the Court
11 entered. (D.N. 163.)

12 On October 1, 2009, Genentech filed a Motion to Disqualify McDonnell Boehnen Hulbert
13 & Berghoff LLP. (D.N. 167.) That motion was granted on March 20, 2010 (D.N. 341). Sanofi
14 sought leave to file a motion for reconsideration on April 22, 2010. (D.N. 359), which was denied
15 on May 14, 2010. (D.N. 371.)

16 On December 18, 2009, Sanofi filed a Motion for Leave to File Amended Pleadings and
17 Infringement Contentions. (D.N. 233.) That motion was granted as to Avastin® but denied as to
18 Xolair® on March 20, 2010. Sanofi filed its Amended Complaint and served its first amended
19 Infringement Contentions, which included contentions relating to Avastin®, on April 1, 2010.

20 On June 23, 2010 this Court entered its Claim Construction Order. (D.N. 383.) Sanofi
21 sought leave to file a motion for reconsideration on July 6, 2010. (D.N. 384), which was denied
22 on July 13, 2010 (D.N. 392.)

23 On July 8, 2010 Genentech filed an Administrative Motion for Leave to File More Than
24 One Motion for Summary Judgment. (D.N. 387.) This motion was granted on July 28, 2010.
25 (D.N. 395.)

26 On September 1, 2010, Sanofi filed a Motion to Compel Production of Avastin® Samples.
27 (D.N. 472.) This motion was granted according to the terms set forth in the Tenth Discovery
28

1 Order. (D.N. 518.)

2 The parties have also filed a several scheduling, sealing, or administrative motions before
3 this Court which have been resolved.

4 In connection with discovery, the parties have also filed several other motions before this
5 Court and Magistrate Judge Zimmerman. Except as indicated above, all of those motions have
6 been resolved.

7 Other motions may be filed as the case progresses, and the parties fully reserve their rights
8 to address the same.

9 **V.   Amendment of Pleadings**

10 Sanofi filed its Motion for Leave to File Amended Pleadings and Infringement Contentions
11 prior to the deadline to amend pleadings. (D.N. 233.) That motion is was granted in part and
12 Sanofi filed its Amended Complaint on April 1, 2010 and Defendants answered. The deadline to
13 amend pleadings has since passed.

14 **VI.   Evidence Preservation**

15 Each party represents that it has instituted reasonable document retention procedures so as
16 to maintain any relevant documents, electronic or otherwise, or any other relevant electronically
17 recorded material, until this dispute is resolved.

18 **VII.   Disclosures**

19 The parties exchanged initial disclosures pursuant to Fed. R. Civ. P. 26(a) on March 20,
20 2009 and subsequently supplemented those initial disclosures.

21 **VIII.   Discovery**

22 *Discovery to Date.* Jurisdictional discovery in this Action is complete. Fact discovery
23 closed on September 21, 2010. The parties have served interrogatories, requests for production,
24 and requests for admissions, and have provided certain responses and documents in response. The
25 parties have taken the depositions of several party witnesses, including 30(b)(6) depositions of all
26 parties, and depositions of third-parties. The parties have exchanged initial expert reports on
27 issues other than damages.

*Scope of Discovery.*  The scope of non-jurisdictional discovery related to at least infringement, invalidity, damages and equitable defenses.

*Fact Discovery Limitations.*

The fact discovery limitations previously ordered by the Court are set forth in the parties' Fourth Joint Case Management Statement. (D.N. 337 at 9.)  They will not be repeated here, as they have not changed and fact discovery is now closed.

*Expert Discovery.*  The parties agree that depositions of expert witnesses should not count toward the limit on the number of fact witness depositions, but rather should be limited only as set forth in the Federal Rules of Civil Procedure.  Each testifying expert may be deposed for one day, unless otherwise stipulated or ordered by the Court.

The parties agree that only materials considered by an expert in preparing his or her expert report should be discoverable.  More specifically, drafts of any report or disclosure required under Fed. R. Civ. P. 26(a)(2), regardless of the form of the draft, shall not be discoverable.  In addition, communications between a party's attorney and any witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B), regardless of the form of the communications, shall not be discoverable, except to the extent that the communications:  (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied upon in forming the opinions to be expressed.[1]

*Privilege Logs.*  The parties agree that communications relating to this action made on or subsequent to the date on which this action was filed, and regardless of form, are, at minimum,

---

[1] *See generally* Supreme Court Approval of Proposed Amendment to Fed. R. Civ. P. 26 *available at* http://www.uscourts.gov/RulesAndPolicies/FederalRulemaking/PendingRules/ProposedSupCt1210.aspx (to go in effect December 2010).

1  presumptively trial preparation material under Fed. R. Civ. P. 26(b)(3) and that no party is likely
2  to have substantial need for these materials.  Accordingly, to avoid unnecessary burden, the parties
3  agree that they need not record such communications in a privilege log as required by Fed. R. Civ.
4  P. 26(b)(5)(A).

5  *Other issues.*  At present, the parties do not have any issues relating to disclosure of
6  information (electronically stored and otherwise) including the form or forms in which it should
7  be produced and timing of production.  Issues relating to the disclosure of information are likely to
8  depend on the scope of discovery sought by the Parties and the time periods they assert are
9  relevant.  The Parties anticipate that they will amicably work out the details for discovery.

10 **IX.    Class Actions**

11     This is not a class action.

12 **X.    Related Cases**

13     Hoechst GmbH and Sanofi-Aventis Deutschland GmbH v. Genentech, Inc., Case No.
14  15900/JHN was filed on October 24, 2008 in the International Court of Arbitration (the
15  "Arbitration").  Hoechst is the Claimant, Genentech is the Respondent, and Sanofi-Aventis
16  Deutschland GmbH is a party for party representation and arbitration cost purposes.  The
17  Arbitration seeks recovery of royalties under the License Agreement originally executed by
18  Behringwerke AG and Genentech, Inc.  The Arbitration hearing was held from August 30 to
19  September 3, 2010.  Post-hearing briefing is due on November 10, 2010, and both sides have
20  agreed to seek an extension of that date to December 10, 2010.  Proceedings on the merits are
21  scheduled to close on November 15, 2010, but will likely be extended one month as well.

22 **XI.    Relief**

23     Sanofi seeks damages, a permanent injunction, and a declaration that Genentech and
24  Biogen Idec have infringed the Patents in Suit.  Sanofi further seek costs and attorneys' fees
25  pursuant to 35 U.S.C. § 285.  Genentech and Biogen Idec seek a declaration that they have not
26  infringed the Patents in Suit and that such patents are invalid and unenforceable.  Genentech and
27  Biogen Idec further seek costs and attorneys' fees pursuant to 35 U.S.C. § 285.
28

**XII. Settlement and ADR**

The parties have stipulated to engage in private mediation with Judge Edward A. Infante (Ret.) on January 6, 2011. The parties have filed ADR Certifications in compliance with ADR L.R. 3-5(b).

**XIII. Consent to Magistrate Judge for All Purposes**

The parties do not consent to having a magistrate judge conduct all further proceedings including trial and entry of judgment.

**XIV. Other References**

This case is not suitable for any other references.

**XV. Narrowing of Issues**

As noted in Part IV, above, Genentech and Biogen Idec have, respectively, filed motions for summary judgment of noninfringement and invalidity for lack of written description. The parties anticipate that they will file further motions for summary judgment to narrow the issues in the case.

Biogen Idec reserves the right to seek a severance of Sanofi's claims against Genentech concerning Avastin® from this case, and an appropriate order that ensures that issues pertaining to Rituxan® are tried in a timely fashion. (*See* D.N. 311 at 6.)

**XVI. Expedited Schedule**

This case does not require an expedited schedule.

**XVII. Scheduling**

The parties' prior scheduling suggestions were set forth in Appendix 1 to the Third Joint Case Management Statement. The Court adopted a schedule as part of its Civil Pretrial Minutes. (D.N. 157.) The parties have also agreed to a three-week extension with regard to expert discovery regarding damages. The remaining portions of the pretrial schedule, as agreed to by the parties and as calculated based on the date of the Claim Construction Order, are set forth below:

| | |
|---|---|
| Parties to designate expert witnesses and provide their expert reports on issues for which they do | November 22, 2010 |

| | |
|---|---|
| not bear the burden of proof | |
| Expert discovery opens | November 22, 2010 |
| Genentech and Biogen Idec to designate rebuttal expert witnesses and provide rebuttal expert reports on damages issues | December 13, 2010 |
| Close of expert discovery | December 20, 2010 |
| Last date to file dispositive motions | December 30, 2010 |
| Last date on which dispositive motions may be heard | February 3, 2011 |
| Pretrial Conference | April 19, 2011 |
| Trial | April 26, 2011 |

## XVIII. Trial

This case will be tried by a jury. The parties expect the trial to last for two weeks.

## XIX. Disclosure of Non-Party Interested Entities or Persons

The parties have filed the Certification of Interested Entities or Persons as required by Civil Local Rule 3-16.

Sanofi is an indirectly owned subsidiary of Sanofi-Aventis S.A., whose American Depositary Receipts are publicly traded on the New York Stock Exchange under the ticker symbol SNY. Total SA (a French corporation whose shares are traded on the Eurolist of Euronext Paris and whose American Depository Receipts are publicly traded on the New York Stock Exchange) and L'Oreal (a French corporation whose shares are traded on the Eurolist of Euronext Paris and whose American Depository Receipts are traded over the counter) each own Sanofi-Aventis S.A. stock representing at least 10% of voting rights.

Genentech is a subsidiary of Roche Holdings, Inc., a Delaware corporation. Genentech is ultimately wholly owned by Roche Holding Ltd., a joint stock company organized under the laws of Switzerland. There are no publicly held companies between Genentech and Roche Holding

Ltd. Biogen Idec Inc. has no parent company. No publicly held corporation owns 10% or more of the stock of Biogen Idec Inc.

DATED: November 5, 2010         FITZPATRICK, CELLA, HARPER & SCINTO

By /s/ William E. Solander
William E. Solander
Attorneys for Plaintiff Sanofi-Aventis Deutschland GmbH

DATED: November 5, 2010         QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Victoria F. Maroulis
Victoria F. Maroulis
Attorneys for Defendant Genentech Inc.

DATED: November 5, 2010         FOLEY HOAG LLP

By /s/ Marco J. Quina
Marco J. Quina
Attorneys for Defendant Biogen Idec, Inc.