1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
       Charles K. Verhoeven (Bar No. 170151)
2       charlesverhoeven@quinnemanuel.com
       Eric E. Wall (Bar No. 248692)
3       ericwall@quinnemanuel.com
    50 California Street, 22nd Floor
4   San Francisco, California  94111
    Telephone: (415) 875-6600
5   Facsimile: (415) 875-6700

6       Victoria F. Maroulis (Bar No. 202603)
       victoriamaroulis@quinnemanuel.com
7       Gabriel S. Gross (Bar No. 254672)
       gabegross@quinnemanuel.com
8   555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, California  94065-2139
9   Telephone: (650) 801-5000
    Facsimile: (650) 801-5100

10

    Attorneys for Defendant and Counterclaimant Genentech, Inc.

11

12                UNITED STATES DISTRICT COURT

13          FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                   SAN FRANCISCO DIVISION

15

16                                          | Case Nos. 08-cv-4909 SI
                                            |                09-cv-4919 SI

17                                          | GENENTECH'S MOTION TO
18  SANOFI-AVENTIS DEUTSCHLAND GMBH,        | PERMANENTLY ENJOIN SANOFI-
                                            | AVENTIS DEUTSCHLAND AND ITS
19             Plaintiff and Counterclaim-  | AFFILIATES FROM PURSUING AN
               Defendant,                   | ARBITRAL AWARD THAT WOULD
                                            | UNDERMINE THIS COURT'S
20          v.                              | JUDGMENT

21  GENENTECH,  INC.  AND  BIOGEN  IDEC     | Date:      May 25, 2012 (requested by
    INC.,                                   |                stipulation)
22                                          | Time:      9:00 a.m.
               Defendants and              | Courtroom 10
23             Counterclaimants.            | The Honorable Susan Illston

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................ iv

RELIEF REQUESTED ............................................................................................... iv

STATEMENT OF ISSUES TO BE DECIDED............................................................ iv

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................1

I.      INTRODUCTION............................................................................................1

II.     STATEMENT OF RELEVANT FACTS ........................................................2

        A.      The History of the Dispute ...................................................................2

                1.      The Behringwerke License ........................................................3

                2.      This Federal Litigation ..............................................................4

                3.      The Co-pending ICC Arbitration ..............................................4

        B.      The Close Relationship Between Sanofi, Hoechst, and Their Interests in the
                Two Parallel Proceedings......................................................................9

III.    LEGAL STANDARDS...................................................................................11

IV.     SANOFI, ITS AFFILIATES, AND ITS COUNSEL SHOULD BE ENJOINED
        FROM PURSUING ARBITRATION THAT WOULD UNDERMINE THIS
        COURT'S AFFIRMED FINAL JUDGMENT. ...............................................12

        A.      The Parties and Issues in this Case and in the Arbitration Are the Same, and
                This Court's Affirmed Final Judgment Is Dispositive of the Arbitration. ............12

                1.      The Issues in this Court and the Arbitration are the Same..........13

                2.      Sanofi and Hoechst Have Identical Interests and Are the Same
                        Parties for Purposes of This Motion............................................14

                3.      This Court's Affirmed Final Judgment Is Dispositive of the
                        Arbitration. ................................................................................17

        B.      Allowing Sanofi, Its Affiliates, and Its Counsel to Pursue the Arbitration
                Would Frustrate Fundamental Judicial Policies......................................17

        C.      Issuing the Injunction Will Have No Appreciable Impact on Comity....................20

V.      CONCLUSION ..............................................................................................21

1

<u>**TABLE OF AUTHORITIES**</u>

2
**Page**

3
<u>**Cases**</u>

4
<u>Allendale Mut. Ins. Co. v. Bull Data Sys. Inc.</u>,
  10 F.3d 425 (7th Cir. 1993)............................................................11, 14, 21

5

6
<u>Applied Medical Distribution Corp. v. Surgical Co.</u>,
  587 F.3d 909 (9th Cir. 2009).................................................11, 12, 13, 14, 17

7
<u>Brulotte v. Thys Co.</u>,
  379 U.S. 29 (1964) .............................................................................19

8

9
<u>Chiron Corp. v. Ortho Diagnostics Sys.</u>,
  207 F.3d 1126 (9th Cir. 2000).................................................................12, 17

10
<u>Collins v. D.R. Horton, Inc.</u>,
  505 F.3d 874 (9th Cir. 2007)....................................................................21

11

12
<u>E & J Gallo Winery v. Andina Licores S.A.</u>
  446 F.3d 984 (9th Cir. 2006)................................................................11, 14, 20

13
<u>Goss Int'l Corp. v. Mann Roland</u>,
  491 F.3d 355 (8th Cir. 2007)....................................................................20

14

15
<u>Int'l Rectifier Corp. v. Samsung Elecs. Co.</u>,
  361 F.3d 1355 (Fed. Cir. 2004)..................................................................20

16
<u>John Hancock Mut. Life Ins. Co. v. Olick</u>,
  151 F.3d 132 (3d Cir. 1998)......................................................................12

17

18
<u>Mallinckrodt, Inc. v. Medipart, Inc.</u>,
  976 F.2d 700 (Fed. Cir. 1992)....................................................................19

19
<u>Miller Brewing Co. v. Fort Worth Distrib.</u>,
  781 F.2d 494 (5th Cir. 1986).....................................................................11

20

21
<u>Monsanto Co. v. McFarling</u>,
  363 F.3d 1336 (Fed. Cir. 2004)...................................................................19

22
<u>Motorola Credit Corp. v. Uzan</u>,
  No. 02 Civ. 666 (JSR), 2003 WL 56998 (S.D.N.Y. Jan. 7, 2003) ..............................14, 15, 16

23

24
<u>Oracle America, Inc. v. Myriad Grp. AG</u>,
  No. C10-05604, 2012 WL 146364 (N.D. Cal. Jan. 17, 2012) .................................17

25
<u>Paramedics Electromedicina Comercial LTDA v. GE Med. Sys. Info. Techs., Inc.</u>,
  369 F.3d 645 (2d Cir. 2004).....................................................................15

26

27
<u>Parklane Hosiery Co., Inc. v. Shore</u>,
  439 U.S. 322, 99 S. Ct. 645 (1979) .............................................................18

28

Pena v. Gardner,
   976 F.2d 469 (9th Cir. 1992)..................................................................18

Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.,
   859 F.2d 681 (9th Cir. 1988)..................................................................16

Robi v. Five Platters, Inc.,
   838 F.2d 318 (9th Cir. 1988)..................................................................18

In re Schimmels,
   127 F.3d 875 (9th Cir. 1997)..................................................................18

Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League,
   652 F.2d 852 (9th Cir. 1981)..................................................................11

Steen v. John Hancock Mut. Life Ins. Co.,
   106 F.3d 904 (9th Cir. 1997)..................................................................18

Sun World, Inc. v. Olivarria,
   804 F. Supp. 1264 (E.D. Cal. 1992)..................................................11, 19

In re Y & A Grp. Sec. Litig.,
   38 F.3d 380 (8th Cir. 1994).........................................................12, 17, 19

## **Statutes**

9 U.S.C. § 9 ........................................................................................12

Fed. R. Civ. P. 65 ..............................................................................2, 16

## **Miscellaneous**

Gary B. Born, 2 International Commercial Arbitration 2915 (2009)..................21

Wright & Miller, 18A Federal Practice & Procedure, § 4460 (2d ed. 2012)..................18

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 25, 2012 at 9:00 a.m., or as soon thereafter as counsel may be heard before the Honorable Susan Illston in Courtroom 10 at 450 Golden Gate Avenue, San Francisco, California, defendant and counterclaimant Genentech, Inc. will, and hereby does, move this Court for a permanent injunction barring Sanofi-Aventis Deutschland GmbH, its affiliates, its counsel, and any other person or entity in active concert or participation with it from pursuing a parallel arbitration in Europe before the International Chamber of Commerce ("ICC") that necessarily would undermine this Court's final judgment that Genentech's product Rituxan® does not infringe Sanofi's '522 and '140 patents, which judgment was recently affirmed on appeal by the United States Court of Appeals for the Federal Circuit.  Defendant's motion is based on this notice; the memorandum of points and authorities that follows; the Declaration of Sam Stake in Support of Genentech's Motion for a Permanent Injunction and the exhibits attached thereto; the pleadings on file in this action; and any further evidence or argument that the Court may properly receive at or before the hearing.

## RELIEF REQUESTED

Genentech, Inc. requests that the Court permanently enjoin Sanofi-Aventis Deutschland GmbH, its affiliates, its counsel, and any other person or entity who is in active concert or participation with it, from pursuing a parallel arbitration in an effort to obtain relief that necessarily would undermine this Court's affirmed final judgment of non-infringement.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should issue an injunction barring Sanofi-Aventis Deutschland GmbH, its affiliates, its counsel, and any other persons or entities who are in active concert or participation with it, from pursuing in a parallel arbitration an inconsistent award finding that the '522 and '140 patents are infringed under U.S. law, because (1) the present action, where both this Court and the Federal Circuit held that the '522 and '140 patents are not infringed, is dispositive of the arbitration, and the parties and infringement issues in this case and the arbitration are functionally the same; (2) the arbitration, if plaintiff and its affiliates are successful, necessarily would undermine and frustrate the policies of this forum; and (3) an injunction concerning a U.S. law issue involving private parties before a private sole arbitrator, would have no appreciable impact on comity.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

For three and a half years, Sanofi-Aventis Deutschland GmbH ("Sanofi") tried and failed to prove that Genentech's cancer medicine Rituxan® (among others) infringed its '522 and '140 patents on certain DNA "enhancer" technology. Sanofi lost, twice. This Court granted summary judgment of non-infringement. The Court of Appeals for the Federal Circuit recently affirmed that judgment in all respects, noting that one of Sanofi's central infringement "argument[s] contradicts basic scientific understanding and common sense." (Notice, D.N. 641 at 11.) Rituxan® does not infringe Sanofi's patents.

In an unapologetic attempt to completely undo this Court's judgment, Sanofi, its owner and affiliate Hoechst GmbH, and their shared counsel are asking a European arbitration tribunal to find, under U.S. law, that Rituxan® infringes the very patents that this Court ruled are not infringed, relying on infringement arguments and positions that directly contradict this Court's judgment. They seek an award from a Swiss Arbitrator that Rituxan® infringes the '522 and '140 patents, under U.S. law, and that therefore, Genentech owes royalties under a terminated patent license agreement—this, despite the fact that the Court's final judgment, as affirmed by the Federal Circuit, conclusively resolved the infringement issue. If the Arbitrator finds infringement, his award will directly contradict this Court's affirmed "final judgment of non-infringement of the patents-in-suit as to Rituxan® and Avastin® in favor of Genentech and [its partner] Biogen Idec. and against Sanofi-Aventis Deutschland GMBH." (Judgment, D.N. 622.)

The arbitration, in which both Genentech and Sanofi are parties, is reaching its final stages. Genentech has informed the Arbitrator of this Court's non-infringement judgment and its affirmance by the Federal Circuit, and has requested that the Arbitrator terminate the arbitration in favor of Genentech for the reason that the non-infringement judgment by the U.S. courts is a final determination of the very same infringement question on which the arbitration is to be decided. Nonetheless, the Arbitrator advised the parties he will be holding further hearings in Frankfurt in June to address whether, under United States law, Rituxan® infringes the '522 and '140 patents, likely

including continued expert testimony on the issue of infringement.  (Ex. 1[1] (Letter from Karrer (Apr. 20, 2012), at 1; Ex. 2 (Letter from Karrer (Apr. 23, 2012), at 1.)  Indeed, despite having this Court's prior non-infringement order, the Arbitrator already has declared in a partial award that "Rituxan® is produced with the help of the enhancer patented in the ['522 and '140] Patents which are the subject of the [license]."  (Ex. 3 (Second Partial Award (June 9, 2011)), at ¶ 312.)

Hoechst argued as recently as April 20 that a finding of infringement in the arbitration is a *fait accompli*, contending that in the partial award, "the Sole Arbitrator made an explicit finding as to the principle of liability as to Rituxan®" and he "recited sufficient facts to support a summary conclusion that the manufacture of Rituxan infringes" the '522 and '140 patents.  (Ex. 4 at 5, 11-12 (Letter from Hoechst to Karrer (Apr. 20, 2012).)  Hoechst urged the Arbitrator to cancel further proceedings and immediately proceed to determine how much Genentech owes it for allegedly infringing sales of Rituxan®.  (Id. at 12, 14.)  The risk of an inconsistent outcome in the arbitration that undermines this Court's final judgment is real and imminent.

Sanofi has exhausted its appeals in this case.  The Federal Circuit's mandate issued April 30, 2012, returning jurisdiction to this Court.  To defend the Court's affirmed final judgment, under basic principles of *res judicata* and equity, and to avoid needless, wasteful, and at this point, vexatious continued arbitral proceedings, Genentech requests pursuant to Federal Rule 65 that this Court permanently enjoin Sanofi, its affiliates, its counsel, any other person or entity in active concert or participation with Sanofi from continuing the arbitration and seeking an award that would eviscerate this Court's non-infringement judgment.[2]

## II.   STATEMENT OF RELEVANT FACTS

### A.   The History of the Dispute

The dispute between Genentech and Sanofi/Hoechst centers on two United States patents related to "enhancer" DNA derived from human cytomegalovirus (HCMV).

---

[1]  Citations to "Ex. __" are citations to the accompanying Declaration of Sam Stake in Support of Defendant's Motion to Permanently Enjoin Sanofi-Aventis Deutschland, Its Affiliates, and Its Counsel from Pursuing an Arbitral Award to Undermine This Court's Judgment.

[2]  To ensure its motion is resolved promptly and before the parties and the Arbitrator spend additional time and resources on another international proceeding in Europe, Genentech is filing herewith a stipulation by the parties to hear this motion on shortened time.

1          1.       *The Behringwerke License*

2          In 1992, Genentech entered into a license agreement with Behringwerke AG, a German

3   biotechnology company, through which Genentech received rights under then-pending patent

4   applications pertaining to HCMV enhancer technology, which included in operative part the

5   applications that matured into the '522 and '140 patents.  (Summary Judgment Order ("SJ Order"),

6   D.N. 604 at 3:5-12.)  In addition to granting a license for research purposes, the agreement also

7   included provisions relating to a commercial license covering any qualifying commercial products that

8   Genentech identified to Behringwerke.  (Id. at 3:10-12; License Agreement, D.N. 1, Ex. 1 at § 2.1.)  In

9   the event that Genentech identified to Behringwerke certain "Licensed Products" covered by a

10  licensed patent, Genentech would pay a running royalty of 0.5% on the sale of those products.

11  (License Agreement, D.N. 1, Ex. 1 at §§ 1.6, 3.1.)  The license agreement expressly defines royalty-

12  bearing products as those that would "infringe" a claim of the licensed patents:

13              "Licensed Product(s)" means materials (including organisms), the
                manufacture, use or sale of which would, in the absence of this
14              Agreement, ***infringe one or more unexpired issued claims of the
                Licensed Patent Rights***.
15

16  (Id. at § 1.6 (emphasis added).)

17          Between 1992 and 2008, Genentech made annual payments under the license for research

18  purposes.  (SJ Order, D.N. 604 at 3:12-13.)   But Genentech never made commercial products under

19  the commercial license and, therefore, was never required to make running royalty payments.  (Id.;

20  Ex. 5 (Hoechst's Request for Arbitration (Oct. 24, 2008), at ¶ 53.)  Over the years, Genentech

21  developed and launched new therapies, including the cancer drugs Rituxan® and Avastin®.  These are

22  not royalty-bearing products under the license agreement, as they do not "infringe one or more

23  unexpired issue claims" of the '522 or '140 patents.  (License Agreement, D.N. 1, Ex. 1 at § 1.6.)

24  Genentech manufactures Rituxan® and co-promotes the product in collaboration with Biogen Idec.

25  (SJ Order, D.N. 604 at 2:1-5.)  In 2008, Sanofi contacted Genentech and accused it of infringing the

26  '522 and '140 patents by selling Rituxan®, Avastin®, and other products, after which Genentech

27  terminated the 1992 license agreement, effective October 27, 2008.  (SJ Order, D.N. 604 at 3:13-16;

28  Complaint, D.N. 1 at ¶¶ 27-28, 31, 34-35.)

1

### 2.    This Federal Litigation

2      On October 27, 2008, Genentech sought a declaratory judgment in this Court that the '522 and

3  '140 patents were not infringed, were invalid, and were unenforceable, while Sanofi simultaneously

4  sued Genentech in federal court in Texas for allegedly infringing those patents.  (Complaint, D.N. 1 at

5  ¶ 1; Order, D.N. 604 at 3:17-20.)  The Texas case was transferred here, and the two actions were

6  consolidated in this Court.  (Order, D.N. 204.)  After extensive claim construction briefing and a

7  hearing, the Court construed the claims.  (Order, D.N. 383.)  Based on an undisputed factual record,

8  the Court also granted Genentech's motion for summary judgment that Rituxan® and Avastin® do not

9  infringe any claim of the '522 or the '140 patents.  (Order, D.N. 604.)  The Court of Appeals for the

10  Federal Circuit affirmed this judgment in a 16-page order.  (Notice, D.N. 641.)  Among other things,

11  in its order, the Federal Circuit found Sanofi's infringement argument that the natural cellular process

12  of mitosis, or cell division, satisfies the claimed step of "inserting" foreign DNA into a cell

13  "contradicts basic scientific understanding and common sense."  (Id. at 10-11.)  The Federal Circuit's

14  mandate issued yesterday, April 30, 2012.

15

### 3.    The Co-pending ICC Arbitration

16      On October 24, 2008, Sanofi's affiliate and majority owner, Hoechst GmbH, sought to enforce

17  the same United States patent rights by initiating an arbitration in Europe under the 1992 license

18  agreement.  (Ex. 5 at ¶¶ 12-17.)  Sanofi later became a party to the arbitration, as explained below.

19  Both Sanofi and Genentech are parties to this litigation and the ICC arbitration, while Hoechst—

20  which owns 85 percent of Sanofi's shares—is a named party only in the arbitration.

21      Sanofi requested "with Hoechst's assent" to become a co-claimant to the arbitration.  The

22  Arbitrator denied the full request on jurisdictional grounds, but kept Sanofi a party to the arbitration

23  for other purposes.  (Ex. 7 (First Partial Award (Mar. 26, 2010)), at ¶¶ 194-208; Ex. 3 at ¶ 33.)  The

24  Arbitrator observed that Sanofi "sought relief identical to the relief requested by Hoechst," and

25  "asserted its claims based on the same factual allegations and legal arguments as Hoechst," though it

26  later "'withdrew' its request."  (Ex. 3 at ¶ 94, 99.)  He ruled:  "Sanofi [] *became a party to the*

27  *proceedings* by participating in the amended Request for Arbitration.  The matter proceeded with both

28  Claimants [Hoechst and Sanofi] following the ICC Court's *prima facie* decision on jurisdiction."  (Id.

1   at ¶ 53 (emphasis added).)   The Arbitrator further ruled that Sanofi "will *remain a party* for party

2   representation and arbitration costs purposes." (Ex. 7 at ¶ 208; Ex. 3 at ¶¶ 100, 327 (emphasis added).)

3          The central liability issue in the arbitration is whether, under U.S. law, Rituxan® infringes any

4   claim of the '522 or '140 patents—precisely the same issue decided by this Court.  Hoechst admits:

5               The parties agree that the determination of whether Respondent has
                sold Licensed Products, and therefore owes royalties under the License
6               Agreement, requires a determination of ***whether it infringes the
                licensed U.S. patents***. The parties also agree that ***the infringement
7               issue regarding US '522 and US '140 is governed by substantive U.S.
                patent law***.
8

9               As the parties further agree, the U.S. courts have established a common
                understanding of assessing whether a patent is infringed. In essence,
10              this is done in a two-step approach: ***In the first step, the meaning of
                the wording of the claim terms has to be interpreted which is called
11              "claim construction". In a second step, the properly construed
                features of the claim are compared with the accused infringing
12              embodiment to assess whether all features are fulfilled***

13  (Ex. 8 (Hoechst's Statement of Reply (Apr. 1, 2010), Section D, at ¶¶ 81-82 (emphasis added;

14  citations omitted).)

15         Sanofi/Hoechst's position at the outset of the arbitration was that Rituxan® infringed not just

16  the '522 and '140 U.S. patents, but also a European patent, EP 0 173 177, purporting to cover HCMV

17  enhancers. (Ex. 6 (Hoechst's Am. Req. for Arb. (Feb. 25, 2009)), at 3.)  The problem for Hoechst was

18  that the European patent suffered similar flaws as the '522 and '140 patents as to its invalidity in view

19  of the prior art, and the European patent had been subjected to post-issuance validity challenges that

20  are not available in the U.S.  As a result, the European patent was revoked in 1999 by the Board of

21  Appeal of the European Patent Office for lacking an "inventive step" (similar to the U.S. concept of

22  invalidity obviousness). (Ex. 9 (Decision of European Patent Office (Jan. 12, 1999)), at 15-16.) ("The

23  main request is refused because of a lack of inventive step."   "The patent is revoked.")

24  Hoechst/Sanofi dropped from the arbitration any claims arising from the invalid, revoked European

25  patent. (Ex. 10 (Hoechst's Full Stmt. of Claim (Nov. 30, 2009)), at 112, ¶¶ 335-39.) Thus, although

26  Sanofi/Hoechst are not entitled to any European patent rights over the HCMV enhancer technology

27  that is the subject of the '522 and '140 U.S. patents, they nonetheless are still prosecuting a European

28

1    arbitration in an effort to obtain a finding, under U.S. law, that Rituxan® infringes two U.S. patents,

2    which two U.S. courts have found Rituxan® does not infringe.

3         The Arbitrator held a weeklong hearing in Zurich, Switzerland from August 30, 2010 to

4    September 4, 2010, and received testimony from 11 witnesses, including experts.  (Ex. 3, ¶ 138.)  That

5    hearing occurred after this Court had construed the claims but before it had entered summary

6    judgment of non-infringement in Genentech's favor.  Sanofi and Hoechst's lead U.S. counsel from the

7    Fitzpatrick firm urged the Arbitrator to give this Court's claim constructions no deference, argued they

8    were "WRONG," and suggested this Court would be reversed on appeal.  (Ex. 27 (Hoechst

9    Presentation (Aug. 30, 2010), "The U.S. District Court's Construction Is Wrong"); Ex. 11 (ICC

10   Hearing Tr. (Aug. 30, 2010)), at 82:22-83:1.) ("[T]hat decision will almost inevitably be appealed and

11   such decisions in the United States are [over]turned about 40 per cent of the time by the Court of

12   Appeals.")

13        On March 7, 2011, Genentech alerted the Arbitrator to this Court's judgment of non-

14   infringement, provided a copy of the Court's order, and explained its dispositive impact on the

15   arbitration.  (Ex. 12 (Letter from Maroulis to Karrer).)  Nonetheless, on June 9, 2011, the Arbitrator

16   issued a Second Partial Award which states the following about certain vectors that were used to make

17   the DNA that encodes the Rituxan® proteins, referring to Genentech's BLA, or biologics license

18   application:

19

20

21

22

23

24

25

26

27

28

309.
The Rituxan® BLA says the following:

    ...

    *Expression vector RLDN10b was derived from TND.*

    ...

    *Expression Vector CLDN (unpublished) was derived from RLDN10b, and it differs from RLDN10b in the following ways:*

    ...

    *CLDN contains the human cytomegalovirus (CMV) immediate early gene promoter/enhancer from the Spe I site at -581 to the Sst I site at -16 (reference 5).*

    ...

310.
Reference 5 is to the Boshart Article of 1985, above, paragraph 9.

311.
The Boshart Article is at the basis of the two United States Patents which are the object of the LA (above, paragraphs 10 et seq.).

312.
It follows from this that Rituxan® is produced with the help of the enhancer patented in the two United States Patents which are the subject of the LA.  Whether a promoter is also used is not relevant for the present purposes.

(Ex. 3 at ¶¶ 309-312 (highlighting added; ellipses in original).)  This is the entirety of the Swiss Arbitrator's infringement analysis to date, as to Rituxan®: that it "is produced with the help of the enhancer patented in the two United States Patents …."[3]

    The Arbitrator did not construe the claims or compare the elements of the claims to Rituxan®, despite Sanofi's and Hoechst's acknowledgement and consent that these two U.S. patents must be construed in accordance with U.S. law, and that infringement likewise must be analyzed in accordance with U.S. law.  In fact, the Arbitrator's analysis of Rituxan® did not acknowledge or address this Court's order.  (Ex. 3 at ¶¶ 308-314.)  The Arbitrator's conclusion that "[w]hether a promoter is also

---

    [3]  While the Arbitrator dismissed Hoechst's claims as to Avastin®, Hoechst's claim that it is owed running royalties with respect to Rituxan® remains pending.  (Ex. 3 at ¶ 307-08, 325.)

1    used is not relevant" directly contradicts this Court's conclusion and the Federal Circuit's holding that

2    the patentee disavowed the promoter during prosecution, and that the "claims must be interpreted to

3    refer to the enhancer separated from the promoter." (D.N. 641 at 7-8; Claim Constr. Order, D.N. 383

4    at 7; SJ Order, D.N. 604 at 6, 10-12.)  Further, as recently as April 20, 2012 Hoechst has disparaged

5    the reasoning expressly adopted by this Court and the Federal Circuit, attacking as "contrived" the

6    basic principle that the biological process of mitosis does not satisfy the claimed step of "inserting"

7    foreign DNA into a cell.  (Ex. 4 at 11.)  Hoechst unabashedly urges the Arbitrator to find that

8    Rituxan® infringes the '522 and '140 patents on grounds relating to the claim terms "isolated DNA

9    enhancer," "upstream region of the major immediate early (IE) gene," and "plasmid," that directly

10   contradict this Court's summary judgment order and final judgment.  (Compare id. at 9-12 with SJ

11   Order, D.N. 604 at 7-12, 16-20.)

12           In letters to the Arbitrator in August 2011, Sanofi's and Hoechst's counsel argued that "the

13   Arbitration is finally decided on liability" (Ex. 13 (Hoechst Letter to Karrer (Aug. 19, 2011)), at 2),

14   which Genentech disputed and correctly pointed out that "[t]he Second Partial Award explicitly states

15   that 'the underlying issue of liability' is 'not yet decided for Rituxan®.'" (Ex. 14 (Genentech Letter to

16   Karrer (Aug. 26, 2011)), at 3.)  The Arbitrator subsequently agreed he had not yet definitively decided

17   liability, but nonetheless ordered Genentech to produce documents for the purposes of assessing

18   damages and scheduled damages hearings.  (Ex. 3 at ¶ 325 & 62-63; Ex. 15 (Letter from Karrer to the

19   Parties (Aug. 31, 2011)), at 2 (the Arbitrator: "The Second Partial Award did not decide in the

20   operative part the underlying issue of liability with respect of Rituxan®."))  The parties convened

21   again with the Arbitrator by telephone on January 19, 2012, in which the Arbitrator confirmed that

22   liability has not been resolved, and made arrangements for further hearings in Europe.  Hoechst/Sanofi

23   still continue to insist, however, that in the Second Partial Award, "the Sole Arbitrator made an

24   explicit finding as to the principle of liability as to Rituxan®" and "recited sufficient facts to support a

25   summary conclusion that the manufacture of Rituxan® infringes" the '522 and '140 patents.  (Ex. 4 at

26   5, 11.)  Thus, Hoechst/Sanofi are urging the Arbitrator to cancel further hearings and issue a damages

27   award based on the papers.  (Id. at 14.)

28

After the Court of Appeals for the Federal Circuit affirmed the non-infringement judgment, Genentech again explained to the Arbitrator that the affirmed final judgment disposes of all issues in the arbitration.  (Ex. 16 (Letter from Verhoeven to Karrer (Apr. 14, 2012)), at 1.)  Hoechst, however, is demanding that the Arbitrator "proceed with determining the appropriate amount of royalties due under the LA [license agreement], and issue an appropriate award."  (Ex. 4 at 3.)  The Arbitrator has ordered damages hearings to take place in May and November of this year.  Ultimately, the Arbitrator postponed the May damages hearing for medical reasons, but has ordered a hearing on June 27 and 28 on liability, in which he will hear from expert witnesses, has kept the November damages hearing as scheduled and has inquired about rescheduling the 2-day damages hearing.  (Ex. 1 at 1; Ex. 2 at 1.)

### B.    The Close Relationship Between Sanofi, Hoechst, and Their Interests in the Two Parallel Proceedings.

For purposes of this motion, Sanofi and Hoechst are the same entity, with identical interests.  Through a series of name changes and assignments, Behringwerke's original ownership rights in the '522 and '140 patents were transferred to Sanofi, and Behringwerke's rights under the 1992 license agreement were shifted to Sanofi's affiliate and majority owner, Hoechst GmbH.[4]  Sanofi owns the '522 and '140 patents on which it sued Genentech for alleged infringement in the United States.  (Sanofi's Amended Complaint, D.N. 356, at ¶ 9.)  Hoechst is a "legal successor of . . . Behringwerke AG," standing in its shoes for purposes of the 1992 license agreement.  (Ex. 5, at ¶ 12.)  Both Sanofi and Hoechst GmbH are German entities of the Sanofi-Aventis Group, an international pharmaceutical conglomerate.  (Ex. 5, at ¶ 12.)  Hoechst owns 85 percent of the shares of Sanofi.  (Ex. 21 (Deposition of Dirk Kruse (Apr. 2, 2009)), at 53:4-18.)   Hoechst is a holding company, with no operations of its own.  (Ex. 22 (Sanofi-Aventis Deutschland website).)

Today, Sanofi and Hoechst purport to share all the patent-related rights of Behringwerke for purposes of this dispute, but for many years neither of them nor their predecessors ever contended that Rituxan® was covered by a claim of the '522 or '140 patents.  Indeed, 17 years passed after the

---

[4]  In brief, according to Hoechst:  Behringwerke became Hoechst AG in 1996 (Ex. 17 (Hoechst's Letter to Arbitrator (Oct. 16, 2009)), at ¶ 35); Hoechst AG transferred its pharmaceutical business to Hoechst Marion Roussel Deutschland GmbH in 1997 (id. at ¶ 47), which changed its name to Aventis Pharma Deutschland GmbH (APD) in 1999 (id.); APD changed its name to Sanofi-Aventis Deutschland GmbH in 2005 (Ex. 7, at ¶ 128).

execution of the license agreement before Sanofi or Hoechst made any infringement accusations.  This was after a long history of Genentech paying minimum annual royalties for research purposes under the agreement (SJ Order, D.N. 604 at 3:11-13), and more than 14 years after the inventors of Rituxan® disclosed the scientific details in a publication, more than a decade after they filed for a U.S. patent disclosing DNA sequences, and more than 11 years after the FDA approved Rituxan® to market.[5]  Indeed, the present dispute seems more likely to have been inspired by a corporate effort in 2008 to monetize the patent portfolio Sanofi/Hoechst acquired through acquisition than by any prior scientific belief by Behringwerke or one of its successors that Rituxan® actually practiced any claim of the two U.S. patents licensed to Genentech in the early 1990s.

In the arbitration, Sanofi and Hoechst have been represented by the same law firms as in this Court: first, McDonnell Boehnen Hulbert & Berghoff, then Fitzpatrick, Cella, Harper & Scinto.  (Ex. 18 (Hoechst's Letter to ICC (Oct. 15, 2009)); Ex. 8); D.N. 11, D.N. 350-52.)  Sanofi and Hoechst were represented by the McDonnell firm in both proceedings (Ex. 18; D.N. 11), until that firm was disqualified for a conflict of interest on March 20, 2010.  (Order, D.N. 341.)  In both proceedings, Sanofi and Hoechst almost simultaneously switched to the Fitzpatrick firm, on March 30 and April 1, 2010.[6]  (See D.N. 350-52; see also Ex. 8.)  The Fitzpatrick firm has continued to represent Sanofi and Hoechst in both proceedings, including in Sanofi's unsuccessful appeal of this Court's non-infringement judgment.  (E.g., Notice, D.N. 641 at 1-2.)  After the Arbitrator issued his Second Partial Award, the Fitzpatrick firm issued the following statement:

> Fitzpatrick obtained an award **on behalf of clients Hoechst and Sanofi** from the ICC International Court of Arbitration in a dispute over royalties due under a terminated license involving eukaryotic protein expression technologies. Following a week-long hearing, the arbitrator ruled that Hoechst is owed royalties for Genentech's use of

---

[5]  See Ex. 25 (M. Reff, et al., *Depletion of B cells in vivo by a chimeric mouse human monoclonal antibody to CD20*, Blood (Jan. 15, 1994)), at 83, 433-445; Ex. 26 (U.S. Patent No. 5,736,137); see also FDA biologics license approval letters dated Nov. 26, 1997, available at http://www.accessdata.fda.gov/drugsatfda_docs/appletter/1997/ritugen112697L.htm and http://www.accessdata.fda.gov/drugsatfda_docs/appletter/1997/rituide112697L.htm, last visited April 29, 2012.

[6]  Both Hoechst and Sanofi also have been jointly represented by the European firm Bird & Bird, LLP in the arbitration.  (Ex. 6.)

> Sanofi's patented human cytomegalovirus (HCMV) enhancer in the
> production of one of its blockbuster biologic drugs.

(Ex. 19 (Website of Fitzpatrick Cella) (emphasis added).)

In attempting to convince the Arbitrator that he had jurisdiction over Sanofi, Sanofi and Hoechst maintained that "[i]t was not relevant for [Genentech] whether Hoechst or SAD [Sanofi] were formally parties to the [license] contract, because they were and still are members of the same group of companies." (Ex. 20 (Hoechst Slide Presentation (Feb. 2, 2010)).) Sanofi and Hoechst also argued that Genentech "may not start to distinguish at this stage between signatory and non-signatory parties both belonging to the Sanofi-Aventis group of companies." (Id.)

### III.    LEGAL STANDARDS

Courts consider the following factors in determining whether to issue injunctions barring parties from pursuing other litigation or arbitration: "(1) whether or not the parties and issues are the same, and whether or not the first action is dispositive of the action to be enjoined; (2) whether the foreign litigation would frustrate a policy of the forum issuing the injunction; and (3) whether the impact on comity would be tolerable." Applied Medical Distribution Corp. v. Surgical Co., 587 F.3d 909, 913 (9th Cir. 2009) (internal quotation marks omitted) (quoting E & J Gallo Winery v. Andina Licores S.A., 446 F.3d 984, 991, 994 (9th Cir. 2006)). The Court may "restrain a party subject to its jurisdiction from proceeding in a foreign court in circumstances that are unjust." Gallo, 446 F.3d at 989; see also Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League, 652 F.2d 852, 855 n.5 (9th Cir. 1981); Sun World, Inc. v. Olivarria, 804 F. Supp. 1264, 1267, 1269 (E.D. Cal. 1992) (granting injunction preventing defendant from maintaining or prosecuting "vexatious" and "duplicative" cases in Mexico). See also Allendale Mut. Ins. Co. v. Bull Data Sys. Inc., 10 F.3d 425, 433 (7th Cir. 1993) (enjoining arbitration in part due to the risk that the "inability to plead res judicata [in the arbitration] might deprive [plaintiff] of the benefit of its judgment"). Such "anti-suit" injunctions operate against parties to the foreign proceedings, not against foreign tribunals. Gallo, 446 F.3d at 989.

Courts may also enjoin arbitral proceedings that threaten to undermine their judgments; indeed, federal policies favoring arbitration yield to the doctrine of res judicata. See Miller Brewing Co. v. Fort Worth Distrib., 781 F.2d 494, 499 (5th Cir. 1986). This is because to confirm an arbitral

1   award as contemplated by the Federal Arbitration Act, a federal court must enter judgment on that

2   award.  Id., 781 F.2d at 299; 9 U.S.C. § 9.  Thus, "parties should be barred from seeking relief from

3   arbitration panels when, under the doctrine of *res judicata*, they would be barred from seeking relief in

4   the courts."  Id.; see also Chiron Corp. v. Ortho Diagnostics Sys., 207 F.3d 1126, 1128, 1134 (9th Cir.

5   2000) (noting courts' "inherent authority to defend [their] own judgments as *res judicata*" by

6   enjoining arbitration proceedings); John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 139 (3d

7   Cir. 1998) ("[F]ederal courts must intervene in the arbitration process when faced with *res judicata*

8   objections stemming from a prior judgment."); In re Y & A Grp. Sec. Litig., 38 F.3d 380, 382 (8th

9   Cir. 1994) ("No matter what, courts have the power to defend their judgments as *res judicata*,

10  including the power to enjoin or stay subsequent arbitrations.").  Rulings on anti-suit injunctions

11  normally will not be reversed unless courts "abused [their] discretion or based [their] decision[s] on an

12  erroneous legal standard or on clearly erroneous findings of fact."  Id. (internal citation omitted.)

13  **IV.    SANOFI, ITS AFFILIATES, AND ITS COUNSEL SHOULD BE ENJOINED FROM
         PURSUING   ARBITRATION   THAT   WOULD   UNDERMINE   THIS   COURT'S**
14  **AFFIRMED FINAL JUDGMENT.**

15         Sanofi and those acting in concert with it should be prevented from subverting this Court's

16  judgment.  Sanofi had a full and fair opportunity to litigate its infringement case before this Court, and

17  to appeal the non-infringement judgment against it.  Two federal courts uniquely qualified to decide

18  issues of U.S. patent law have rejected Sanofi's arguments.  Sanofi and its allies should not be

19  permitted to seek a contrary ruling from a Swiss Arbitrator that would undermine this Court's

20  judgment under U.S. law, and potentially enable Sanofi to avoid the judgment against it, for instance

21  by seeking to enforce an inconsistent arbitral award, ostensibly under U.S. law, in other countries to

22  extract royalties from Genentech.

23         **A.    The Parties and Issues in this Case and in the Arbitration Are the Same, and This
              Court's Affirmed Final Judgment Is Dispositive of the Arbitration.**

24         The threshold question is "whether or not the parties and issues are the same, and whether or

25  not the first action is dispositive of the action to be enjoined."  Applied, 587 F.3d at 913.  Courts in the

26  Ninth Circuit take a practical and functional, rather than formalistic, approach to the identity of the

27  parties and issues and the dispositive nature of the action.  Id. at 914-15.  Generally, if the parties are

28

1    the same, "whether the issues are the same and the first action dispositive of the action to be enjoined

2    are interrelated requirements." Id. at 915.

3                    1.       *The Issues in this Court and the Arbitration are the Same.*

4              This litigation and the parallel ICC arbitration turn on the same exact issue: does Rituxan®

5    infringe the '522 and '140 patents.   Supra at 1, 5.     Hoechst admits, as it must, that its entire

6    arbitration claim is predicated on an allegation that Rituxan® infringes the '522 and '140 patents, and

7    on the application of U.S. patent law to that infringement determination:

8                        The parties agree that the determination of whether Respondent has
                         sold Licensed Products, and therefore owes royalties under the License
9                        Agreement, requires a determination of ***whether it infringes the
                         licensed U.S. patents*** (cf. Respondent's Full Answer, paragraph 23).
10                       The parties also agree that ***the infringement issue regarding US '522
                         and US '140 is governed by substantive U.S. patent law*** (cf.
11                       Respondent's Full Answer, paragraph 23)."

12   (Ex. 8, Section D, at ¶¶ 81-82 (emphasis added).)  Hoechst's admission is compelled by the language

13   of the agreement, which defines royalty-bearing products as "infring[ing] one or more unexpired

14   claims" of the licensed '522 and '140 patents.  (License Agreement, D.N. 1, Ex. 1 at § 1.6; see also,

15   e.g., Ex. 10, at ¶¶ 83, 162) (Hoechst/Sanofi invoking and alleging infringement under 35 U.S.C.

16   § 271(a) and (g)).)

17            Hoechst and the Fitzpatrick firm further advised the Arbitrator that the American infringement

18   analysis—construing the '522 and '140 patents' claims, then comparing them to the accused

19   products—was required in the arbitration. (Ex. 8, at ¶ 82.) Indeed, Sanofi and Hoechst's lead counsel

20   in this litigation and the arbitration informed the Arbitrator:  "There are two steps to the infringement

21   question in U.S. law.  The first one is that you *must construe the claims* . . . . The second part of the

22   infringement analysis, Dr Karrer, is that you *must apply the claim construction to the facts* of

23   infringement as you find them."  (Ex. 11, at 82:11-13, 83:12-15 (emphasis added).)

24            These are precisely the same issues, involving the same facts, which already have been finally

25   resolved by this Court and the Federal Circuit.  Both courts have conclusively held that the product at

26   issue in the arbitration, Rituxan®, does not infringe the properly construed claims of the patents at

27   issue in the arbitration.  (Order, D.N. 383; Order, D.N. 304; Notice, D.N. 641.)  Where, as here, an

28

1   arbitration threatens to undermine an order of a U.S. court, an injunction is necessary.  See, e.g.,

2   Allendale, 10 F.3d at 433; Motorola Credit Corp. v. Uzan, No. 02 Civ. 666 (JSR), 2003 WL 56998 at

3   *2-*3 (S.D.N.Y.  Jan. 7, 2003) (unpublished).

4          Sanofi may argue that Hoechst is seeking broader or different relief in the arbitration, because

5   it involves a contract dispute to which German law applies (although the contract dispute itself centers

6   on a patent infringement question under U.S. law).  But Sanofi, through Hoechst and the Fitzpatrick

7   firm, have admitted there can be no contract liability unless Rituxan® infringes the claims of the '522

8   or '140 patents under U.S. law.  Sanofi's argument thus fails under the pragmatic, functional test for

9   whether issues are the same for purposes of anti-suit injunctions.  Perfect identity of issues is not

10  required.  Applied, 587 F.3d at 914 ("[T]he district court applied the wrong legal standard by requiring

11  that the claims in the domestic and foreign action be 'identical' instead of engaging in the more

12  functional inquiry concerning dispositiveness required by Gallo.") (citing Gallo, 446 F.3d 984).

13  Whether in the context of the 1992 patent license or this federal patent litigation, the dispositive issue

14  is, as Hoechst admits, "whether [Genentech] infringes the licensed patents," which "is governed by

15  substantive U.S. patent law."  (Ex. 8, at ¶¶ 81-82.)  Because the infringement claim adjudicated by this

16  Court fully and conclusively resolves in Genentech's favor the arbitration issue of "whether

17  Respondent has sold Licensed Products, and therefore owes royalties under the License Agreement"

18  (id.), the issues are the same for purposes of this motion.

19         Sanofi and Hoechst should not be permitted to collect royalties under a patent license based on

20  Genentech's sale of a product which this Court found does not infringe the licensed patents.  If Sanofi

21  had won this litigation, then damages for infringing the asserted patents would have flowed through it

22  to its holding company parent, Hoechst.  Now that Sanofi has lost this litigation, Hoechst should not

23  be able to recover any alleged damages to which the Court determined Sanofi (and in turn, Hoechst)

24  was not entitled.

25              2.     Sanofi and Hoechst Have Identical Interests and Are the Same Parties for
                       Purposes of This Motion.
26

27         Sanofi's status as a party in both this litigation and the arbitration establishes that the two

28  proceedings are related, and that it and Hoechst are the same for purposes of this motion.  The

Arbitrator ruled that "Sanofi[-Aventis] Deutschland *became a party* to the proceedings by participating in the amended Request for Arbitration." (Ex. 3 at ¶ 53 (emphasis added).)   The Arbitrator further ruled, after denying it status as a co-claimant for jurisdictional reasons, that Sanofi "will *remain a party* for party representation and arbitration costs purposes." (Ex. 7 at ¶ 208; Ex. 3 at ¶¶ 100, 327 (emphasis added).)  The Arbitrator has neither dismissed Sanofi from the arbitration nor terminated its status as a party to those proceedings.

Even if Sanofi were not a party to the arbitration, the fact that its interests coincide with Hoechst's supports the grant of an injunction.  See, e.g., Motorola Credit Corp. v. Uzan, No. 02 Civ. 666 (JSR), 2003 WL 56998 at *2-*3 (S.D.N.Y.  Jan. 7, 2003) (unpublished) (enjoining defendants from proceeding with a Turkish action where Telsim, a party to the Turkish action but not a party before the court, was "owned and controlled by, and is in the respects here relevant a mere proxy for, defendants"); see also Paramedics Electromedicina Comercial LTDA v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 652 (2d Cir. 2004) (holding that the defendants in the two actions were "sufficiently similar" because they were both "part of the General Electric group of companies" and one defendant was a 70 percent shareholder in the other defendant).  Like the defendant-owned parties in Motorola and the GE-related parties in Paramedics, Sanofi and Hoechst fall under the same corporate umbrella or "group of companies," and Hoechst owns 85 percent of Sanofi's shares. (Ex. 21, at 53:4-18.)

Sanofi and Hoechst also have identical interests in the underlying dispute over whether Rituxan® infringes the '522 and the '140 patents.  The two companies ensured their interests were aligned by retaining the same counsel to make consistent arguments across both cases.  Supra at 10. Indeed, their shared counsel touted Sanofi's and Hoechst's *collective* progress in the arbitration:

> On June 9, Fitzpatrick obtained an award *on behalf of clients Hoechst and Sanofi* from the ICC International Court of Arbitration in a dispute over royalties due under a terminated license involving eukaryotic protein expression technologies. Following a week-long hearing, the arbitrator ruled that *Hoechst is owed royalties for Genentech's use of Sanofi's patented human cytomegalovirus (HCMV) enhancer* in the production of one of its blockbuster biologic drugs."

(Ex. 19 (emphasis added).)  Further, Sanofi clearly represented Hoechst's interests when, in this litigation, it argued for and obtained from this Court the right for its affiliate Hoechst to use in connection with the arbitration all of the discovery Sanofi obtained from Genentech.  (Sanofi's Letter Br., D.N. 147 at 2.)  Thus, Hoechst and Sanofi are the same party for anti-suit injunction purposes.

Indeed, in their jurisdictional argument to the Arbitrator, Sanofi and Hoechst argued that it did not matter that Sanofi was not formally a party to the license agreement, "because they were and still are members of the same group of companies," and that Genentech "may not start to distinguish at this stage between signatory and non-signatory parties both belonging to the Sanofi-Aventis group of companies."  (Ex. 20.)  Since both Sanofi and Hoechst lumped themselves together and sought to preclude Genentech from distinguishing between them, Sanofi should not now be permitted to make the very distinction that it and Hoechst rejected in the arbitration.

Moreover, regardless of Sanofi's status in the arbitration, the Court has the authority to enter an injunction to bar Sanofi from acting in concert with Hoechst to pursue an arbitral award that would undermine this Court's judgment.  Under Rule 65, the Court may enjoin Sanofi and any "other persons who are in active concert or participation" with it "who receive actual notice" of the injunction from seeking to undermine its judgment in other proceedings.  Fed. R. Civ. P. 65(d)(2)(C); see also Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc., 859 F.2d 681, 687 (9th Cir. 1988) (affirming injunction in which "the language … tracks the language of Fed. R. Civ. P. 65(d)," which left "no basis for concern that one who is unaware of the injunction can be found in contempt for violating it ….").  Rule 65 does not discriminate based on parties' titles or status in legal proceedings, but instead authorizes injunctions over those who are actively involved with the parties to the suit and receive actual notice.

In Motorola, the court enjoined the defendants, "their proxies, and all others in concert with them," from pursuing a Turkish action against Motorola and from "initiating any similar proceeding." 2003 WL 56998 at *3.  The injunction expressly applied to Telsim, not a party before the Court, but which was controlled and owned by the defendants and had initiated the Turkish action.  Id.  Like the connection between the defendants and Telsim in the Motorola case, the close relationship between Sanofi and its parent enables this Court to enjoin Sanofi and Hoechst, acting in concert with Sanofi,

from seeking to undermine this Court's non-infringement judgment.  Sanofi and Hoechst have worked together to share and exploit Behringwerke's related patent and contract rights, supra at 3-5, 9, to prosecute the ICC arbitration, id. at 4, 9-10, and to share discovery obtained in this action.  (Sanofi's Letter Br., D.N. 147 at 2.)  The two companies are represented by the same counsel, which guarantees Hoechst will receive actual notice of the injunction.  Supra at 10.  Moreover, Hoechst is merely a holding company and has no business operations of its own.  (Ex. 22.)  Hoechst plainly is "in active concert or participation" with Sanofi, and will be subject to this Court's injunction.

               *3.*      *This Court's Affirmed Final Judgment Is Dispositive of the Arbitration.*

This Court's reasoned judgment that Rituxan® does not infringe the patents-in-suit and the Federal Circuit's affirmance dispose of the ICC arbitration.  See, e.g., Oracle America, Inc. v. Myriad Grp. AG, No. C10-05604, 2012 WL 146364, *3 (N.D. Cal. Jan. 17, 2012) (unpublished) ("Where, as here, the parties in the two actions are the same, the related questions of whether 'the issues are the same' and whether 'the domestic action is dispositive of the foreign action' collapse into one.") (quoting Applied, 587 F.3d at 915).  The fact that (1) the infringement issues presented to this Court and the Arbitrator are identical, and (2) a patent infringement finding is a prerequisite to any liability under the patent license, demonstrates that the Court's non-infringement judgment is dispositive of the arbitration.  Supra at Section II.A.

**B.**      **Allowing Sanofi, Its Affiliates, and Its Counsel to Pursue the Arbitration Would Frustrate Fundamental Judicial Policies.**

The second inquiry is whether the foreign proceeding would frustrate a policy of the forum issuing the injunction.  Supra at 11.  The ICC arbitration, with potential to undermine this Court's judgment and the Federal Circuit's affirmance, frustrates several policies:  preserving the integrity of judgments, preventing duplicative litigation, preventing misuse and expansion of the patent monopoly, and promoting judicial economy.

Courts have "inherent authority to defend [their] own judgments as *res judicata*."  Chiron Corp. v. Ortho Diagnostics Sys., 207 F.3d 1126, 1128, 1134 (9th Cir. 2000) (citing In re Y & A Group Sec. Litig., 38 F.3d 380, 383 (8th Cir. 1994).  "The doctrine of *res judicata* includes two distinct types of preclusion, claim preclusion and issue preclusion."  Robi v. Five Platters, Inc., 838 F.2d 318, 321

1   (9th Cir. 1988).  "Collateral estoppel, or issue preclusion, bars the relitigation of issues actually

2   adjudicated in previous litigation between the same parties," and "applies not only against actual

3   parties to prior litigation, but also against a party that is in privity to a party in previous litigation."

4   Steen v. John Hancock Mut. Life Ins. Co., 106 F.3d 904, 910 (9th Cir. 1997) (internal quotations and

5   citations omitted).  In addition to defending the integrity of final judgments, issue preclusion "has the

6   dual purpose of protecting litigants from the burden of relitigating an identical issue with the same

7   party or his privy and of promoting judicial economy by preventing needless litigation."  Parklane

8   Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326, 99 S. Ct. 645, 649 (1979).

9         Issue preclusion bars relitigation of common issues when: "(1) there was a full and fair

10  opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that

11  action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against

12  whom collateral estoppel is asserted in the present action was a party or in privity with a party in the

13  previous action.  Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992).  Each step of the test is satisfied

14  here.  First, Sanofi had a full and fair opportunity to litigate its infringement case before this Court.

15  Second, the infringement issue was actually litigated, resolved, and affirmed on appeal in Genentech's

16  favor.  Third, Sanofi's infringement claims were lost as a result of this Court's final judgment, and

17  fourth, Sanofi and Hoechst are functionally the same party or at a minimum in privity[7] with one

18  another.   Hoechst is Sanofi's affiliate and 85 percent owner, and both are represented by the same

19  counsel, as explained supra at 10.  As the owner of the patents at issue in both proceedings,

20  represented by the same counsel as Hoechst, and owned largely by Hoechst, Sanofi adequately

21  represented Hoechst's interests in this federal litigation.  Permitting Sanofi, its counsel, and its

22  affiliates to continue to arbitrate the same infringement issues this Court already resolved would

23  impede the policies inherent in the doctrines of issue preclusion and *res judicata*.

---

24         [7]  Privity is a "legal conclusion designating a person so identified in interest with a party to former
25  litigation that he represents precisely the same right in respect to the subject matter involved."  In re
    Schimmels, 127 F.3d 875, 881 (9th Cir. 1997); see also Wright & Miller, 18A Federal Practice &
26  Procedure, § 4460 (2d ed. 2012) ("Close corporate ownership relationships may be important not only
    in binding persons affiliated by those relationships but also in expanding the protective benefits of a
27  judgment.").  Courts will "bind a non-party whose interests were represented adequately by a party in
    the original suit."  In re Schimmels, 127 F.3d at 881.  These facts are all present, as explained supra at
28  9-11.

1    United States courts recognize another policy frustrated by the continuation of the arbitration,

2    that of not expanding the monopoly power conferred by the patent system through the use of

3    contracts.  "The policy purpose" of the patent misuse doctrine "was to prevent a patentee from using

4    the patent to obtain market benefit beyond that which inures in the statutory patent right."

5    Mallinckrodt, Inc. v. Medipart, Inc., 976 F.2d 700, 704 (Fed. Cir. 1992). "The key inquiry is whether,

6    by imposing conditions that derive their force from the patent, the patentee has impermissibly

7    broadened the scope of the patent grant with anticompetitive effect." Monsanto Co. v. McFarling, 363

8    F.3d 1336, 1341 (Fed. Cir. 2004) (internal citations omitted).  Further, under established U.S. law,

9    contracts that extend the patent monopoly beyond its statutorily authorized limits are void as against

10   public policy.  Brulotte v. Thys Co., 379 U.S. 29, 31 (1964).  If Sanofi and its partners are not

11   enjoined from proceeding with the arbitration, the monopoly conferred by the '522 and '140 patents

12   may be expanded to permit Hoechst to collect royalties on Rituxan®, a product this Court and the

13   Federal Circuit have adjudged is not covered by the patents.

14   Sanofi and Hoechst's efforts to obtain royalties from Genentech through arbitration have

15   dragged on, including for more than a year after this Court found the patents not infringed.  This Court

16   moved faster and more efficiently to resolve the infringement dispute, as did the Federal Circuit.  The

17   common notion that arbitration brings "speedy disposition of disputes without the expense and delay

18   of extended court proceedings"—a sentiment Hoechst itself once championed to the Arbitrator[8]—has

19   been flipped on its head in this case.  See In re Y & A Grp. Sec. Litig., 38 F.3d 380, 382 (8th Cir.

20   1994).  In fact, the policy of facilitating speedy resolutions and avoiding prolonged disputes can only

21   be served by *enjoining* the protracted ICC arbitration, which is duplicative and vexatious in view of

22   this Court's judgment.  Sun World, 804 F. Supp. at 1269 (enjoining defendant from maintaining

23   "vexatious" and "duplicative" cases in Mexico).  By contrast, refusing to enjoin the arbitration would

24   ensure only that the parties will continue to endure further and unnecessary proceedings and expense,

25   and permit Sanofi and Hoechst to continue their efforts in the arbitration to undermine this Court's

26   judgment.

---

27

28   [8]  In a letter to the Arbitrator dated Oct. 30, 2009, Hoechst argued, "[O]ne of the fundamental
     principles of ICC arbitration is that of a fast proceeding." (Ex. 23 at ¶ 196.)

**C.     Issuing the Injunction Will Have No Appreciable Impact on Comity.**

Courts in the Ninth Circuit follow a "liberal approach" and "place[] only modest emphasis on international comity and approve[] the issuance of anti-suit injunctions when necessary to prevent duplicative and vexatious foreign litigation and to avoid inconsistent judgments." Goss Int'l Corp. v. Mann Roland, 491 F.3d 355, 359-60 (8th Cir. 2007).  Because these same policy interests compel issuing an injunction here, supra at Section IV.B, there are no countervailing comity concerns that justify denying the injunction.  As the Gallo court noted, "from the earliest times, authorities have recognized that the obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act." Id. at 995 (quoting Laker Airways Ltd. v. Sabena Belgian World Airlines, 731 F.2d 909, 937 (D.C. Cir. 1984)[9]).

In any event, enjoining Sanofi, its affiliates, and its counsel from seeking to undo this Court's judgment will not impact international comity.  The injunction "would not implicate comity at all" as no foreign government is "involved in the litigation" and "no public international issue [has been] raised." Gallo, 446 F.3d at 994.  Just as in Gallo, the parties here are private companies and no foreign government is involved in their private dispute.  Id.  Further, this case raises "no public international issue" because the dispute is between private parties, and the scope and effect of U.S. patents are territorially limited to the United States.  See Int'l Rectifier Corp. v. Samsung Elecs. Co., 361 F.3d 1355, 1360 (Fed. Cir. 2004) ("United States patent laws 'do not, and were not intended to, operate beyond the limits of the United States.'") (internal citation omitted).  Indeed, Sanofi/Hoechst dropped from the arbitration any accusation that Genentech infringed the revoked and invalid European patent, supra at 5, so the only patent law issues remaining arise purely under U.S. law.

Moreover, the notion that the arbitration pending in Europe might deny Genentech the preclusive effect of this Court's affirmed final judgment underscores the need to enjoin Sanofi and its allies from defying that judgment abroad.  Hoechst has long argued that the Arbitrator "is not bound by the U.S. court decision[s]" on claim construction and summary judgment, and that "the Arbitrator

---

[9]   The Gallo court relied on reasoning from the Court of Appeals for the District of Columbia Circuit, despite that court following the more "restrictive approach" to anti-suit injunctions, which weighs comity more heavily than under the "liberal approach" required in the Ninth Circuit.  Goss, 491 F.3d at 359-60 (8th Cir. 2007).

1    has correctly confirmed several times that the U.S. litigation has no prejudice for this Arbitration."[10]

2    (Ex. 24, (Hoechst Letter to Karrer (Mar. 9, 2011)), at 2.)   "[W]here *inability to plead res judicata*

3    *might deprive [a party] of the benefit of its judgment*, considerations of comity would *not* prevent a

4    federal court, even under strict cases, from enjoining the foreign defendants … from proceeding, in

5    defiance of the judgment, in a foreign court."  Allendale, 10 F.3d at 433 (emphasis added).  That the

6    arbitration has continued despite this Court's and the Federal Circuit's preclusive rulings in favor of

7    Genentech strongly necessitates granting an injunction notwithstanding any perceived issues of

8    comity.

9    **V.     CONCLUSION**

10          For the foregoing reasons, Genentech respectfully requests that this Court grant its motion to

11   permanently enjoin Sanofi-Aventis Deutschland, its affiliates, and its counsel, and any other persons

12   who are in active concert or participation with it, from pursuing the parallel ICC arbitration.

13

14   DATED:  May 1, 2012                    QUINN EMANUEL URQUHART & SULLIVAN LLP

15

16                                         By  */s/ Gabriel S. Gross*
                                              _____
17                                             Charles K. Verhoeven
                                               Victoria F. Maroulis
18                                             Eric E. Wall
                                               Gabriel S. Gross
19                                             Attorneys for Defendant Genentech, Inc.

20

21

22   _____

23   [10]   Under United States law, "[a]rbitrators are not free to ignore the preclusive effect of prior
     judgments under the doctrines of res judicata and collateral estoppel, although they generally are
24   entitled to determine in the first instance whether to give the prior judicial determination preclusive
     effect." Collins v. D.R. Horton, Inc., 505 F.3d 874, 880 (9th Cir. 2007).  The same principle should
25   apply to the ICC arbitration.  "In principle, national court judgments and arbitral awards should have
     the same preclusive effects in arbitral proceedings as in national court litigation. …  The policies of
26   fairness, efficiency, upholding the integrity of the judicial/arbitral process and effectuating the parties'
     intentions apply with essentially equal force in arbitral, as well as judicial, forums." Gary B. Born, 2
27   International Commercial Arbitration 2915 (2009).  Despite Genentech providing the Arbitrator with
     this Court's affirmed final judgment in March of 2011, he since has given it no preclusive effect.
28   Supra at 1-2, 9.  (Ex. 2 at 1-2.)